

U.S. Department of Justice

**Rachael S. Rollins**
United States Attorney
District of Massachusetts

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

April 26, 2023

Michael Kendall
Abigail Mahoney
White & Case, LLP
75 State Street
Boston, MA 02109

      Re:    *United States v. Abhijit Das*, 21-cr-10200-RGS
               Defendant's Request for Additional Discovery (April 12, 2023)

Counsel:

      Pursuant to MA LR 116.3(a), I am writing you in response to your April 12, 2023 letter requesting additional information and discovery. In your letter, you first asked for the specific search terms, as well as the parameters, the government used in conducting the search of the emails and data from the email search warrants in this case, 20-7123-JCB and 20-7124-JCB. You letter also cited Judge Stearns decision in one of the NECC cases, *United States v. Cadden.*

      The procedure investigators used for the search was that described in Attachment B to each of the warrants, a copy of which is attached. (Attachment B for both 20-7123 and 20-7124 were identical but the number listed on Attachment B for 7124 in the header was incorrectly listed as 7123). The government served the warrants on Google on June 2, 2020. The government received the data from for the two target email accounts pursuant to Sections I and II of the warrants around August 10, 2020. The data was then unloaded to a Relativity database by October 2020.

      Before any search of the data took place pursuant to Section III of Attachment B to the warrants, investigators put together a list of terms and email addresses to ensure that any potentially privileged material (PPM) was removed from the main database that was accessible to the prosecution team. The following is list of the initial terms and email addressed that was provided to USAO's Litigation Technology Services (Lit-Tech) who managed the database but did not conduct any substantive review of the materials. The email addresses for the attorneys were identified by reviewing the header information the government received from a 2703(d) order:

Terms:
Attorney/attorneys
Legal
Law
Confidential
Privilege

Attorney Email Addresses:
jredlener@ascendantlawgroup.com
jredlener@dflip.com
neil@bagchilaw.com
rpontikes@pontikeslawllc.com
sdas@bhlawllp.com
john@valeriolaw.com
mattbilletlaw@yahoo.com
mmacenaka@goodwinlaw.com
John.rosans@kattenlaw.com
wguerin@iplawusa.com
russo@arussolaw.com
AAF@aswblaw.com
JMeixel@kb-law.com
TBattistoni@schiffhardin.com
JArel@goodwinlaw.com

Once Lit-Tech ran these search terms through the database, Lit-Tech extracted all the positive "hits" containing the PPM into a separate locked folder that to which only a separate filter team and Lit-Tech had access.

The search procedure set forth in Section III of the Attachment B of the warrants began in early November 2020. As a result of those initial searches, investigators came across other attorney names/email addresses. As a result, the government had the following additional terms, names, and email addresses queried through the database to remove any PPM:

Terms:
Attorney-client
Attorney-client communication
Attorney client communication

Email Addresses:
johnsonlawoffices@comcast.net
jr@ascendantlawgroup.com
sbrake@nutter.com
jloughnane@nutter.com
blee@nutter.com
mday@tshdlegal.com
rrucki@tshdlegal.com

tonybistany@gmail.com
johnsonlawoffices@comcast.net
ekfoury@townofnorthandover.com
ekfoury@trocahotels.com

The emails that were placed into the same locked folder and were then reviewed by a filter team who released to the materials to the investigative team only when it was clear that emails did not contain privileged materials.

This case is unlike the *Cadden* case you cited. *Cadden* involved the execution of a search warrant at NECC's headquarters in Framingham, Massachusetts, and the seizure of a massive amounts of electronic media, including the seizure of an entire computer server at NECC including all the emails for every NECC employee. After seizing the server, the government sought to narrow the universe of emails that it was used in the case and disclose in discovery, prosecutors and agents devised a list of search terms to identify e-mails and other files that could be relevant to the NECC investigation and evidence of criminal wrongdoing. In discovery, the government then only disclosed the approximately 1.1 million emails that were responsive to these search terms. In Judge Stearns' decision, he ruled that the search terms that the government employed "are material in the sense that defendants have no other means by which to test the inclusiveness of the government's selection of the material that it produced pursuant to its obligations under Fed. R. Crim. P. 16(a)(1)(E)." Dkt. 347, * 5. Here, unlike *Cadden*, the government has disclosed *every single email* that the government obtained from Google for the target accounts including those emails that contain PPM that have not been reviewed by the investigative team. (These materials were put on a separate external drive, and you were going to get back to me to ensure you received the materials from prior counsel).

Thus, in conducting the search procedure set forth in Section III of Attachment B to the warrants, the government did not employ, nor was it required to use, to use a single, static set of search terms. Instead, as dictated by Section III of Attachment B, investigators looked through emails uploaded in a Relativity database (with the PPM excluded) for particular individuals (including those listed in III, paragraph 1), times, and events related to the crimes under investigation listed in Attachment B and described in the affidavit in support of the search warrant.

