UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>ABHIJIT DAS )<br>    a/k/a "Beej Das" )<br>)<br>Defendant. ) | Case No. 21-cr-10200-RGS |

UNITED STATES' MOTION TO REVOKE, OR IN THE ALTERNATIVE
MODIFY DEFENDANT'S CONDITIONS OF PRE-TRIAL RELEASE

The United States respectfully moves this Court pursuant to 18 U.S.C. § 3148(b) to revoke defendant Abhijit Das's conditions of pre-trial release. As grounds, the government submits that the return of an indictment charging the defendant with a multi-million-dollar wire fraud scheme that he committed while on release in this case demonstrates that no condition or combinations of conditions will ensure safety to the community and compliance with the Court's orders.

The defendant was arrested on the indictment in West Palm Beach on June 26, 2023, and will be making his initial appearance in U.S. District Court in West Palm Beach on June 27, 2023.

In the alternative, the government submits that the Court should, at a minimum pursuant to 18 U.S.C. §§ 3142 and 3148, significantly modify the defendant's conditions of release to ensure the safety of the community from his continued fraudulent activities and theft. In support of the government's motion, the government submits the following:

Case History

Starting with the first indictment. On June 29, 2021, the defendant was arrested and made his initial appearance on an indictment charging him with various violations of the Federal Election Campaign Act. The case arose out of the defendant's 2017/2018 campaign for the U.S. House of Representatives. As alleged in the indictment, the defendant orchestrated illegal

1

campaign contributions disguised as loans, converted campaign funds to support his struggling hotel business in Tyngsboro, and made materially false statements to the Federal Election Commission.

The government agreed to conditions of release and the Court issued a release order (Doc. 11) including the first standard condition that the defendant "must not violate federal, state, or local law while on release." *See* 18 U.S.C. § 3142(b). While the government originally proposed restricting the defendant's travel to the New England states, pursuant to the defendant's request, the government agreed to extend the defendant's travel to New York as well as Florida. The defendant claimed he needed to travel to New York and Florida for work. Under the Court's order, the defendant was required to submit an itinerary to Pre-Trial Services/Probation before any travel to Florida.

Trial on the indictment in this case is currently scheduled for October 2, 2023. It will take about 2 weeks. The government anticipates that the case will proceed to trial on October 2, 2023. The government is not seeking a delay of that trial date.

## The Defendant's Criminal Conduct While on Release

The defendant is an attorney licensed in Massachusetts and New York. He has a law firm, Troca Global Advisors LLC ("TGA") based in Boston that claims to have an address in New York on 5th Avenue. At the time of his initial arrest, and continuing through the present day, the defendant advertised the services of his "boutique" law and advisory firm over the internet and social media.[1]

Unbeknownst to investigators, at the time of the initial indictment the defendant was

---

[1] As recently as June 2023, on his LinkedIn page,[1] the defendant also advertised his and TGA's business at a Hospitality Industry Investment Conference to "chat capital and development." According to the LinkedIn page, TGA has 460 followers. See https://www.linkedin.com/company/troca-global (last visited on 6/16/2023).

providing legal and escrow services to a company in India doing business in the United States, the "Supply Company." The Supply Company and its co-founders and owners, two brothers in India, hired the defendant in May 2020 to perform legal and escrow services. The Supply Company was shipping bulk quantities of Personal Protective Equipment ("PPE") during the pandemic. The international shipment of PPE required the services of an escrow agent to hold funds for the transactions in a U.S. based escrow account. The defendant told the two brothers that he would charge a "nominal" fee for escrow services and issued itemized invoices for the payment for the defendant's legal and escrow services. As their attorney and escrow agent, the defendant owed a fiduciary duty to the two brothers and their company, the Supply Company.

Following his initial indictment in June 2021, he also did not disclose the pending charges to the two brothers, and instead proceeded to misappropriate more than $5 million in their funds. As alleged in the indictment returned on June 20, 2023, out of the approximately $52 million that defendant held in trust for the Supply Company in an IOLTA account, the defendant diverted more than $5 million to other accounts in multi-step, layered transactions to misappropriate escrow funds from the Supply Company. *See* Indictment, ¶ 33. The defendant used these funds for personal and business expenses unrelated to the Supply Company's business, including for attorney's fees and expenses related to the "Troca One," a yacht associated with the defendant's hotel business.

One of the most brazen examples of the defendant's recent fraud occurred when he took $2.7 million from his client's escrow funds to purchase a $2.7 million luxury home in Boca Raton, Florida. Knowing that he had stolen his client's money to buy his new house, the defendant even bragged about his new house with his clients and in a WhatsApp conversation shared pictures (complete with a swimming pool) and offered to have them as one of his "first

guests."² The defendant claimed that business had been good in Florida, and said that the purchase of the house would help propel the defendant's next business venture in Boca Raton, Troca Global Capital.

Unfortunately for the Supply Company and the two brothers, the primary source of TGA and the defendant's capital was the more than $5 million he had misappropriated from them. As alleged in the indictment, the defendant orchestrated the scheme by convincing his clients that a potential threat of commercial litigation justified the transfer of millions of dollars to accounts under the defendant's control. To conceal the fraud and lull the victims into a false sense of security that their money was safe with TGA, the defendant emailed the victims fraudulent account statements and forged and false documents.

