**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA

  v.             Crim. No. 21cr10200-RGS

ABHIJIT DAS,

    Defendant

**DEFENDANT DAS'S OPPOSITION TO UNITED STATES'
MOTION TO REVOKE OR, IN THE ALTERNATIVE MODIFY
DEFENDANT'S CONDITIONS FOR PRE-TRIAL RELEASE**

  Defendant Abhijit Das opposes the government's motion to revoke his release or modify his conditions of release. He discusses below three reasons, each of which rebuts any presumption in favor of detention:

  1.  Chief Magistrate Judge M. Page Kelley and Southern District of Florida Magistrate Judge Ryon McCabe have set Mr. Das's conditions of release for the recently indicted case pending before Judge Angel Kelley (*U.S. v. Das*, 23-cr-10160-AK). After hearing arguments on a few areas of disagreement between Mr. Das and the government, and otherwise largely based on stipulations between the parties, Magistrate Judges Kelley and McCabe have imposed a thoughtful set of conditions for Mr. Das's release, which he is fully complying with. Mr. Das respectfully requests that the Court review the conditions recently imposed and he hopes the Court will find them appropriate to protect the public interest. Mr. Das also respectfully suggests that at most, this Court should amend Mr. Das's conditions of release in this case to more closely mirror the conditions in the second case.

  2.  Mr. Das is presently engaged nearly full-time working with undersigned counsel to prepare for his trial before Judge Stearns, scheduled to start in approximately seven weeks, on October 2, 2023. Though this case has been pending since 2021, defense counsel only filed an

appearance in April 2023.  Defense counsel needs to confer multiple times with Mr. Das on a near daily basis to prepare his defense to highly technical charges.  That the government has readily accepted a seven week period from Mr. Das's second arrest on June 26, 2023 to the August 15, 2023 hearing, indicates it does not truly believe his detention is necessary or warranted.  Moreover, the government has also issued a subpoena to Mr. Das's firm, Troca Global Advisors LLC, seeking extensive information that the government expects Mr. Das to provide in the coming weeks.

3.      The second indictment unfairly misrepresents a commercial dispute and tries to portray it as a crime.  It hides the fact that Mr. Das and his firm have been trying to place the disputed funds at the core of the second indictment into an escrow account or interpleader since April 2023, which the government and the ostensible victims of the alleged fraud have been frustrating for ulterior motives.

<u>**Factual Background**</u>

The indictment in case no. 23-cr-10160-AK stems from Mr. Das's representation of two brothers, Devang Shah and Gaurang Shah, and their company Bulk MRO Industrial Supply Inc. Mr. Das and his firm provided legal and escrow services and managed funds for the Shahs and their business.

Part of the services that Mr. Das provided to Bulk MRO was to hold funds in escrow, trust, or otherwise on their behalf.  On September 30, 2022, Bulk MRO's largest creditor ("Brevet") and its subsidiary VendorPayment sent Mr. Das's law firm a letter informing him that Brevet was claiming funds Mr. Das was holding for Bulk MRO.  *See* Exhibit 6, Re: Notice to Bulk MRO Regarding Federal Resources Proceeds, to Exhibit A, *Troca Global Advisors LLC v. Global Liquidity Services LLC, et. al*, No. 23-CV-11546, Complaint for Interpleader.  The creditor

demanded that Mr. Das and his firm place Bulk MRO's funds in a neutral escrow. *Id.* at 2. If Mr. Das or his firm released the funds to either side, they risked the other side suing them.

This dispute percolated for months, and in or about late April 2023, the undersigned counsel contacted by telephone the Shahs' attorney, Aaron Katz, Esq., and offered to have Mr. Das place the disputed funds either with an escrow agent mutually acceptable to both sides, or to file an interpleader and place the funds with the court. Mr. Katz has consistently rebuffed all offers to place the funds with a neutral stakeholder and remove Mr. Das and his firm from the dispute, even though Brevet's counsel accepted the offer. *See* Exhibit E, June 5, 2023 Letter Re: Troca Global Advisors LLC ("VendorPayment has no objection to Troca Global Advisors LLC placing the funds referenced in your letter into an escrow account administered by a neutral third-party escrow agent"). At the time, Mr. Das's counsel was bewildered that Bulk MRO's counsel did not want the funds out of Mr. Das's control and with a neutral entity.

During May 2023, Mr. Das learned that the government was issuing grand jury subpoenas to his business associates for an investigation related to the Bulk MRO funds. On June 4, 2023, Mr. Das retained attorney Glenn MacKinlay to represent him on the Bulk MRO investigation. On June 9, 2023, Mr. MacKinlay spoke with AUSA Neil Gallagher and asked if they could meet. He intended to explain the essentially civil nature of the dispute and note Mr. Das's willingness and prior efforts to transfer the disputed funds to an escrow agent or via interpleader. On June 14, 2023, Mr. Gallagher agreed to meet with Mr. MacKinlay before any charges were brought against Mr. Das and offered to meet on June 23 or 24, 2023. Nonetheless, on June 20, 2023, the grand jury returned the indictment commencing the second case, and the meeting never took place.

On July 10, 2023, Mr. Das's firm, Troca Global Advisors LLC, filed the interpleader action, which is pending before Judge Kelley. Exhibit A, Complaint for Interpleader. The Shahs

and the government have indicated they will not cooperate with Mr. Das's efforts to transfer the disputed funds for the Court to hold as part of the interpleader.  Exhibit B, *Troca Global Advisors LLC v. Global Liquidity Services LLC, et al.*, No. 23-cv-11546-AK, Motion of the United States (Department of Justice) for Leave to Intervene and for a Stay.

Mr. Das's counsel found the government's and Shahs' disinterest in having the funds transferred to be highly puzzling



Clearly, the Shahs would rather facilitate the second prosecution of Mr. Das than get the funds into the protection of an interpleader.  If the government had held off its indictment until Mr. Das could have perfected the interpleader, it would have ameliorated any injury to any ostensible victim, but this also would have dulled the jury appeal of the second indictment.  The government has named among the forfeiture claims in the second indictment one of the Bulk MRO assets[1] that Mr. Das's firm was looking to liquidate and put into the interpleader.  Neither the Shahs' counsel nor the government will cooperate with the interpleader.

### Conditions of Release in the Bulk MRO Case

Following the indictment in the new Bulk MRO case, law enforcement officers with drawn guns arrested Mr. Das in Fort Lauderdale, Florida on June 26, 2023.  The government at first sought to detain him, but after a colloquy with Magistrate Judge Ryon McCabe, the government

---

[1]      A mortgage on a yacht.

agreed to release him on a set of conditions to allow his return to Massachusetts for a detention hearing before Magistrate Judge Kelley. *See* Exhibit C, *USA v. Das*, No. 23-mj-8331-RMM (S.D. Fla.), United States District Court for the Southern District of Florida Conditions of Bond.

On July 11, 2023, Magistrate Judge Kelley imposed a set of conditions and released Mr. Das to return to his residence in Florida. *See U.S. v. Das*, No. 23-cr-10160-AK, ECF No. 18, Electronic Clerk's Notes for Arraignment Proceedings. The condition most noteworthy and relevant to this motion, was the one requiring Mr. Das to inform all of his clients of his two pending indictments. He has informed Pre-trial Services in Florida that he sent all his clients the notice on August 7, 2023. *See* Exhibit D, August 7, 2023, Email and Letter, "Troca Global Client Communications – Sent." Finally, Mr. Das has also retained as counsel Rose Law Partners LLP, including Alan Rose, Sr., a leading expert on legal ethics and a former member of the Board of Bar Overseers, to represent him in the interpleader action. Mr. Das is regularly consulting with Rose Law Partners LLP on issues related to his practice and the interpleader.

In sum, Mr. Das has rebutted any presumption of detention based on the second indictment. He disputes the charges in the second indictment and has obeyed all of his conditions of release imposed in both cases, including informing his clients about both indictments. These conditions keep his clients adequately informed.

The government implies vague concerns about Mr. Das's residency and travel but Mr. Das's residency is simple and has not changed. When Mr. Das is in Massachusetts, spending time with his elderly parents and preparing for trial with undersigned counsel, he stays with his parents in his family home, as he has over his life. When Mr. Das is in Florida, he lives in the home he shares with his fiancé. Mr. Das has complied with his conditions by submitting his itinerary to

Probation prior to travel.  The government has not shown that Mr. Das, who has deposited his United States Passport with the Court, is a flight risk or poses a danger to the safety of others.

In his efforts to abide by his conditions, Mr. Das has tried to take steps to minimize any risks to his clients by placing the disputed funds in an interpleader or with an escrow agent, only to see the ostensible victim and the government frustrate such attempts.  He seeks and follows the advice of a highly respected expert on legal ethics in continuing to follow his conditions of release. Pre-trial detention is unnecessary and inappropriate in this case.

## CONCLUSION

For the foregoing reasons, the Court should deny the government's motion to revoke or modify Mr. Das's conditions of pretrial release.  To the extent the Court is persuaded to modify Mr. Das's conditions in this case, Mr. Das asks that the Court consider adopting the same conditions imposed by Magistrate Judge Kelley on July 11, 2023 in Mr. Das's second case.