Some of the searching investigators conducted did involve inputting search terms into the Relativity database. The Relativity database does not maintain a history or audit of all the searches conducted but does keeps records of the "saved searches." The following is a list of the saved searches (other than those relating to PPM searches):

jay.shah@ or "jay shah"
022869 [I don't recall the relevance of this search, and the search did not generate any hits]
"sean smith" and "das for congress" or "Dasforcongress"

Secondly, in your letter you asked for the government's position on its authority to do additional searches of the emails after its "initial search" without any further permission from the Court. Cases decided in the First Circuit and Federal Rule of Criminal Procedure 41(e)(2)(B) squarely answer this question. *See e.g, United States v. Aboshady*, 951 F.3d 1, 7 (1st Cir. 2020)

("To the extent that [defendant] means to argue that the government's execution of the warrant flagrantly violated its terms because the government not only retained the data that it had acquired from Google, Inc. pursuant to Section II of the warrant but also may have run searches on that data for years afterwards "as it developed new theories" of his possible criminal liability, we also are not persuaded"); *United States v. Tsarnaev*, 53 F.Supp.3d 450, 464 (D.Mass., 2014) (in the absence of a specific applicable requirement, it is "generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant") (internal citations omitted); *see also United States v. Ganias*, 824 F.3d 199, 219 (2d Cir. 2016).

Third and finally, you asked for information concerning "all statements the government made to Mr. Chaudhuri or his counsel concerning the government's opinion as to the truthfulness of this statements to the government, and any consequences Mr. Chaudhuri might face if the government believed any part of his statements was false."

In is automatic discovery letter on August 4, 2021, the government disclosed the exculpatory information that it was required to produce pursuant to MA LR 116.2(B)(1) including the two reports of his interviews (on 4/5/2021 and 6/3/2021) as well as copies of each of the documents that Mr. Chaudhuri was shown during the interviews. The first interview took place in Arlington, Virginia on April 5, 2021, without my presence or any lawyer for Mr. Chaudhuri. Following the interview, the FBI served Mr. Chaudhuri with a grand jury subpoena. On April 7, 2021, I received notice that Mr. Chaudhuri had retained Bob Peabody as his counsel for the grand jury subpoena.

Prior to his grand jury appearance that took place on June 7, 2021, on May 20, 2021, I had a brief meeting with Mr. Chaudhuri along with Attorney Peabody and FBI SA Lindsay Capodilupo. During that brief interview, Mr. Chaudhuri appeared to downplay the extent of his involvement in the defendant's congressional campaign, and I indicated to Mr. Chaudhuri and his counsel that I had some concerns about the truthfulness of Mr. Chaudhuri's statements and indicated we should discontinue the interview for Mr. Chaudhuri to speak with Attorney Peabody. Shortly after that meeting, while I cannot recall the specific details, I probably also expressed some concerns to Attorney Peabody about the credibility of Mr. Chaudhuri's statements when it came to him acknowledging his state of mind regarding the illegality of the conduct, namely facilitation excessive and conduit campaign contributions. While I cannot specifically recall, I may have also said something to Attorney Peabody about Mr. Chaudhuri's involvement in other political campaigns to make the point that even though he is not an attorney, he would have familiarity with campaign finance laws. (I do not have a copy of any report from this meeting. I am checking with the FBI to determine if there was any report or notes).

Prior to the third interview that took place on June 3, 2021, my assumption is that Attorney Peabody had conversations with Mr. Chaudhuri that would be subject to the attorney-client privilege. If you do plan on inquiring on cross examination about the conversations that Attorney Peabody had with Mr. Chaudhuri in private, please let me know so we can file the appropriate motion.

As reflected in the report from the third interview on June 3, 2021, that took place over Webex, I first asked Mr. Chaudhuri if there was anything he wanted to share prior to the beginning of the interview, and Mr. Chaudhuri stated that he knew he broke the law for bad reasons.  Thereafter, during his grand jury testimony on June 7, 2021, Mr. Chaudhuri acknowledged that he had not been completely truthful during his first interviews, had downplayed his role in the campaign and his involvement in the solicitation of illegal campaign contributions.  Furthermore, Mr. Chaudhuri said his impulse was fear and that he wanted to create some distance between him and the defendant.

As I explained to prior counsel, the government would be willing to voluntarily disclose the grand jury testimony (which accounts for all the remaining Jencks materials) 30 days before trial.  The government is also mindful of its obligations to produce additional exculpatory material 21 days before trial pursuant to MA LR 116.2(b)(2). The government is also mindful of its continuing obligation to produce discoverable material and reserves the right to supplement this response.

Please let me know if you have any question or concerns.

Very truly yours,

RACHEL S. ROLLINS
United States Attorney

By:   /s/ *Neil Gallagher*
Neil J. Gallagher, Jr.
Assistant U.S. Attorney