When the scheme began to unravel in the middle of 2022, and the two brothers asked for the return of their funds, the defendant falsely claimed that he could not provide them with any bank statements for the IOLTA account because it was a "commingled" account. In fact, the primary source of funds for the account, about $52 million, was the money from the Supply Company's business. The defendant also warned his clients not to discuss their ongoing dispute about the missing escrow funds with anyone else because their talking could "circumvent or negate" the protections of the attorney-client privilege they had with the defendant.

Finally, once the brothers fired the defendant and his firm, the defendant distributed a false "Escrow Investment Trust" document purported to contain one of the brother's signatures for the purported agreed upon investment of their escrow funds in the Escrow Investment Trust, with the Supply Company as the grantor and with Troca Global Capital, a company the defendant incorporated in Florida only in July 2022. In fact, the brother's signature was a forgery, and the

---

²A portion of that WhatsApp message is attached as Exhibit A.

defendant never produced any legitimate account statements or documentation for any type of investment.

ARGUMENT

Under the Bail Reform Act, the return of an indictment for serious felony fraud charges, involving a multi-million-dollar fraud scheme, that the defendant committed while on pre-trial release for another serious felony indictment, establishes a rebuttable presumption of pre-trial detention. That presumption here should hold.

A. Legal Standard: 18 U.S.C. § 3148(b)

When, as here, a defendant is charged with violating a condition of release, the Court is required, under 18 U.S.C. § 3148(b), to enter an order of revocation and detention if, after a hearing, the Court:

(1) finds that there is—

    (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

    (B) clear and convincing evidence that the person violated any other condition of release; and

(2) finds that—

    (A) based on the factors set forth in [18 U.S.C. § 3142(g)] there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

    (B) the person is unlikely to abide by any condition or combination of conditions of release.

The statute further provides that, where there is probable cause to believe that a defendant committed a felony while on release, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." *See e.g., United States v. Manafort*, 897 F.3d 340, 345, (D.C.

2018) (affirming the districts court's revocation order following indictment for witness tampering, "with the presumption arising from the Grand Jury's finding of probable cause for the witness-tampering charges").

The rebuttable presumption requires the defendant to produce "some evidence" to rebut it. *United States v. Jittaphol*, 598 F.Supp.3d 22, 27 n. 2 (D.Mass., 2022). Even then, the production of such evidence does not cause the presumption to "disappear". U.S. v. Gennaco, 834 F.Supp.2d 38, 40 (D.Mass.,2011). Instead, the "burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight." *Id. (quoting United States v. Dillon,* 938 F.2d 1412, 1416 (1st Cir.1991)).

B. Unlikelihood that the Defendant Would Abide by Release Conditions

The defendant's brazen violations of pre-trial release demonstrate that the defendant is "unlikely to abide by any condition or conditions of release." 18 U.S.C. § 3148(b)(2)(B). The scope of the fraud, the defendant's clear violation of his fiduciary duties to commit the fraud, and his continued solicitation for business without any regard for legal consequences is troubling.

One factor the Court should consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *See* 18 U.S.C. § 3142(g)(4). Here, that danger is the defendant's continued fraud. The First Circuit, among other courts, has held that the term "danger" in this statute refers to something broader than just physical harm. *See United States v. Tortora,* 922 F.2d 880, 884 (1st Cir. 1990) (stating "[d]anger, in this context, was not meant to refer only to the risk of physical violence"). Other district courts have also indicated that "danger" includes economic harm. *See e.g., United States v. DeSimone*, 2009 WL 904688, at *3 (D.R.I. Apr. 1, 2009*); United States v. Persaud*, 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007) (noting that "economic harm qualifies as a danger within the contemplation of the Bail Reform Act."). This line of analysis has specifically been extended to

cases involving fraud. *United States v. Giordano*, 370 F.Supp.2d 1256, 1270 (S.D. Fla. 2005) ("[t]here can be no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act").

While the defendant does have community ties, it is also worth noting that following the discovery of the fraud in this case, in or about January 2023, the defendant sought permission to travel to London, which through his counsel defendant stated was for the funeral of a friend. After consultation with undersigned counsel, Pre-Trial Services/Probation did not agree to allow the defendant to travel outside the United States.

Additionally, according to Pre-Trial Services/Probation, the defendant has still reported his primary residence to be an apartment on Chelsea Street in Charlestown, Massachusetts. The defendant, however, no longer resides there.

C. Other Conditions of Release

In the event the Court is not persuaded that pre-trial detention is appropriate, the government would then urge this Court to severely amend the defendant's conditions of release to prevent future harm. At a minimum, those additional conditions should include the following:

- Requiring the defendant, within 7 days, to inform each of his (as well as Troca Global Advisors, LLC and Troca Capital Advisors, LLC's) current and future clients, *in writing*, about his pending indictment*s* and providing them with a copy of both indictments, and submitting those written advisements to the court, *ex parte*.

- Prohibiting the defendant from soliciting or accepting any funds for investment or investment contract purposes.

- Immediately re-establishing the defendant's primary residence and prohibiting travel outside the District of Massachusetts absent court authorization. (As indicated above, the defendant's primary residence is unknown).

While the government maintains that pre-trial detention is appropriate in this case, the

above conditions would at least provide some measures that would prevent the defendant from further fraud.

## CONCLUSION

Accordingly, the government submits that the defendant, Abhijit Das, should be detained pending trial.

    Respectfully submitted,

    JOSHUA S. LEVY
    Acting United States Attorney

By:    /s/ *Neil Gallagher*
        Neil J. Gallagher, Jr.
        Assistant U.S. Attorney

Date Submitted: June 26, 2023

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By:    *Neil Gallagher*
        Neil Gallagher
        Assistant U.S. Attorney