Dated: August 10, 2023

Respectfully submitted

Abhijit Das, by his counsel:

/s/ Michael Kendall
Michael Kendall (BBO # 544866)
Abigail Mahoney (BBO #709427)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
abigail.mahoney@whitecase.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2023, I caused a true and accurate copy of the forgoing to be served on counsel of record by CM/ECF.

/s/ Michael Kendall
Michael Kendall

# Ex. A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

<table>
<tr><td>

TROCA GLOBAL ADVISORS LLC

   Interpleader Plaintiff,

  v.

GLOBAL LIQUIDITY SERVICES LLC,
d/b/a VENDORPAYMENT, AND BULK
MRO INDUSTRIAL SUPPLY, INC.,

   Interpleader Defendants,

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

Civil Action No.: 1:23-CV-11546

</td></tr>
</table>

## COMPLAINT FOR INTERPLEADER

### INTRODUCTION

1. Plaintiff-Stakeholder, Troca Global Advisors LLC ("Troca" or "Plaintiff-Stakeholder"), brings this Interpleader action against Global Liquidity Service LLC d/b/a VendorPayment and Bulk MRO Industrial Supply, Inc. (collectively referred to as "Defendants") pursuant to Rule 22 of the Federal Rules of Civil Procedure.

2. Defendants have conflicting claims to assets held in escrow by Troca, and Troca seeks to avoid the vexation of defending multiple claims to the assets by filing this Complaint for Interpleader.

### PARTIES

3. Plaintiff Troca Global Advisors LLC is a firm offering legal, advisory and escrow services. It is organized under the laws of the Commonwealth of Massachusetts with its

principal place of business in Boston, Massachusetts.  Troca is authorized to do business in the Commonwealth of Massachusetts.

4.      Defendant Global Liquidity Service LLC d/b/a VendorPayment ("VendorPayment") is a financial services company.  On information and belief, VendorPayment is organized under the laws of Delaware with headquarters in Carlsbad, California.

5.      Defendant Bulk MRO Industrial Supply, Inc. ("Bulk MRO") is engaged in supply chain transactions and financing for such transactions.  On information and belief, Bulk MRO is organized under the laws of Delaware with offices in Wilmington, Delaware, New York and headquarters in Mumbai, India.

## JURISDICTION AND VENUE

6.      The amount in controversy in this action is in excess of $3,431,198 exclusive of interest and costs.

7.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000.00 and there is diversity between the Plaintiff-Stakeholder and the Defendants.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims at issue occurred in this District.

## FACTS

9.       Bulk MRO retained Troca on or about May 13, 2020 for legal and escrow services.

10.      On or about June 17, 2020, without advice from Troca, Bulk MRO executed a Receivables Purchase Agreement and Rider ("Receivables Agreement") with VendorPayment.

Ex. 1 (Receivables Agreement). Under the Receivables Agreement, VendorPayment financed
(a) certain accounts receivables from Bulk MRO's clients and/or (b) the purchase by Bulk MRO
of goods for resale to its clients. In both instances, VendorPayment received an interest in the
goods and in the assets of Bulk MRO in exchange for the financing arrangements. After the
execution of the Receivables Agreement, Bulk MRO announced on its website the availability of
financing made possible through VendorPayment ("Bulk MRO is Financing Transactions up to
$50 Million Per Shipment"), an announcement that remains on Bulk MRO's website. Ex. 2
(Bulk MRO Website).

     11.     On February 15, 2021, Federal Resources, an existing client of VendorPayment
and large government contractor and supplier of PPE ("FR"), issued its first purchase order to
Bulk MRO for a $62.4 million order of Hongray vinyl nitrile gloves (the "Purchase Order"). FR
confirmed the Purchase Order with modified terms and conditions on or about February 24,
2021.

     12.     On information and belief, to facilitate the necessary funding from Vendor
Payment, on or about March 26, 2021, Bulk MRO, again without consulting or receiving advice
from Troca, executed a Notice of Assignment in favor of VendorPayment. Ex. 3 (Assignment).
The Assignment provided, in part, "Please be advised that all outstanding and future invoices
have been assigned to VendorPayment and are now payable only to them."

     13.     On information and belief, on or about April 14, 2021, Bulk MRO advised
VendorPayment of its intention not to finance the Purchase Order through VendorPayment.

     14.     Notwithstanding any apparent reliance on financing arrangements provided by
VendorPayment, Bulk MRO advised Troca that the financing of the Purchase Order would be

handled internally by Bulk MRO and not through VendorPayment.[1]  On or about April 12, 2021, FR's first payment under the Purchase Order was received by Bulk MRO.

15.     Bulk MRO expressed concern to Troca that VendorPayment was seeking to coopt or otherwise divert for itself payments from FR under the Purchase Order.  Accordingly, in early May 2021, Bulk MRO designated its escrow bank account with JP Morgan Chase as the account into which payments from FR under the Purchase Order would be deposited.  On May 10, 2021, Bulk MRO executed the Federal Resources Escrow Agreement ("Escrow Agreement") with Troca under which Troca served as the escrow agent.  Ex. 4 (Escrow Agreement).  Pursuant to the Escrow Agreement, Troca is obligated to "hold the Escrow Funds" until it receives authorization from Bulk MRO to disburse the funds to Bulk MRO's payee.   Ex. 4, § 3.1.

16.     Pursuant to the Escrow Agreement, Troca is "obligated only for the performance of such duties as are specifically set forth" in the agreement. Ex. 4, § 4.1.1.  It provides that "[t]he Escrow Agent shall not be responsible for the genuineness, validity, enforceability or sufficiency of title to any Escrow Funds or other property delivered to it hereunder."  Ex. 4, § 4.1.3.

17.     In addition, the Escrow Agreement provides that, "[i]n performing any duties under or in connection with this Agreement, Escrow Agent shall not be liable to any Party for damages, losses, or expenses, except for gross negligence or willful misconduct on the part of the Escrow Agent."  Id., § 4.14.

18.     The Escrow Agent provides that Troca is "expressly authorized to comply with and obey orders, judgments or decrees of any court of law" and provides that "the Escrow Agent

---

[1] In light of the current claims between and among the parties, Bulk MRO's disclosures to the United States Attorney for the District of Massachusetts, and the filing of *USA v. Das*, 1:23-cr-10160-AK (D. Mass.), disclosure of the information in this complaint is warranted under Mass. R. Prof. C. 1.6(b)(5).

shall not be liable to any of the Parties or to any other Person" by reason of [] compliance" with any such order.  Id., § 4.1.2.

19.     Pursuant to the Escrow Agreement, Bulk MRO "agree[d] to indemnify and hold the Escrow Agent, its partners, officers and employees, harmless against any and all losses, claims, damages, liabilities, and expenses, including reasonable costs of investigation, counsel fees, and disbursements that may be imposed on the Escrow Agent or incurred by the Escrow Agent in connection with the performance of its duties under or in connection with this Agreement, including any litigation arising from or in connection with this Agreement or involving its subject matter."  Id. § 4.1.6.

20.     The Escrow Agreement also provides that Bulk MRO "absolutely and irrevocably consents and submits to the jurisdiction of the state and federal courts located in the Commonwealth of Massachusetts."  Id. § 1.12.

21.     In an email dated June 2, 2021, Vendor Payment's Operations Specialist Emily Maldonado identified VendorPayment as Bulk MRO's financier for the Purchase Order, asserted its rights under the Receivables Agreement, and issued a Notice of Assignment to FR, which had been signed by Bulk MRO, seeking to assign the Proceeds from the Purchase Order ("Proceeds") to VendorPayment.

22.     On information and belief, Bulk MRO advised FR that the Notice of Assignment was fraudulent.  As a result, the Proceeds continued to be paid to Bulk MRO's escrow account.

23.     Between May 6, 2021 and June 25, 2021, proceeds from the Purchase Order ("Proceeds") totaling $54,256,8000 were deposited in escrow pursuant to the Escrow Agreement.

24.    A portion of the Proceeds were placed in an Escrow Investment Trust (the "EIT") and held by Cayan Group LLC.  The EIT granted broad discretion to Troca and its affiliates to seek investment returns for Bulk  MRO.

25.    On January 24, 2022, counsel to VendorPayment notified Bulk MRO by letter ("January Letter") that Bulk MRO was allegedly in default of the parties' Receivables Agreement dated June 17, 2020.  Ex. 5 (January 24, 2022 Letter).

26.    The January Letter states that as a result of Bulk MRO's alleged breach, VendorPayment was terminating the Receivables Agreement and demanded payment of $113,318,082.33 from Bulk MRO.  Ex. 5.

27.    On August 18, 2022 Bulk MRO terminated its engagement of Troca as counsel.

28.    On September 30, 2022, counsel to VendorPayment notified Troca and Bulk MRO of potential claims against Bulk MRO ("September Letter").  Ex. 6 (September 30, 2022 Letter).

29.    The September Letter claims that by or before June 2, 2021, VendorPayment put Bulk MRO on notice that the Proceeds from the Purchase Order would be assigned to VendorPayment under the terms of the Agreement, and that it had come to VendorPayment's attention that Bulk MRO may be in possession of funds derived from VendorPayment's receivables.  Ex. 6.

30.    VendorPayment's September Letter also demands that, to the extent Bulk MRO received the Proceeds, Bulk MRO must hold the receivable in trust for VendorPayment and requested that Bulk MRO place the Proceeds in an escrow account.  Ex. 6.

31.     By letter dated May 30, 2023 ("May Letter"), Troca notified Bulk MRO and VendorPayment that it is in possession, custody or control of certain funds that may be the subject of VendorPayment's September Letter ("Assets").

32.     The May Letter requested that Bulk MRO and VendorPayment agree to allow Troca to deposit the Assets with a neutral escrow agent and to respond to Troca's request no later than June 5, 2023.  The May Letter also stated that, failing such agreement, Troca intended to file an interpleader action.

33.     By letter dated June 5, 2023, VendorPayment's counsel stated that it had no objection to Troca placing the Assets, referenced in the May Letter, into an escrow account administered by a neutral third-party escrow agent.

34.     Bulk MRO did not respond to the May Letter.

35.     Upon information and belief, Bulk MRO contacted the United States Attorney's Office for the District of Massachusetts.

36.     On June 20, 2023, the United States Attorney's Office filed a sealed indictment in the District of Massachusetts, *USA v. Das*, 1:23-cr-10160-AK ("USA v. Das"), which was unsealed on June 26, 2023.

37.     Troca could not and still cannot disburse the Assets without subjecting itself to competing claims or potentially competing claims by the Defendants.

38.     Currently, Assets valued at above $3,431,198 are held in escrow by Troca pursuant to the Escrow Agreement.

<u>COUNT I</u>
**INTERPLEADER**

39.     Paragraphs 1 through 38 are incorporated by reference as though fully set forth herein.

7

40.     Conflicting issues of law and fact exist regarding entitlement to the Assets.

41.     Troca is merely a stakeholder and claims no beneficial interest in the Assets, except for the payment of its reasonable attorneys' fees and costs incurred in bringing this action.

42.     Troca is now, and at all times has been, ready and willing to pay the Assets to the party legally entitled to them.

43.     Troca cannot determine the party legally entitled to the Assets without assuming the responsibility of determining doubtful questions of fact and law, and without incurring the risk of being subject to costs and expenses in defending itself in multiple suits or the possibility of exposing the Assets to multiple payments of the amount due.

44.     By reason of the conflicting or potentially conflicting claims of the Defendants, and claims that may not yet have been asserted, Troca is entitled to have this Court adjudicate the competing claims, or potentially competing claims of the Defendants and to establish Troca's legal obligations to the Defendants with finality.

45.     Troca will deposit the Assets, including (a) the interests in Cayan Group LLC and (b) a check for any cash or cash equivalents held by Cayan Group LLC, following the entry of an appropriate order allowing Troca to pay the Assets into the Court's registry.


## PRAYER FOR RELIEF

**WHEREFORE**, Troca respectfully requests that the Court:

1.  Permit Troca to deposit the Assets with the Court, including (a) shares and membership interests in any investments and (b) cash, as such funds are released upon liquidation of investments.

2. Order the Defendants to interplead and settle between themselves their rights to the Assets, and that of Plaintiff-Stakeholder;

3. Discharge Troca from all liability except with respect to the distribution of the Assets in accordance with this Court's determinations and dismiss Troca from this action with prejudice;

4. Issue an Order enjoining Defendants from instituting or prosecuting any action in any state or United States Court against Troca for the recovery of the remaining Assets or any portion thereof while this action is pending;

5. Permit Troca to recover its costs and attorney's fees in connection with this action; and

6. Order such other and further relief as this Court deems just and proper.

**TROCA GLOBAL ADVISORS LLC**

Respectfully submitted,

By its attorneys,

*/s/ Alan D. Rose Jr.*
Alan D. Rose, Jr. (BBO #628871)
Meredith W. Doty (BBO #652220)
ROSE LAW PARTNERS LLP
One Beacon Street, 23rd Floor
Boston, MA  02108
(617) 536-0040
Fax: (617) 536-4400
adrjr@rose-law.net
mwd@rose-law.net

Dated: July 10, 2023

**Exhibit 6**



Jeffrey M. Reisner
213 439 9452
jreisner@steptoe.com

633 West Fifth Street
Suite 1900
Los Angeles, CA 90071
213 439 9400 main
www.steptoe.com

September 30, 2022

**Via Email (ppapalia@archerlaw.com; adas@trocaglobal.com)**

Patrick Papalia
Archer & Greiner P.C
Court Plaza South, West Wing
21 Main Street, Suite 353
Hackensack, NJ 07601

Abhijit "Beej" Das
Troca Global Advisors, LLC
10 Post Office Square, Suite 800S
Boston, MA 02109

      Re:    **Notice to Bulk MRO Regarding Federal Resources Proceeds**

Counsel:

      Our firm represents FCS Advisors, LLC dba Brevet Capital Advisors ("Brevet") and its wholly-owned subsidiary Global Liquidity Services, LLC dba VendorPayment ("VendorPayment"). As you know, VendorPayment and your client, Bulk MRO Industrial Supply, Inc. ("Bulk MRO") entered into a Receivables Purchase Agreement on June 17, 2020 (the "RPA"). In connection with this transaction, Bulk MRO received a purchase order from Federal Resources, Inc. dated February 15, 2021 for the purchase of Hongray vitrile gloves ("the Collateral"), totaling $62,400,000.00 (the "Purchase Order"). By or before June 2, 2021, VendorPayment put Bulk MRO on notice that the proceeds from this Purchase Order would be assigned to VendorPayment under the terms of the RPA.

      It has come to our attention that Bulk MRO may be in possession of funds derived from VendorPayment's receivable (the "Proceeds"). Pursuant to the terms of the RPA, Bulk MRO "irrevocably authorize[d] [VendorPayment] to exercise at any time, any of the following powers,



at [Bulk MRO's] sole expense, until all of the Obligations have been paid in full: (a) receive, take, endorse, assign, deliver, accept and deposit, in the name of Purchaser or Seller, any and all proceeds of any Collateral securing the Obligations or the proceeds thereof[.]" To the extent Bulk MRO received Proceeds from the Federal Resources transaction, Bulk MRO must hold this receivable in trust for VendorPayment and may not dispose of, convert, or otherwise disburse any portion of the Proceeds.

We propose to meet and confer on this issue at your earliest convenience. Until that time, we ask that Bulk MRO place the Proceeds in an escrow account. If Bulk MRO refuses to secure the Proceeds or otherwise disburses or disposes of any portion of the Proceeds, VendorPayment will seek full recourse under the terms of the RPA and under the law. VendorPayment reserves all rights.

Sincerely,

/s/ Jeffrey Reisner

Jeffrey Reisner

CC:    Jeremy Goldkind
        Cara Lawson
        Betsy Zyrkowski

# Ex. B

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **23-cv-11546-AK** |
| | ) | |
| | ) | |
| **ABHIJIT DAS, a/k/a "Beej Das,"** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MOTION OF THE UNITED STATES (DEPARTMENT OF JUSTICE) FOR LEAVE TO INTERVENE AND FOR A STAY PENDING RESOLUTION OF PARALLEL CRIMINAL PROCEEDINGS, AND MEMORANDUM IN SUPPORT

The United States Department of Justice ("government") respectfully moves to intervene in this action for the limited purpose of moving to stay this case until the resolution of the two criminal indictments against criminal defendant ABHIJIT DAS, a/k/a "Beej Das," the principal of Interpleader Plaintiff Troca Global Advisors, LLC.

Interpleader Plaintiff Troca Global Advisors, LLC **objects** to the granting of this motion. Interpleader Defendant Global Liquidity Services, LLC d/b/a VendorPayment **takes no position** on the granting of this motion. Interpleader Defendant MRO Industrial Supply, Inc., **assents** to the granting of this motion.

## BACKGROUND

A.     The Initial Indictment (21-cr-10200-RGS)

The first indictment the defendant faces is set for trial on October 5, 2023. That case, *United States v. Abhijit Das,* 21-cr-10200-RGS, arose out of the defendant's 2017/2018 campaign for the U.S. House of Representatives. As alleged in the indictment, the defendant orchestrated illegal campaign contributions disguised as loans, converted campaign funds to support his struggling hotel business in Tyngsboro, and made materially false statements to the Federal

Election Commission. The defendant made his initial appearance on the initial indictment on June 21, 2021, and was released on conditions of release.

B.     The Second Indictment (23-cr-10160-AK)

The second indictment – which is now before this Court – alleges that the defendant committed a five-million-dollar fraud while on pre-trial release on the first indictment.  As detailed in this second indictment, the defendant committed nine out of the ten wire fraud offenses while on pretrial release.[1]  The defendant was arrested on the charges on the second indictment in Florida on June 25, 2023.  The defendant made his initial appearance on the second indictment in the District of Massachusetts before Chief U.S. Magistrate Judge M. Page Kelley on July 11, 2023.

The indictment further alleges that the defendant used his law firm, Troca Global Advisors LLC, to commit the offenses and misappropriate funds in what was purported to be the firm's escrow and IOLTA accounts.   Interpleader Plaintiff Troca Global Advisors, LLC filed this instant civil action on July 10, 2023.

*1.  Troca Global Advisors, LLC ("TGA")*

At the time of his initial arrest in June 2021 and through his arrest on the current indictment in July 2023, the defendant was the principal of a small law firm in Boston called Troca Global Advisors LLC ("TGA").   Unbeknownst to investigators, at the time of the initial indictment the defendant was providing legal and escrow services to a company in India doing business in the United States, the "Supply Company."

The Supply Company and its co-founders and owners, two brothers in India ("Person 1 and 2"), hired the defendant in May 2020 to perform legal and escrow services.  The Supply

---

[1]A show cause hearing to revoke the defendant's conditions of release on the first indictment is set for August 15, 2023, before U.S. Magistrate Judge Jennifer C. Boal.

Company was shipping bulk quantities of Personal Protective Equipment ("PPE") during the pandemic. The international shipment of PPE required the services of an escrow agent to hold funds for the transactions in a U.S. based escrow account. The defendant told the two brothers that he would charge a "nominal" fee for escrow services and issued itemized invoices for the payment for the defendant's legal and escrow services. As their attorney and escrow agent, the defendant owed a fiduciary duty to the two brothers and their company, the Supply Company.

    *2. DAS's Misappropriation of Client Funds*

    Following his initial indictment in June 2021, the defendant failed to disclose his pending charges to the two brothers, and instead proceeded to misappropriate more than $5 million in their funds. As alleged in the indictment, out of the approximately $52 million that defendant held in trust for the Supply Company in an IOLTA account, the defendant diverted more than $5 million to other accounts in multi-step, layered transactions to steal the money for himself. *See* Indictment, ¶ 33. The defendant used these funds for personal and business expenses unrelated to the Supply Company's business, including for attorney's fees and expenses related to the "Troca One," a yacht associated with the defendant's hotel business.

    One of the most brazen examples of the defendant's recent fraud occurred when he took $2.7 million from his client's escrow funds to purchase a $2.7 million luxury home in Boca Raton, Florida. Knowing that he had stolen his client's money to buy his new house, the defendant even bragged about his new house with his clients and in a WhatsApp conversation shared pictures (complete with a swimming pool) and offered to have them as one of his "first guests." The defendant claimed that business had been good in Florida, and said that the purchase of the house would help propel the defendant's next business venture in Boca Raton, Troca Global Capital.

    Unfortunately for the Supply Company and the two brothers, the primary source of TGA

3

and the defendant's capital was the more than $5 million he had misappropriated from them. As alleged in the indictment, the defendant orchestrated the scheme by convincing his clients that a potential threat of commercial litigation (from Interpleader Defendant Global Liquidity Services LLC, d/b/a VendorPayment) justified the transfer of millions of dollars to accounts under the defendant's control. To conceal the fraud and lull the victims into a false sense of security that their money was safe with TGA, the defendant emailed the victims fraudulent account statements as well as forged and false documents.

### 3. The Supply Company Seeks the Return of its Escrow Funds

When the scheme began to unravel in the middle of 2022, and the two brothers asked for the return of their funds, the defendant falsely claimed that he could not provide them with any bank statements for the IOLTA account because it was a "commingled" account. In fact, the primary source of funds for the account, about $52 million, was the money from the Supply Company's business. The defendant also warned his clients not to discuss their ongoing dispute about the missing escrow funds with anyone else because their talking could "circumvent or negate" the protections of the attorney-client privilege they had with the defendant.

Finally, once the brothers fired the defendant and his firm, the defendant distributed a false "Escrow Investment Trust" document. That document purported to contain one of the brother's signatures and his agreement to invest their escrow funds in an "Escrow Investment Trust," with the Supply Company as the grantor and with Troca Global Capital, a company the defendant incorporated in Florida only in July 2022. In fact, the brother's signature was a forgery, and the defendant never produced any legitimate account statements or documentation for any type of investment.

### 4. The Current Investigation

Agents from the FBI first spoke with Person 1 and 2 about their allegations in November

2022. An investigation ensued that involved the interview of other witnesses and the review of voluminous financial records. The defendant and his prior counsel became aware of the government's investigation involving the allegations from the Supply Company by at least March 2023. Since that time, the defendant, through his various counsel, has sought to fend off the current charges by falsely claiming that the current controversy is simply as civil dispute involving potential liability to third parties and not criminal in nature. The defendant's law firm, TGA, first provided notice in a letter to the Supply Company with its intent to file an interpleader action on or about May 30, 2023.

Finally, it should be noted that the government's investigation in this matter is not complete and is ongoing.[2]

## ARGUMENT

For the following reasons, a complete stay of this case, pending the resolution of the two criminal cases, is justified for several reasons.

*First*, without a stay, the defendant could use the civil discovery process in a manner that impairs proper administration of the October 2023 trial, the most recent indictment, and the government's ongoing investigation. That could include, among other discovery vehicles, the deposition of the two victims in this case, Persons 1 and 2, as well as law enforcement agents. Courts in this and other districts have repeatedly recognized the substantial differences between the breadths of civil discovery as compared to a criminal case. See, e.g., SEC v. TelexFree, Inc., --- F. Supp. 3d ---, 2014 WL 5151281, at *3 (D. Mass. Oct. 8, 2014) (Gorton, J.) (ordering that

---

[2]If necessary, the government can provide the Court with an ex parte and under seal pleading regarding the nature and extent of any ongoing grand jury investigation. See United States Securities and Exchange Commission v. Kanodia, 153 F.Supp.3d 478, 482 (D.Mass., 2015) ("The Court would be more inclined to issue a stay if the pendency of the civil case threatened to compromise the integrity of an ongoing government investigation").

discovery be stayed in an insider-trading enforcement action pending the outcome of parallel criminal cases and noting that "staying the civil proceedings would prevent the criminal defendants from exploiting liberal civil discovery rules to obtain evidence to support their criminal defenses"); Gov. of Fed. Reserve v. Pharaon, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery."); United States v. Mellon Bank, N. A., 545 F.2d 869, 872-873 (3rd Cir. 1976) (affirming stay, noting that "the similarity of the issues left open the possibility that [target] might improperly exploit civil discovery for the advancement of his criminal case").

*Second*, a stay of discovery would create genuine efficiencies and promote judicial economy.  As a practical matter, the criminal cases are likely to be resolved before this case, and any resolution of that case will dramatically affect the result here.  At a minimum, hashing out the criminal case before this one will greatly simplify the issues to be resolved here, even if any civil discovery ultimately occurs.[3]

*Third*, giving precedence to the criminal case, far from prejudicing the defendant, a stay of the instant case will save litigation costs.

For all these reasons, a stay of discovery is in the public interest, is the more efficient use of judicial and litigant resources and will not prejudice the defendant in either action.

_____

[3] See, e.g., In re Grand Jury Proceedings (Williams), 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues."); Texaco, Inc. v. Borda, 383 F.2d 607, 609 (3d Cir. 1967) (affirming stay of civil action in part because "the trial of the criminal case [might] reduce the scope of discovery in the civil action . . . [a]nd . . . perhaps might also simplify the issues"); Brock v. Tolkow, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) ("[T]he resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues.").

## ARGUMENT

### I.     THE COURT SHOULD ALLOW THE GOVERNMENT TO INTERVENE FOR THE LIMITED PURPOSE OF MOVING FOR A STAY.

Pursuant to Rule 24(a) (2) of the Federal Rules of Civil Procedure, anyone may intervene as of right when the applicant "claims an interest relating to the property or transaction which is the subject of the action" and the applicant is so situated that "disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest . . . ."  See also Intl. Paper Co. v. Inhabitants of Jay, Maine, 887 F.2d 338, 342 (1st Cir. 1989) (discussing standard).[4]  Furthermore, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).

Here, the government has a direct and substantial interest in the subject matter of this litigation, which is the same subject matter as that underlying the government's prosecution before this Court in *United States v. Abhijit Das,* 23-cr-1016-AK. Specifically, the government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter."  SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988) (denying appeal of district court order that allowed intervention and stayed SEC enforcement action in favor of criminal case).  Without intervention, the government cannot protect its interest in the criminal prosecution and ongoing investigation, because it cannot weigh in on whether civil discovery should proceed.

The Court can also permit intervention "when an applicant's claim or defense and the

---

[4] "Thus, a party seeking intervention of right under Rule 24(a)(2) must demonstrate three things: 1) that it has a direct and substantial interest in the subject matter of the litigation; 2) that its ability to protect the interest may be impaired if it is not allowed to intervene; and 3) that its interest will not be adequately represented by an existing party.  See, e.g., Keith v. Daley, 764 F.2d 1265, 1268 (7th Cir. 1984)."  Id.

main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). To intervene

under this section, the government must establish that there is a common question, an

independent ground for jurisdiction, and a timely motion. If these conditions are met, the district

court has the discretion to allow intervention, and should consider whether intervention will

unduly delay or prejudice adjudicating the civil case and whether the interests of the intervener

are already adequately represented by the existing parties. See id.; see also, e.g., In re Acushnet

River & New Bedford Harbor Proceedings, 712 F. Supp. 2d 1019, 1023 (D. Mass. 1989)

(discussing standard); Bureerong v. Uvawas, 167 F.R.D. 83, 85-86 (C.D. Cal. 1996) (permitting

government to intervene under Rule 24(b)(2) and staying civil discovery pending resolution of

criminal case).

 Here, there are clearly facts and issues in common. The interpleader alleges that the

"there are conflicting claims to assets held in escrow" that the indictment alleges that the

defendant stole through a wire fraud scheme. The two controversies are in fact identical. The

defendant is simply seeking this civil action to impede and stave off the criminal indictment.

 Courts regularly recognize that federal prosecutors have a substantial interest in

intervening in civil actions to protect the interests of the United States in securing convictions in

criminal cases. See, e.g., TelexFree, Inc., 2014 WL 5151281, at *2; Chestman, 861 F.2d at 50.

"It is well established that the United States Attorney may intervene in a federal civil action to

seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or

already underway, that involves common questions of law or fact." SEC v. Downe, 1993 WL

22126, at *11 (S.D.N.Y. 1993) (citations omitted).

 Furthermore, while the instant civil action and the second indictment are mostly unrelated

to the campaign finance charges in the first indictment, that case is set to proceed to trial on

October 5, 2023. Both cases involve allegations of embezzlement and misuse of funds. A

conviction from the October 5, 2023 trial could have obvious repercussions on the current litigation.

Because civil discovery may, as a practical matter, impair the government's ability to protect its interests in the enforcement of federal criminal law, the government respectfully seeks leave to intervene for the purpose of arguing for a stay.

## II. THE COURT SHOULD TEMPORARILY STAY DISCOVERY TO PROTECT THE INTEGRITY OF THE CRIMINAL ACTION

This court has authority and discretion to order a stay. It is "clearly within the power of the district court to balance 'competing interests' and decide that judicial economy would best be served by a stay of civil proceedings." Mellon Bank, 545 F.2d at 872-873 (affirming stay); see also Microfinancial, Inc. v. Premier Holidays Intl., Inc., 385 F.3d 72, 77 (1st Cir. 2004) (federal courts have the inherent power to stay civil proceedings in deference to criminal matters).

Courts generally consider certain factors when deciding whether to stay a civil case pending resolution of a criminal matter, including (a) the extent to which the civil and criminal cases overlap; (b) the public interest; (c) any potential prejudice to the civil parties if that matter is stayed; (d) the court's interest in managing dockets and resources; and (e) the current status of the criminal case.[5] Each of these factors are discussed below.

### A. This Court Should Stay this Action Because of Overlapping Facts and Evidence

"[T]he most important factor [in ruling on a motion to stay civil proceedings because of a pending criminal case] is the degree to which the civil issues overlap with the criminal issues." SEC v. Nicholas, 569 F.Supp.2d 1065, 1070 (C.D. Cal. 2008) (allowing DOJ intervention and

---

[5] See, e.g., Keating v. Office of Thrift Superv., 45 F.3d 322, 324–25 (9th Cir. 1995); TelexFree, Inc., 2014 WL 5151281, at *2; Chao v. Fleming, 498 F.Supp.2d 1034, 1041 (W.D. Mich. 2007); In re Adelphia Comm. Sec. Litig., 2003 WL 22358819, *7 (E.D. Pa. May 13, 2003); U.S. Sec. & Exch. Comm. v. HealthSouth Corp., 261 F.Supp.2d 1298, 1326 (N.D. Ala. 2003); Javier H. v. Garcia-Botello, 218 F.R.D. 72, 74 (W.D.N.Y. 2003); Walsh Sec. v. Cristo Prop. Mgt., 7 F.Supp.2d 523, 526-27 (D.N.J. 1998).

staying SEC action pending resolution of criminal case; citations omitted); see also, e.g., Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd., 7 F.Supp.2d 523, 527 (D.N.J. 1998) (making same point); In re Adelphia Comm. Sec. Litig., 2003 WL 22358819, *6-7 (E.D. Pa. May 13, 2003) (same; citing risk of inconsistent judgments in civil and criminal proceedings with overlapping facts).

Both matters arise out of a controversy involving approximately $5 million in escrow funds that belonged to the Supply Company. The government claims that the defendant obtained the funds through a scheme to defraud. The defendant counters that there is an explanation for his not returning the funds that involves a third-party, Interpleader Defendant Global Liquidity. The two cases will necessarily rely on the same witnesses and documentary evidence. The two actions are in fact not separate at all. The instant interpleader, instead, is simply a vehicle to fend off and deflect a criminal indictment.

### B.  A Stay Furthers the Public's Interest

Dozens of courts have recognized that the interests of justice weigh in favor of staying parallel civil proceedings because of the various ways those proceedings can impede the criminal case. "Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter." United States v. One 1964 Cadillac Coupe DeVille, 41 F.R.D. 352, 353 (S.D.N.Y. 1966).

This principle has been followed repeatedly in securities cases where criminal and SEC enforcement actions were pending at the same time. See, e.g., TelexFree, Inc., 2014 WL 5151281, at *3 (granting intervention and stay of SEC action); SEC v. Purchasers of Secs. Global Industr., Inc., 2012 WL 5505738, *3-6 (S.D.N.Y. Nov. 9, 2012) (same); SEC v. Gordon, 2009 WL 2252119, *3-6 (N.D. Okl. July 28, 2009) (same); Nicholas, 569 F.Supp.2d at 1070 (same); SEC v. Beacon Hill Asset Management LLC, 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003)

(same); In re Worldcom, Inc., Sec. Litig., 2002 WL 31729501, *3-10 (S.D.N.Y. Dec. 5, 2002) (same); SEC v. Downe, 1993 WL 22126, *12-14 (S.D.N.Y. Jan. 26, 1993) (same).

The reasons for the long-standing policy against allowing civil discovery when an overlapping criminal matter is open stem directly from the procedural differences between civil and criminal proceedings. As the Fifth Circuit explained in Campbell v. Eastland, an often-cited case in this area,

> The very fact that there is a clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.

307 F.2d 478, 487 (5th Cir. 1962) (emphasis added). As Campbell shows, for at least 50-years courts have recognized that priority should be given to the "public interest in law enforcement." Id.; United States v. Hugo Key & Son, Inc., 672 F. Supp. 656, 685 (D.R.I. 1987) (citing "public interest" in law enforcement); In re Ivan F. Boesky Securities Litig., 128 F.R.D. 47, 49 (S.D.N.Y. 1989) ("the *public interest* in the criminal case is entitled to precedence over the civil litigant" (emphasis in original)).

Here, the public interest weighs in favor of staying discovery. The cases make clear that civil discovery should not be used as a mechanism to circumvent well-defined criminal discovery rules that balance the government's interest in law enforcement through the criminal laws. See e.g., Beacon Hill Asset Management LLC, 2003 WL 554618 at *1 (granting stay; "the principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases"). As one court stated:

> It is well established that a litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit to avoid the restrictions on criminal discovery and, thereby, obtain documents [and testimony] he might otherwise not be entitled to for use in his criminal suit.

Founding Church of Scientology v. Kelley, 77 F.R.D. 378, 380 (D.D.C. 1977) (citations omitted);

see also Pharaon, 140 F.R.D. at 639 ("A litigant should not be allowed to make use of the liberal

discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal

discovery.").[6]

Other courts have even deemed it "abusive" to use civil discovery to circumvent criminal

discovery rules.  See, e.g., United States v. Phillips, 580 F. Supp. 517, 520 (N.D. Ill. 1984) ("This

abusive tactic is an improper circumvention of the restrictions of the criminal discovery rules.

Protection of the integrity of the criminal justice process fully justifies this Court's taking

remedial action." (granting stay)); Beacon Hill Asset Management LLC, 2003 WL 554618 at *1

("principal concern" in allowing civil discovery "is that its targets might abuse civil discovery to

circumvent limitations on discovery in criminal cases" (granting stay)).

For example, the Jencks Act provides that in criminal cases the statements of a

government witness – such as grand jury testimony or testimony taken by deposition– cannot be

---

[6] See also, e.g., United States v. Mellon Bank, N. A., 545 F.2d 869, 872-873 (3d Cir. 1976) (affirming stay; noting that "the similarity of the issues [in the civil and criminal matters] left open the possibility that [the target] might improperly exploit civil discovery for the advancement of his criminal case"); In re Eisenberg, 654 F.2d 1107, 1113-14 (5th Cir. 1981) (observing that allowing civil discovery to proceed would make litigant "the beneficiary of materials otherwise unavailable under the criminal rules . . . thus nullifying in effect the criminal discovery limitations"); Ashworth v. Albers Medical, Inc., 229 F.R.D. 527 (S.D. W. Va. 2005) (United States had discernable interest in intervening to prevent civil discovery from being used to circumvent scope of discovery in criminal matter); Ott, 2006 U.S. Dist. LEXIS 86541, at *3-10 (same); United States v. GAF Financial Servs., 335 F. Supp. 2d 1371, 1373 (S.D. Fla. 2004) (civil forfeiture stayed pursuant to 18 U.S.C. § 981(g)); Downe, 1993 WL 22126, at *12–14 (staying securities action); In re Ivan F. Boesky Secs. Litig., 128 F.R.D. at 49-50 (same); Hugo Key & Son, 672 F. Supp. at 657-59 (staying civil action in favor of environmental criminal investigation); Founding Church of Scientology, 77 F.R.D. at 380-81 (blocking interrogatories in favor of ongoing grand jury investigation); U.S. Sec. & Exch. Comm. v. Control Metals Corp., 57 F.R.D. 56, 57-58 (S.D.N.Y. 1972) (staying depositions of four grand jury witnesses).

the subject of subpoenas, discovery, or inspection until that witness has testified on direct examination.  Rule 16 then specifically carves out Jencks material, warning that the rule does not "authorize the discovery . . . of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500 [the Jencks Act]."  Fed. R. Crim. P. 16 (a)(2).  The public policy favoring the Jencks Act is so strong that – beyond the statute and the federal rules – it is legal error for a trial court to order the government to disclose Jencks material before the statute requires.[7]

### C.   Because the Civil and Criminal Cases are Based on the Same Facts, any Stay of Discovery Should Cover All Discovery, Instead of Proceeding by Category or Request by Request

In the context of motions to stay civil proceedings, courts sometimes seek to avoid a "blanket" stay of discovery, favoring a more specific approach.  See, e.g., Beacon Hill Asset Management LLC, 2003 WL 554618 at *2 (granting stay of Rule 26(a)(i)(A) discovery and of discovery pertaining to "any person the U.S. Attorney's Office certifies may be called as a witness in the criminal case"); SEC v. Doody, 186 F.Supp.2d 379, 382 (S.D.N.Y. 2002) (same).

Here, however – because of the near-total overlap of facts and evidence in the civil and criminal cases and because the government is engaged in an ongoing investigation - the government respectfully suggests that a complete stay is simpler, more efficient, and thus more beneficial for the litigants and the Court.  Any discovery or motions practice here would implicate the government's interests in the criminal matter.

Proceeding with discovery in some categories but not others – or, alternatively, ruling on a stay each time a specific deposition notice, set of interrogatories or document request is served –

---

[7] See, e.g., In re United States, 834 F.2d 283, 287 (2d Cir. 1987) (district courts lack power to order early Jencks disclosure); United States v. Taylor, 802 F.2d 1108, 1117-18 (9th Cir. 1986) (same); United States v. Ordaz-Gallardo, 520 F. Supp. 2d 516, 524 (S.D.N.Y. 2007) ("District courts lack the authority to compel early disclosure of Jencks Act material.").

would inevitably result in piecemeal litigation.  Reviewing disputes about whether discovery falls

within a barred category, or whether a specific discovery request should be subject to a stay under

current law, would unnecessarily waste judicial resources.  See, e.g., Downe, 1993 WL 22126 at

*14 (opting for complete, instead of partial, stay, to avoid "unfairness" to certain civil defendants

and "duplication of effort").

     **D.**        **The Defendant Will not be e Prejudiced by a Stay**

A stay is warranted for the public policy reasons summarized above.  But, in addition, a

stay would not prejudice the defendant.  Indeed, a stay would allow the defendant and the court

system to avoid substantial costs while the criminal case proceeds.  Resolution of the criminal

case would dramatically expedite resolution of this civil case.

The interest in judicial efficiency equally supports a stay.  As Judge Cote noted in the

Worldcom securities litigation:

> The Court shares with all parties an interest in the efficient resolution of the instant
> actions.  Nonetheless, a concern for judicial efficiency does not necessarily
> militate against the granting of a stay. . . .  The conviction of a civil defendant as a
> result of the entry of a plea or following a trial can contribute significantly to the
> narrowing of issues in dispute in the overlapping civil cases and promote
> settlement of civil litigation not only by that defendant but also by co-defendants
> who do not face criminal charges. See Rosenthal v. Giuliani, 2001 WL 121944, *2
> (S.D.N.Y. Feb. 9, 2001) ("[A] stay in the action will streamline later civil
> discovery since transcripts from the criminal case will be available to the civil
> parties.").

In re Worldcom, 2002 WL 31729501 at *8 (emphasis added; citations omitted) (finding stay

"particularly compelling" in light of factual overlap and U.S. Attorney's Office's request); see

also TelexFree, Inc., 2014 WL 5151281, at *3 (reasoning that "[a] stay would also conserve

judicial resources").  A stay would allow not just the litigants, but also the Court, to avoid

needless work, without prejudice to the defendant or to the overall public interest in justice being

served.

## CONCLUSION

For the foregoing reasons, the government respectfully moves for permission to intervene in this case, and for a complete stay of the case pending resolution of the parallel criminal proceedings.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:     /s/ *Neil Gallagher*
Neil J. Gallagher, Jr.
Assistant U.S. Attorney

Date Submitted:  August 2, 2023

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Neil J. Gallagher, Jr.*
Neil J. Gallagher, Jr.

**Ex. C**

   **CourtLink** (Dockets)  

Client: -None- ⌄        History        Help        More

**Document:**                9:23mj8331, USA v. Das                Actions ⌄

🖨  ✉  ⭳  [ Go to ▾ ]  🔔                      ‹ 1 of 2 ›    Results list ›

### 9:23mj8331, USA v. Das

US District Court Criminal Docket

United States District Court, Florida Southern

(West Palm Beach)

**This case was retrieved on 06/28/2023**

▼**Header**

**Date Filed:** 06/26/2023                                        **Class Code:** Closed
**Other Docket:** Other court case number: 23cr10160 District of          **Closed:** 06/28/2023
Massachusetts

▼**Participants**

**Defendant**

**Name**                                        **Attorneys**
Abhijit Das                                        Jason Wyatt Kreiss
aka: Beej Das                                        LEAD ATTORNEY;ATTORNEY TO BE NOTICED
52673-509 English; YOB 1973                          Jason W. Kreiss
*TERMINATED: 06/28/2023*                              1824 SE 4th Avenue
                                                  Fort Lauderdale, FL 33316
                                                  USA
                                                  jwk@kreisslaw.com
                                                  954-525-1971Fax: 525-1978

**Charges**                                        **Disposition**

**Complaints:** Removal of Indictment from District of
Massachusetts for Violation of 18:1343, 18:981(a)(1)(C) and
28:2461(c)
**Pending:** none
**Terminated:** none
**Case Assigned To:** Magistrate Judge Ryon M. McCabe

▼**U.S. Attorneys**

Robin W. Waugh
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
United States Attorney's Office Criminal II
500 South Australian Section Suite 300
West Palm Beach, FL 33401
USA

robin.waugh@usdoj.gov

561-209-1042Fax: 561-659-4526Designation: Retained

## ▼Proceedings

**Retrieve Document(s)**

| ☐ | Availability ↕ | # ↕ | Date ↕ | Proceeding Text ↕ | Source ↕ |
|---|---|---|---|---|---|
| ☐ | Online | 1 | 06/26/2023 | Magistrate Judge Removal of Indictment from District of Massachusetts - Case number in the other District 23cr10160 as to Abhijit Das (1). (spe) (Entered: 06/26/2023) | |
| ☐ | | 2 | 06/26/2023 | NOTICE OF HEARING as to Abhijit Das - Initial Appearance - Rule 5(c) (3)/40 set for 6/27/2023 at 10:00 AM in West Palm Beach Division before WPB Duty Magistrate Judge. (spe) (Entered: 06/26/2023) | |
| ☐ | | 3 | 06/27/2023 | PAPERLESS Minute Order for proceedings held before Magistrate Judge Ryon M. McCabe: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Abhijit Das held on 6/27/2023. Date of Arrest or Surrender: 6/27/2023. Defendant present and sworn. Court advised defendant of the charges, maximum penalties and his rights. Government requested pre-trial detention and proffered regarding evidence of serious risk of flight. Court found sufficient evidence of a risk of flight for purposes of having a detention hearing and granted government's request for additional time to hold the hearing. Defendant requested time to retain private counsel. Total time in court: 21 minutes. Report re: counsel, Identity/Removal and Detention Hearings set for 6/28/2023 at 10:00 AM in West Palm Beach Division before WPB Duty Magistrate Judge. Attorney Appearance(s): Marc Osborne (AUSA), (Digital 10:01:16) Signed by Magistrate Judge Ryon M. McCabe on 6/27/2023. (spe) (Entered: 06/27/2023) | |
| ☐ | Online | 4 | 06/27/2023 | NOTICE OF ATTORNEY APPEARANCE: Jason Wyatt Kreiss appearing for Abhijit Das . Attorney Jason Wyatt Kreiss added to party Abhijit Das(pty:dft). (Kreiss, Jason) (Entered: 06/27/2023) | |
| ☐ | Online | 5 | 06/28/2023 | WAIVER of Rule 5 & 5.1 Removal/Identity Hearings as to Abhijit Das. (spe) (Entered: 06/28/2023) | |
| ☐ | | 6 | 06/28/2023 | PAPERLESS Minute Order for proceedings held before Magistrate Judge Ryon M. McCabe: Bond Hearing as to Abhijit Das held on 6/28/2023. Report Re Counsel Hearing as to Abhijit Das held on 6/28/2023. Removal Hearing as to Abhijit Das held on 6/28/2023. Defendant present and sworn. Defendant advised of charges, maximum penalties, and rights. The Court questioned the defendant. The defendant waived removal, form executed and the Court found the waiver knowing and voluntary. Bond set as to Abhijit Das (1) $100,000 PSB. Order of Removal signed. Defendant advised of Brady rights under the Due Process Protection Act. Total time in court: 24 minutes. Attorney Appearance(s): Marc Osborne (AUSA); Jason Wyatt Kreiss (Retained) (Digital 10:59:08) It is ORDERED AND ADJUDGED that pursuant to the Due Process Protections Act, the Court confirms the United States obligation to disclose to the defendant all exculpatory evidence- that is, evidence that favors the defendant or casts doubt on the United States case, as required by Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, and ORDERS the United States to do so. The government has a duty to disclose any evidence that goes to negating the defendants guilt, the credibility of a witness, or that would reduce a potential sentence. The defendant is entitled to this information without a request. Failure to disclose exculpatory evidence in a timely manner may result in consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or sanctions by the Court. Signed by Magistrate Judge Ryon M. McCabe on 6/28/2023. (spe) (Entered: 06/28/2023) | |
| ☐ | Online | 7 | 06/28/2023 | $100,000 PSB Bond Entered as to Abhijit Das - Approved by Magistrate Judge Ryon M. McCabe. Please see bond image for conditions of release. (spe) (Additional attachment(s) added on 6/28/2023: # 1 Restricted Bond with 7th Page \(.spe\) (Entered: 06/28/2023) | |
| ☐ | Online | 8 | 06/28/2023 | ORDER OF REMOVAL ISSUED to District of District of Massachusetts as to Abhijit Das, Closing Case for Defendant. Signed by Magistrate Judge Ryon M. McCabe on 6/28/2023. See attached document for full details. (spe) (Entered: 06/28/2023) | |
| ☐ | Online | 9 | 06/28/2023 | Notice of Criminal Transfer to District of Massachusetts of a Rule 5 or Rule 32 Initial Appearance as to Abhijit Das. Your case number is: 23cr10160. Docket sheet and documents attached. If you require certified copies of any | |

| | Availability ⬍ | # ⬍ | Date ⬉ | Proceeding Text ⬍ | | Source ⬍ |
|---|---|---|---|---|---|---|
| | | | | documents, please call our Records Section at 305-523-5210. Attention Receiving Court: If you wish to designate a different email address for future transfers, send your request to TXND at: InterDistrictTransfer_TXND@txnd.uscourts.gov. (spe) (Entered: 06/28/2023) | | |



Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

LexisNexis®

About

Privacy Policy

Cookie Policy

Terms & Conditions

RELX™

Copyright © 2023 LexisNexis.

(Revised 03/2020)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### APPEARANCE BOND: _____

### CASE NO.: 23-mj-8331-RMM

UNITED STATES OF AMERICA:

               Plaintiff,

v.                                      USM # :  52673-509

Abhijit Das,

               Defendant,

_____/

I, the undersigned defendant and I or we, the undersigned sureties, jointly and severally acknowledge that we and our personal representatives, jointly and severally, are bound to pay the United States of America, the sum of $ 100,000 PSB _____

## STANDARD CONDITIONS OF BOND

**The conditions of this bond are that the defendant:**

1.  Shall appear before this Court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of the defendant's release as may be ordered or notified by this Court or any other United States District Court to which the defendant may be held to answer or the cause transferred. The defendant is required to ascertain from the Clerk of Court or defense counsel the time and place of all scheduled proceedings on the case. In no event may a defendant assume that his or her case has been dismissed unless the Court has entered an order of dismissal. The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment. This is a continuing bond, including any proceeding on appeal or review, which shall remain in full force and effect until such time as the Court shall order otherwise.

2.  May not travel outside the Southern District of Florida unless otherwise approved by the Court prior to any such travel. The Southern District of Florida consists of the following counties: Broward, Highlands, Indian River, Martin, Miami-Dade, Monroe, Okeechobee, Palm Beach and St. Lucie.

3.  May not change his/her present address without prior notification and approval from the U.S. Probation Officer or the Court.

4.  Must cooperate with law enforcement officers in the collection of a DNA sample if the collection is required by 42 U.S.C. Section 14135a.

5.  Must not violate any federal, state or local law while on release in this case. Should the defendant come in contact with law enforcement he/she shall notify the U.S. Probation Officer within 72 hours.

**DEFENDANT:** Abhijit Das
**CASE NUMBER:** 23-mj-8331-RMM
**PAGE TWO**

## <u>SPECIAL CONDITIONS OF BOND</u>

In addition to compliance with the previously stated conditions of bond, the defendant must comply with the special conditions checked below:

__ a. Surrender all passports and travel documents, if any, to Pretrial Services and not obtain any travel documents during the pendency of the case;

__ b. Report to Pretrial Services as follows: (   ) as directed or__ time(s) a week in person and__ time(s) a week by telephone;

__ c. Submit to substance abuse testing and/or treatment, contribute to the cost of services rendered based on ability to pay, as determined by the U.S. Probation Officer;

__ d. Refrain from ____excessive OR ___abstain from alcohol use or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. §802), without a prescription by a licensed medical practitioner;

__ e. Participate in a mental health assessment and/or treatment and contribute to the costs of services rendered based on ability to pay, as determined by the U.S. Probation Officer;

__ f. Employment restriction(s): _____

__ g. Maintain or actively seek full-time employment;

__ h. Maintain or begin an educational program;

__ i. Avoid all contact with victims or witnesses to the crimes charged, except through counsel. The AUSA shall provide defense counsel and pretrial services with the names of all victims or witnesses. The prohibition against contact does not take effect until defense counsel receives the list. The prohibition against contact applies only to those persons on the list, but the prosecutor may expand the list by sending written notice to defense counsel and pretrial services.;

__ j. Avoid all contact with co-defendants and defendants in related cases, except through counsel;

__ k. Refrain from possessing a firearm, destructive device or other dangerous weapons and shall surrender (if any), their concealed weapons permit to the U.S. Probation Office;

__ l. None of the signatories may sell, pledge, mortgage, hypothecate, encumber, etc., any real property they own, until the bond is discharged, or otherwise modified by the Court;

__ m. May not visit commercial transportation establishment: airports, seaport/marinas, commercial bus terminals, train stations, etc.;

__ n. Defendant shall consent to the U.S. Probation Officer conducting periodic unannounced examinations of the defendant's computer equipment at his/her place of employment or on the computer at his/her residence which may include retrieval and copying of all data from the computer(s) and any internal or external peripherals to ensure compliance with this condition and/or removal of such equipment for the purpose of conducting a more thorough inspection; and consent at the direction of the U.S. Probation Officer to have installed on the defendant's computer(s), at the defendant's expense, any hardware or software systems to monitor the defendant's computer use;

**DEFENDANT:** Abhijit Das
**CASE NUMBER:** 23-mj-8331-RMM
**PAGE THREE**

__ o. **LOCATION MONITORING PROGRAM:** The defendant shall be monitored by the form of location monitoring and shall abide by all technology requirements as noted below, as well as contribute to the costs of services rendered based on (   ) ability to pay as determined by the U.S. Probation Officer – or – (   ) paid by U.S. Probation;

    __ Location monitoring technology at the discretion of the officer

    __ Radio Frequency (RF) monitoring (Electronic Monitoring)

    __ Active GPS Monitoring

    __ Voice Recognition

    __ Curfew: You are restricted to your residence every day from_____ to_____, or as directed by the supervising officer.

**OR**

    __ Home Detention: You are restricted to your residence at all times except for:

    (   ) medical

    (   ) substance abuse or mental health treatment

    (   ) court appearances

    (   ) attorney visits or court ordered obligations

    (   ) religious services

    (   ) employment

    (   ) other activities as pre-approved by the supervising officer

—— p. **RESIDENTIAL RE-ENTRY CENTER:** The defendant shall reside at a residential re-entry center or halfway house and abide by all the rules and regulations of the program. The cost to be paid by (   )Pretrial Services or (   ) based on the defendant's ability to pay. You are restricted to the residential re-entry center/halfway house at all times except for:

    (   ) employment

    (   ) education

    (   ) religious services

    (   ) medical, substance abuse, or mental health treatment

    (   ) attorney visits

    (   ) court appearances

    (   ) court ordered obligations

    (   ) reporting to Pretrial Services

    (   ) other _____

—— q. Third-Party Custody: _____will serve as a third party custodian and will report any violations of the release conditions to the U.S. Probation Officer. Failure to comply with these requirements, the third party custodian can be subject to the provisions of 18 U.S.C. § 401, Contempt of Court.

—— r. The defendant shall submit his person, property, residence, vehicle, papers, computers, (as defined in 18 U.S.C. 1030(e)(1)), other electronic communication or data storage devices or media, or office, to a search conducted by a United States Probation Officer. The defendant must warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search must be conducted at a reasonable time and in a reasonable manner.

**DEFENDANT:** Abhijit Das
**CASE NUMBER:** 23-mj-8331-RMM
**PAGE FOUR**

__ s. **Mandatory Adam Walsh Conditions:** Defendant shall abide by specified restrictions on personal associations, place of abode, or travel, to avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense; report on a regular basis to a designated law enforcement agency, pretrial services agency or other agency; comply with a specified curfew (with electronic monitoring) and refrain from possessing a firearm, destructive device or other dangerous weapons.

__ t. Additional Sex Offense Conditions For Defendants Charged or Convicted of a Sexual Offense:

1. ( ) Defendant may not have contact with victim(s), or any child under the age of 18, unless approved by the Court or allowed by the U.S. Probation Officer.
2. ( ) The defendant shall not possess or use any data encryption technique or program and shall provide passwords and administrative rights to the U.S. Probation Officer.
3. ( ) Defendant shall participate in specialized sex offender evaluation and treatment, if necessary, and to contribute to the costs of services rendered based on ability to pay, as determined by the U.S. Probation Office.
4. ( ) Defendant shall not possess, procure, purchase or otherwise obtain any internet capable device and/or computer. Additionally, the defendant is prohibited from using another individual's computer or device that has internet capability.
5. ( ) Defendant is prohibited from establishing or maintaining any email account or social media account. Additionally, the defendant is prohibited from using another individual's email account or social media account. Must provide monthly or upon request, personal phone and credit card billings to Pretrial Services to confirm there are no services with any internet services provider.
6. ( ) Defendant is not permitted to enter places where children congregate including, but not limited to any play areas, playgrounds, libraries, children-themed restaurants, daycares, schools, amusement parks, carnivals/fairs, unless approved by the U.S. Probation Officer.
7. ( ) The defendant shall not be involved in any children's or youth organizations.
8. ( ) Defendant is prohibited from viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services.
9. ( ) The defendant shall participate in a maintenance polygraph examination to periodically investigate the defendant's compliance. The polygraph examination shall specifically address only defendant's compliance or non-compliance with the special conditions of release and shall not inquire into the facts of the pending criminal case against defendant. The defendant will contribute to the costs of services rendered (co-payment) based on ability to pay or availability of third party payment.

__ u. May travel to and from: _____, and must notify Pretrial Services of travel plans before leaving and upon return.

✕ v. Comply with the following additional conditions of bond:
- Defendant is prohibited from soliciting or accepting any funds for investment or investment contract purposes.
- Defendant is to immediately re-establish his primary residence and is prohibited from travel outside the District of Massachusetts, absent court authorization.
- Defendant is to report to his existing PTS officer in the District of Massachusetts within 48 hours (close of business Friday, June 30, 2023).
- This bond will remain in force until his initial appearance in the District of Massachusetts on July 6, 2023 at 1:30 P.M. in Courtroom 24.

DEFENDANT: Abhijit Das
CASE NUMBER: 23-mj-8331-RMM
PAGE FIVE

## PENALTIES AND SANCTIONS APPLICABLE TO DEFENDANT

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, and order of detention, as provided in 18 U.S.C. §3148, forfeiture of any bail posted, and a prosecution for contempt as provided in 18 U.S.C. §401, which could result in a possible term of imprisonment or a fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

Title 18 U.S.C. §1503 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 U.S.C. §1510 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. §1512 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. §1513 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten to do so.

It is a criminal offense under 18 U.S.C. §3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, the defendant shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted, which means that the defendant will be obligated to pay the full amount of the bond, which may be enforced by all applicable laws of the United States.

**DEFENDANT:** Abhijit Das
**CASE NUMBER:** 23-mj-8331-RMM
**PAGE SIX**

## PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

## SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of seven pages, or it has been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

### DEFENDANT

Signed this ___28___ day of ___June_____ 20 _23_ at _West Palm Beach__, Florida

Signed and acknowledged before me:                    **DEFENDANT: (Signature)** _____

**WITNESS:** _____                BOCA RATON

_____  _____                              City                    State
   City                    State

### CORPORATE SURETY

Signed this _____ day of _____, 20 ____ at _____, Florida

**SURETY:** _____                **AGENT: (Signature)** _____

_____  _____                **PRINT NAME:** _____
   City                    State

### INDIVIDUAL SURETIES

Signed this ___ day of _____, 20 __ at _____, Florida    Signed this ___ day of _____, 20 __ at _____, Florida

**SURETY: (Signature)** _____    **SURETY: (Signature)** _____

**PRINT NAME:** _____    **PRINT NAME:** _____

**RELATIONSHIP TO DEFENDANT:** _____    **RELATIONSHIP TO DEFENDANT:** _____

_____  _____    _____  _____
   City                    State                        City                    State

Signed this ___ day of _____, 20 __ at _____, Florida    Signed this ___ day of _____, 20 __ at _____, Florida

**SURETY: (Signature)** _____    **SURETY: (Signature)** _____

**PRINT NAME:** _____    **PRINT NAME:** _____

**RELATIONSHIP TO DEFENDANT:** _____    **RELATIONSHIP TO DEFENDANT:** _____

_____  _____    _____  _____
   City                    State                        City                    State

### APPROVAL BY THE COURT

**Date:** ___6/28/2023_____        _____

**RYON M. McCABE,**
**UNITED STATES MAGISTRATE JUDGE**

# Ex. D

**From:** Abhijit "Beej" Das <adas@trocaglobal.com>
**Sent:** Monday, August 7, 2023 6:07 PM
**To:** Steffi Jean-Jacques <Steffi_Jean-Jacques@flsp.uscourts.gov>
**Cc:** Glenn MacKinlay <gmackinlay@mccarter.com>; Kendall, Michael <michael.kendall@whitecase.com>
**Subject:** Troca Global Client Communications - Sent

Dear Steffi:

All client communications have now been sent out in compliance with the pre-trial services order. A copy is attached for your records. My counsel in both cases are copied here for their records and reference.

Please let me know if you have any questions.

Regards,
Beej


---

**Abhijit "Beej" Das**
ATTORNEY AT LAW
*Managing Director*

Troca Global Advisors LLC
10 Post Office Square • Suite 800
Boston, MA 02109 USA
(617) 231-6550

745 Fifth Avenue • Suite 500
New York, NY 10151 USA
(212) 466-6470


**trocaglobal.com**


Email: adas@trocaglobal.com
Direct: +1 617-231-6551
US Mobile: +1 617-233-5280



**TROCA**
GLOBAL

Troca Global Advisors LLC
10 Post Office Square, Suite 800
Boston, Massachusetts 02109
United States of America

745 Fifth Avenue, Suite 500
New York, New York 10151
United States of America

+1 617-231-6550 **boston**
+1 212-466-6470 **new york**

**trocaglobal.com**

August 7, 2023

Dear Troca Global Client:

**This is an important communication which you should read carefully.** Please feel free to contact or consult with other counsel and/or advisors regarding the contents of this letter; I am always available to discuss any of the matters raised herein.

As you are likely already aware, I have been named in two federal indictments in the United States District Court for the District of Massachusetts: (1) USA v. Abhijit Das, 21CR10200-RGS and (2) USA v. Abhijit Das, 23CR10160-AK.  I have plead <u>not guilty</u> to the charges brought by the United States Attorney for the District of Massachusetts in both cases.  As the Managing Director of Troca Global Advisors LLC, it is important for the firm's clients such as you to understand the nature of the charges being brought against me. In the first case, USA v. Abhijit Das, 21CR10200-RGS, the government contends that I violated campaign finance laws during my United States Congressional campaign in 2018. I assert that I complied with all campaign finance laws and that various misleading factors have led to the government's mistaken action.

The second case, USA v. Abhijit Das, 23CR10160-AK, contends that I misappropriated client funds held in trust into illegal investments and for personal gain. I maintain that all appropriations of funds were consistent with both the terms of the trust and the wishes of the client and, as the trust administrator, I had full authority to act as I did.  This matter stems from a contractual dispute between Troca Global's former client and that client's financier that involves the aforementioned funds held in trust by Troca Global.  The former client has involved the federal government in order to gain an inappropriate advantage in what is rightfully a civil dispute.  Troca Global was in the process of bringing and has since brought an action in the United States District Court for the District of Massachusetts, captioned Troca Global Advisors LLC v. Global Liquidity Services LLC and Bulk MRO Industrial Supply Inc., 23CV11546-AK, to resolve the civil dispute between the parties.

This has certainly been a trying time for me and the firm as we have always conducted ourselves in accordance with appropriate legal standards in representing our clients. More importantly, we understand that these matters may be unsettling to our clients and that, as a result, you may seek to alter your relationship with me and Troca Global.  We fully appreciate and respect your decision if that is the case but remain available to represent you, if you continue to believe that such representation serves your best interest. Please do not hesitate to contact me to discuss these matters at any time.

Very truly yours,

/s/ Abhijit Das
Abhijit "Beej" Das
Managing Director

# Ex. E



Jeffrey M. Reisner
jreisner@steptoe.com

+1 212 439 9452 direct
+1 212 506 3950 fax

1114 Avenue of the Americas
New York, NY 10036
www.steptoe.com

June 5, 2023

**Via Email (adrjr@rose-law.net)**

Alan D. Rose, Jr.
ROSE Law Partners LLP
One Beacon Street, 23rd Floor
Boston, MA 02108
adrjr@rose-law.net

Re:  Troca Global Advisors LLC

Mr. Rose:

As you are aware, my firm represents Global Liquidity Services LLC, dba VendorPayment ("VendorPayment").  I am in receipt of your letter dated May 25, 2023. VendorPayment has no objection to Troca Global Advisors LLC placing the funds referenced in your letter into an escrow account administered by a neutral third-party escrow agent.

VendorPayment reserves all rights.

Sincerely,

/s/ Jeffrey M. Reisner

CC:    jgoldkind@steptoe.com
   ppapalia@archerlaw.com
   akatz@aaronkatzlaw.com
   mwd@rose-law.net

1