## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | **Crim. No. 21cr10200-RGS** |
| ABHIJIT DAS, | |
| Defendant | |

### DEFENDANT ABHIJIT DAS'S PROPOSED JURY INSTRUCTIONS

Defendant Abhijit Das respectfully submits these proposed jury instructions.  Mr. Das reserves the right to respond to any jury instructions proposed by the government by offering alternative instructions to those proposed.  Further, Mr. Das reserves the right to supplement, modify, or withdraw the attached instructions in light of, among other things, the evidence ultimately admitted at trial.


Dated: September 18, 2023            Respectfully submitted

                                     Abhijit Das, by his counsel:

                                     /s/ Michael Kendall
                                     Michael Kendall (BBO # 544866)
                                     Abigail Mahoney (BBO #709427)
                                     WHITE & CASE LLP
                                     75 State Street
                                     Boston, MA 02109-1814
                                     Telephone: (617) 979-9310
                                     michael.kendall@whitecase.com
                                     abigail.mahoney@whitecase.com


### CERTIFICATE OF SERVICE

I, Michael Kendall, hereby certify that on September 18, 2023, I caused a true and accurate copy of the above document and its exhibits to be served on counsel of record by CM/ECF.

                                     /s/ *Michael Kendall*
                                     Michael Kendall

**Instructions Requested by Defendant Abhijit Das**

Except as otherwise noted, and in addition to the Court's standard criminal instructions, Defendant Das requests that the Court instruct the jury as follows:

**Defendant's Proposed Instruction No. 1**

**Duty of the Jury[1]**

You have been chosen to be the judges of the facts in this case.  It is your duty to decide from the evidence what the facts are.  Your responsibility in that role is to listen carefully to the evidence so that you can properly judge the facts.  You must decide this case only on what you hear in this Courtroom and only upon the information which is presented to you as evidence.  That evidence will be in the form of the sworn witnesses' testimony, documentary evidence, and other things received as exhibits.  You are not to judge the facts based upon what you hear or may have heard outside of this Courtroom.  You should not take anything I may say or do during the trial as indicating what I think of the believability or significance of the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence admitted in this case.  To those facts you must apply the law as I give it to you.  The determination of the law is my duty as the presiding Judge in this Court.  It is your duty to apply the law exactly as I give it to you, whether you agree with it or not.  In this case, you must apply campaign finance laws written by Congress, whether you agree with them or not.  You must not be influenced by any personal likes or dislikes, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you and according to the law.  You will recall that you took an oath promising to do so at the beginning of the case.  In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  You must not read into these instructions, or into anything I may have said or done, as suggestions by me as to what verdict you should return—that is a matter entirely for you to decide.

---

[1]        Adapted from Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine Internet Site Edition §§ 1.01; 3.01.

**<u>Defendant's Proposed Instruction No. 2</u>**

<u>Conduct of the Jury[2]</u>

With respect to your conduct as jurors, first, please do not discuss this case with anyone.  Until you retire to the jury room at the end of the case to deliberate to your verdict, you simply are not to talk about this case with anyone, including your family members, your friends or your fellow jurors.  Do not let anyone talk to you about the case or about anyone who has anything to do with it.  If someone should try to talk to you, please report it to me immediately.

I know that many of you use cell phones, smart phones, the internet and other tools of technology.  However, during this jury trial, you may not communicate with anyone about this case using your cell phone or smart phone, e-mail, text messaging, blogs or websites, internet chat rooms or social networking websites such as Facebook, Twitter, Instagram, MySpace, LinkedIn, YouTube, TikTok, or Snapchat.  If you did so, it would be a violation of your oath as jurors and might even cause a mistrial at great expense to the parties and to this Court.  I instruct you, therefore, that as long as you are a juror on this case, you are not to use these tools of technology in connection with this case.

If you encounter the lawyers, the witnesses, or the parties involved in this case in the hallways, cafeteria, or anywhere else, please do not say anything to them.  Your talking with them while the trial is ongoing would not only have the appearance of being inappropriate; it would also be inappropriate.  In addition, do not read or watch or listen to anything in the media which may in any way relate to this case.  And do not try to do any independent research or make any investigation about the case on your own.  Again, internet research about the case is prohibited.  This includes looking up any of the participants in this case on social media or posting or searching on social media about this case.  Finally, keep your mind open and do not form any opinion until all of the evidence has been presented.  Keep an open mind until you start your deliberations at the end of the case.

---

[2]       Adapted from First Circuit Pattern Criminal Jury Instruction § 1.07.

**Defendant's Proposed Instruction No. 3**

### Conduct Not in the Indictment[3]

That concludes the part of my instructions explaining your duties and the general rules that apply in every criminal case.  In a moment, I will give you an overview of the campaign finance laws at issue in this case and explain the elements of the crimes that Mr. Das is accused of committing.  But before I do that, I want to emphasize that you are here only to determine whether Mr. Das is guilty or not guilty of the charges in the Indictment.  The Indictment is not evidence and does not prove anything and Mr. Das is not on trial for any conduct or offense not charged in the Indictment.

---

[3]     Adapted from Ninth Circuit Pattern Jury Instruction § 6.10 (Activities Not Charged) (2022 Ed.), available at https://www.ce9.uscourts.gov/jury-instructions/node/833.

**Defendant's Proposed Instruction No. 4**

**An Overview of Federal Election Law**

Congress passed the Federal Election Campaign Act, or "FECA," to regulate federal elections. FECA imposes many rules and requirements on Congressional candidates' campaigns. This case involves a number of those rules and requirements.

The Federal Election Commission, or "FEC," is the government agency that oversees elections. Congress authorizes the FEC to interpret and apply its campaign finance laws. The FEC makes rules that fill in FECA's details. The FEC has issued thousands of regulations, guidance documents, and decisions that give meaning to the campaign finance terms that you have heard in this case, like "contribution" and "personal funds."

The FEC is also responsible for investigating violations of campaign finance laws.[4] The FEC enforces the vast majority of violations (such as improper donations or recordkeeping or inaccurate filings) through informal settlements and discretionary fines.[5] The FEC encourages campaigns to file amended

---

[4]    "The Federal Election Campaign Act of 1971, as amended and codified at 2 U.S.C. §§ 431–457, was enacted by Congress as part of a comprehensive system regulating the financing of federal election campaigns." *Combat Veterans for Congress PAC v. FEC*, 983 F. Supp. 2d 1, 2 (D.D.C. 2013), aff'd, 795 F.3d 151 (D.C. Cir. 2015). "The Act, as part of an extensive campaign finance regime, imposes significant requirements for public disclosure of contributions and expenditures made or received by political committees in connection with federal elections." *Id.* at 2–3 (citing 2 U.S.C. §§ 432–34). "The Act also created the Federal Election Commission, an independent agency of the United States government with exclusive jurisdiction over the administration, interpretation, and civil enforcement of the Act." *Id.* at 3 (citing 2 U.S.C. §§ 437c(b)(1), 437d(a), 437g). "Congress empowered the Commission to 'formulate policy with respect to' FECA, 2 U.S.C. § 437 c(b)(1), and authorized it to make 'such rules . . . as are necessary to carry out the provisions' of the Act." *Id.* (quoting 2 U.S.C. §§ 437d(a)(8), 438(a)(8)).

[5]    For those FECA violations for which the mens rea does not satisfy the "knowing and willful" threshold required for criminal prosecution, the violation is subject only to civil enforcement through the FEC. 52 U.S.C. §§ 30109(a), (d) (detailing civil enforcement procedures and thresholds for criminal liability); 2 U.S.C. § 437g(a) (providing for civil rather than criminal proceedings absent "knowing and willful" mens rea); *see also* Daniel Murner et al., *Election Law Violations*, 55 AM. CRIM. L. REV. 1002, 1018-20 (2018) (describing system of FECA civil and criminal penalty allocations). For illustrations of the FEC's enforcement of the vast majority of alleged FECA violations, *see* MUR 7270 (Comite Pierluisi, Inc.) Notification with Factual & Legal Analysis (Sept. 5, 2017) (failing to timely refund excess contributions); MUR 7000 (Ron DeSantis for Congress) EPS Dismissal Rpt. (Oct. 20, 2016) (failing to timely report in-kind contribution); MUR 6973 (Ruben Kihuen for Congress) 1st Office of Gen. Counsel's Rpt. at 6–1 (Apr. 25, 2016) (failing to timely report in-kind contributions and underpaying for rent on campaign offices); MUR 6836 (Marianne Williamson for Congress) 1st Office of Gen. Counsel's Rpt. at 4–5 (Apr. 8, 2016) (failing to report in-kind food and drink contribution); FEC Ltr. to Treasurer, Donald Trump for Am., Inc. (Nov. 20, 2016) (finding more than 1,000 disclosure errors in President Trump's October 2016 FEC report); MUR 6078, 6090, 6139, 6142, 6214 (Obama for America) Conciliation Agreement (Dec. 10, 2012) (finding reporting errors and imposing $375,000 fine); FEC Final Audit Rpt., Hillary Clinton for President (Apr. 12, 2011) (finding campaign failed to timely resolve excess contributions due to inadvertently overlooking database errors); FEC Rpt. of the Audit Div., George Bush for President, Inc. (Feb. 18, 1992) (finding erroneous disclosures and prohibited contributions).

disclosures if they realize mistakes or inaccuracies in past filings and campaigns frequently do so.  The FEC is supposed to enforce FECA consistently and treat all candidates alike.[6]

To inflict criminal punishment on a candidate for violating FECA, the government must show that the candidate intentionally violated the law, knowing at the time that their actions were illegal.[7]  For FECA violations that do not meet that criminal intent standard, the FEC uses its civil enforcement tools.[8]

---

[6] *See* MUR 5564 (Knowles), Statement of Reasons of Chairman David M. Mason and Commissioner Hans A. von Spakovsky at 2 ("Because the Commission did not proceed against Respondents, it should not proceed against similarly situated respondents unless the public has notice through a rulemaking.  Proceeding against similarly situated respondents would mean that the Commission is not treating like respondents alike, which would be unacceptable.") (internal citation omitted).  MUR is short for "Matter Under Review," a term used by the FEC in its civil enforcement of FECA.  MURs dating back to 1977 are available on the FEC website at https://www.fec.gov/data/legal/search/enforcement/.  To find a particular MUR, enter the MUR Number in the field that appears on the far-left side of the screen.  After the search results appear, click on the name of the MUR to bring up the complete MUR case file.  The first page that appears will show a Summary of the MUR, including its disposition.  On the far-left side of the screen, click on the "Documents" link to find the complaint, responses, General Counsel's report, and Statements of Reasons ("SOR").

[7] *See United States v. Kukushkin*, 61 F.4th 327, 332 (2d Cir. 2023) (FECA violations require defendants to have "knowingly and willfully" violated the law).

[8] *See* U.S. Dep't of Just., Federal Prosecution of Election Offenses 150 (Richard C. Pilger ed., 8th ed. 2017).

**Defendant's Proposed Instruction No. 5**

**Campaign Finance Background: Candidate Loans and Personal Funds**[9]

Congressional candidates may spend unlimited amounts of their "personal funds" on their own campaigns.  They can give that money or loan it with the intention of paying themselves back from the campaign bank account.  If they wish, candidates may redesignate their money as a loan if they change their mind and do want to pay themselves back.  They also may take out bank loans (subject to certain requirements) and then put that money into their campaign.  Loans, by their very nature, are meant to be paid back, and in a moment I will explain the law on candidate repayments.

Federal election law and the FEC define what counts as "personal funds."[10]  They include (1) assets that the candidate had access to or control over under state law at the time they became a candidate, (2) the candidate's income or asset sale proceeds received during the election cycle; (3) the candidate's share of jointly owned marital assets; and (4) gifts or support of a personal nature that had been customarily received by the candidate prior to the beginning of the election cycle.

When it comes to assets the candidate shares with someone else, the FEC considers money sourced from shared marital property, to which the candidate has a legal right of access and control, to be a candidate's personal funds.[11]  And if a custom of personal gift-giving or support pre-dates the candidate's campaign, then continued financial support is not a contribution but also considered personal funds.  This is true even if the support given prior to candidacy was smaller or of a different type.  So, for example, a candidate's parents can give or lend him money as long as he can demonstrate that they have routinely loaned or given money to him before he began the campaign.  Finally, as I will explain further in a moment, even if a candidate receives money during their campaign, that money must be unambiguously related to the campaign in order to be regulated by the federal election laws.  The source of the money must have

---

[9]      *See* Federal Election Commission Campaign Guide, *Congressional Candidates and Committees*, at 28-30, 35 (June 2014) (summarizing the federal campaign finance laws applicable to candidate committees as of June 2014).

[10]      *See* 11 CFR 110.10 (Unlimited expenditures from candidate's personal funds); 11 CFR 100.33 (Definition of personal funds); MUR 5724 (Feldkamp for Congress), Statement of Reasons of Vice Chairman Matthew S. Petersen and Commissioner Caroline C. Hunter at 4 (Dec. 11, 2009)("[T]he Commission has construed 'personal funds' inconsistently with respect to family gifts in prior enforcement matters").

[11]      *See* 11 CFR 100.33; 52 U.S.C. § 30101 et seq.  FEC regulations expressly permit the candidate to use the value of his or her share of assets jointly owned with the spouse for campaign purposes, without making the spouse a contributor.

given it "for the purpose of influencing a federal election" – not for some other purpose – in order for it to be an impermissible contribution rather than true personal funds.[12]

When someone files a complaint with the FEC that a candidate or member of Congress put money into their campaign that wasn't really their personal funds, the FEC is responsible for interpreting these categories and applying them to candidates' unique personal finances. In determining whether Mr. Das willfully made or caused illegal campaign contributions, you may consider the fact that the FEC has defined "personal funds" to include other family money and gifts or loans of a personal nature in enforcing federal election law.[13]

Keep in mind that these "personal fund" rules and loan restrictions are campaign regulations. They apply to candidates under the government's power to regulate elections. A candidate's business or their family members may take out loans for separate business purposes unrelated to the campaign, and the FEC's regulations do not apply in any way to such personal or business loans.

---

[12]     *See* MUR 5274 (Feldkamp for Congress), *supra* note 10, at 6.

[13]     In choosing not to seek civil fines for family money related campaign finance violations, the FEC has contrasted illegal loans from a lobbyist (looking for a quid pro quo if the candidate wins) with support from close personal relationships, suggesting "the corruption potential of such transfers [i.e., family gifts] is so insignificant as to make penalties for them unnecessary." MUR 5321 (Robert), Statement of Reasons of Commissioner David M. Mason, at 9 (July 13, 2004). *See also* MUR 5321 (Robert), Statement of Reasons of Commissioners Bradly A. Smith and Michael E. Toner, at 4 (July 27, 2004) ("Even if we had concluded that the funds at issue were not the personal funds of the candidate, we could not have supported a recommended civil penalty that is grossly disproportionate to the seriousness of the violations, which stem from transactions among family members.").

Even in cases where the FEC did find candidates impermissibly designated as personal loans to their campaign committee, candidates were punished with civil penalties. *See, e.g.,* MUR 6417 (Jim Huffman for Senate, et al.), Conciliation Agreement (Dec. 19, 2011) (the candidate's spouse transferred funds from her trust account to a joint bank account with the candidate, candidate improperly reported the source of a personal loan, and failed to make related FEC disclosures).

**<u>Defendant's Proposed Instruction No. 6</u>**

### <u>Campaign Finance Background: Candidate's Jointly Owned Property</u>

In this case, you have heard evidence that Mr. Das shared bank accounts and family assets with his parents.

"Joint tenants with right of survivorship" is a legal term for a way to own assets jointly, where two or more parties have equal rights and ownership of an account or real estate.[14]  If one owner dies, the surviving owner automatically gets full ownership of the asset.  With joint bank accounts, all the money in joint accounts belongs to both account holders.  Either one can go to the bank and take out all of the money in a joint account.  Married couples and family members commonly share joint accounts.

I instructed you that a candidate may spend or loan an unlimited amount of their personal funds to their own campaign.  And I explained that a candidate's personal funds include not only their assets and income but their portion of shared, jointly owned assets with close family members.  The applicable federal regulation refers to assets "owned jointly by the candidate and the candidate's spouse."

---

[14]    *See* Mass. Gen. Laws ch. 184, § 7; Mass. Gen. Laws ch. 167D, § 3.  The FEC defines "jointly owned assets" under applicable state law and with reference to the instrument of conveyance or ownership.  11 CFR 100.33.

**<u>Defendant's Proposed Instruction No. 7</u>**

**<u>Campaign Finance Background: Candidate Loan Repayment</u>**

If a candidate chooses to loan their personal funds to their campaign (which they may do in unlimited amounts) they may also choose to pay themselves back.  They can choose to repay themselves anytime and can choose what amounts to take out of the campaign account for that purpose.[15]

Because only the candidate is exempt from contribution limits, and because of FECA's strict loan reporting and tracing requirements, campaign repayments should match the debt paid.  In terms of personal candidate loans, that means when the campaign pays the candidate back it makes the repayment directly to the individual candidate, in their name.  A direct transfer from the campaign to some other person or business – even if related to other campaign debts – would involve other entities in the candidate loan repayment process and would be an incorrect handling of campaign funds.  So, if a candidate wanted his money back so he can buy a new car, it would be improper for the campaign to repay his loan money owed to him to the dealership.  The campaign should give the candidate his money back personally, consistent with how the money came in from him, and then, outside of the election, he can direct it and spend it however he wants.

---

[15]    *See* 11 CFR 100.52; *FEC v. Ted Cruz for Senate*, 142 S. Ct. 1638, 1645 (2022) ("[C]andidates for federal office often loan money to their campaign committees. . . . federal law regulates the repayment of such loans.").  In *FEC v. Ted Cruz for Senate*, the Supreme Court struck down the $250,000 limit on repayment of candidate loans with post-election contributions as an unconstitutional limit on political speech.  142 S. Ct. at 1661.  The *Cruz* decision was premised on the notion that campaigns "may borrow an unlimited amount . . . from the candidate himself."  *Id*. at 1645.  After *Cruz*, candidates can pay themselves back to the full extent of their personal loan with pre-election contributions and post-election contributions.  *Id*. The *Cruz* decision and dissent highlight the obvious premise that when a candidate puts money into their own campaign, any repayment goes directly back to the candidate.  *See id.* at 1661 (Kagan, J., dissenting) ("A candidate for public office extends a $500,000 loan to his campaign organization, hoping to recoup the amount from benefactors' post-election contributions. Once elected, he devotes himself assiduously to recovering the money; his personal bank account, after all, now has a gaping half-million-dollar hole").

**Defendant's Proposed Instruction No. 8**

### Campaign Finance Background: Campaign Debts

FEC regulations generally require a campaign to pay "fair market value" for the goods and services that it uses.  A person who gives goods and services to support a campaign, for example, is subject to the same donation limits as other people who donate in the form of money.  So someone may contribute up to $2,700 worth of goods or services (what is known as an "in-kind" donation) but must be compensated for anything else they give beyond that during the primary.  A campaign's failure to repay for goods and services over and above the legal limit would potentially result in the business making an illegal contribution.

In addition, the law requires campaigns to report debts and obligations (to businesses and other creditors) continuously until repaid.[16]  After the election is over, outstanding debts affect a campaign committee's ability to settle its affairs and close out.  If a campaign neglects to bill for or report debts that it owes to a business, it may have violated its FEC reporting requirements.  But that is a separate liability from its duty to pay the business.

---

[16]     *See* 11 CFR §§ 102.3-4; 113.1; 52 U.S.C. § 30103(d)(1) (Termination of campaign committee registration).

**Defendant's Proposed Instruction No. 9**

**Campaign Finance Background: No Candidate Obligations**

Congress wrote the campaign finance laws to shield the candidate from liability with respect to fundraising, reporting, and campaign finance compliance. [17]   Although candidates are subject to the campaign finance laws and responsible for their conduct in violation of those laws, the candidate is not obligated to oversee, review, or inspect their committee's compliance.  The candidate has no responsibility to ensure that their committee files accurate FEC reports or to oversee or verify these reports.  Candidates are not responsible for monitoring campaign contributions or spending for compliance.  Even though the candidate obviously plays a key role in fundraising, and even though fundraising is for their benefit, that still does not make them responsible for recordkeeping or reporting.  All the campaign's financial activities are controlled and reported by the committee.  In other words, the law empowers candidates to solicit and spend campaign funds, without being held responsible for any irregularities in reporting such funds,

And even if the candidate's oversight or intervention would improve or assist with their committee's compliance, the campaign finance laws do not place any affirmative duties on the candidate in that regard.  If the candidate actively takes steps to frustrate others' compliance, then they may otherwise face liability under the campaign finance laws that I will explain to you.

---

[17]      Adapted from *FEC v. Gus Savage for Cong.' 82 Comm.*, 606 F. Supp. 541, 546-47 (N.D. Ill. 1985).   Congress intentionally designed FECA so that "candidates for federal offices are completely shielded from liability for their own campaign's recordkeeping transgressions." *Id.*  As the *Gus Savage* court explained:

> This is so despite the fact that the candidate himself plays an important role in soliciting campaign finances. Congress has set up an artful scheme whereby all of the financial activities of a campaign are controlled and reported by the candidate's authorized committee. The candidate is free to receive contributions and make expenditures, but he does so only as an agent of the authorized campaign committee. 2 U.S.C. § 432(e)(2); 1979 U.S.Code Cong. & Ad.News 2860, 2861. In other words, the statute enables candidates to solicit campaign funds, without being held responsible for any irregularities in reporting such funds, even though the irregularities are engaged in for the benefit of the candidate. Liability, instead, filters through the candidate to his amorphous campaign committee, or, more precisely, to the committee's treasurer, who is legally responsible for any violations of the Act.

*Id.* at 546–47; *see also Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1289 (5th Cir. 1994) ("Although we recognize that Congress has constructed a somewhat analogous—and anomalous—legal regime to shield candidates from liability for violations of FECA, absent express direction from that branch, we decline to extend further such an apparently inequitable rule.").

**Defendant's Proposed Instruction No. 10**

**Campaign Finance Background: Duties of the Campaign Treasurer**[18]

The law does not impose an obligation on the candidate to file accurate FEC reports, but rather, it imposes this obligation on the campaign treasurer.  Under FEC regulations, a campaign cannot raise or spend any money until it has a treasurer.  The treasurer is generally and personally responsible for a committee's compliance with the law.  Treasurers sign and file all committee reports and statements, and must ensure they are complete, accurate and timely.  Treasurers must monitor contributions, to ensure they comply with legal limits and other rules, and authorize campaign spending.  This is a significant responsibility—if there's an enforcement action against a committee, the treasurer is usually named as a respondent.  Treasurers can be found officially (or, in some circumstances, personally) liable for the actions they take.  A campaign committee may hire consultants or employees to compile FEC reports on behalf of the Treasurer.

---

[18]       *See* 11 CFR §§ 102, 104; 52 U.S.C. §§ 30102(c), 30104(a)–(b); FEC Statement of Policy Regarding Treasurers in Enforcement Proceedings, 70 Fed. Reg. 3, 4 (Jan. 3, 2005) (the "Treasurer Policy").  *See also FEC v. Toledano*, 317 F.3d 939, 947 (5th Cir. 2002) ("The Act requires every political committee to have a treasurer and holds him personally responsible for the committee's recordkeeping and reporting duties … . Federal law makes the treasurer responsible for detecting [facial contribution] illegalities and holds him personally liable if he fails to fulfill his responsibilities");  FEC Advisory Opinion 1995-10 (Apr. 28, 1995) ("[S]ince Congress chose to hold an individual, the treasurer, responsible for compliance with FECA it follows that 'an individual will also stand responsible for his indiscretions as a treasurer'"); *FEC v. John A. Dramesi for Cong. Comm.*, 640 F. Supp. 985 (D.N.J. 1986) (holding treasurer responsible for failing to "make … best efforts to determine the legality of" an excessive contribution); *FEC v. Gus Savage for Cong.' 82 Comm.*, 606 F. Supp. 541, 547 (N.D. Ill. 1985) ("It is the treasurer, and not the candidate, who becomes the named defendant in federal court, and subjected to the imposition of penalties ranging from substantial fines to imprisonment."); 11 CFR § 104.14(d) ("Each treasurer of a political committee, and any other person required to file any report or statement under these regulations and under the Act shall be personally responsible for the timely and complete filing of the report or statement and for the accuracy of any information or statement contained in it.").

**Defendant's Proposed Instruction No. 11**

**Count One – Excessive Contributions – Elements[19]**

One of FECA's restrictions is on the amount of money that a campaign committee can take as a contribution from any one person. This is to limit the amount of influence that any individual contributor can have on federal elections. During the 2017–2018 campaign cycle, the limit for individual contributions was $2,700 per election, totaling $5,400 for both the primary and general election campaigns.

Count One alleges that Mr. Das knowingly and willfully accepted and received campaign contributions, in excess of the applicable dollar limits, while he was running for United States Congress. The government also alleges that Mr. Das engaged in a scheme to cause the Das for Congress Committee to file false reports that inaccurately reported these contributions.

For you to find Mr. Das guilty of accepting excessive contributions, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:

First, that Mr. Das accepted and received $25,000 or more to his congressional campaign during the 2017 calendar year from Toby Chaudhuri, Jay Shah, or Ajoy Bose;

Second, that these funds were campaign contributions from within the meaning of the federal campaign finance laws;

Third, that Mr. Das knew that these funds were campaign contributions within the meaning of the federal campaign finance laws; and

Fourth, that Mr. Das knowingly and willfully violated the law in accepting these excessive contributions, and not because of a mistake or accident or another innocent reason.

In general, for a person to commit a crime, they need not know that they are breaking the law. However, in order to convict someone for the specific campaign finance laws charged here, the person committing that crime must know that his actions are unlawful.[20] Accordingly, you may only convict Mr.

---

[19]     52 U.S.C. §§ 30116(f), 30116(a)(1) (individual contribution limits), 30101(8) (defining contribution); 30109(d)(1)(A)(i); *see United States v. Curran*, 20 F.3d 560 (3d Cir. 1994) and *supra*, notes accompanying Proposed Instructions 26-28 (mens rea standard for knowing and willful violations of campaign finance law).

[20]     Adapted from *United States v. Edwards*, Case No. 1:11-CR-161-1, Excerpt of Transcript of Jury Trial Proceedings, Court's Instructions to the Jury, at 8 (M.D.N.C. May 17, 2012). Congress took great care in detailing both criminal and civil

Das of violating the campaign finance statutes if you find that he knew his actions would violate the campaign laws and he acted with a deliberate and purposeful intention to violate those laws.  It is not enough for the government to prove that Mr. Das acted with the general knowledge that his conduct was unlawful. I will give you additional instructions on the "knowing and willful" standard in this case, but regarding Count One, a candidate "willfully" accepts an excessive contribution if he, in addition to acting intentionally, knows about the applicable limit on excessive contributions to federal campaigns, knows that the payment made actually constitutes an impermissible contribution under the law, and acts with intent to violate the law.  If you find Mr. Das did accept and receive excessive contributions, but you are not convinced beyond a reasonable doubt that he did so "knowingly and willfully," then you must find him not guilty.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge.  If you have a reasonable doubt about any one of these elements, then you must find Mr. Das not guilty of this charge.

---

enforcement liability under FECA.  *See generally* 52 U.S.C. § 30109 (detailing penalties and enforcement procedures).  Congress is specific and direct: violations of FECA merit criminal punishment only if such violations have been committed "knowingly and willfully." 52 U.S.C. § 30109(d).  And establishing knowing and willful mens rea requires proof that the offender was aware of what the law required, and that he or she violated that law notwithstanding that knowledge, i.e., that the alleged offender acted in conscious disregard of a known statutory duty or prohibition.  *See, e.g., Ratzlaf v. United States*, 510 U.S. 135 (1994) ("willful" violation of malum prohibitum regulatory statute prohibiting the structuring of financial transactions to avoid currency reporting requirements requires proof that defendant was aware of the duty violated and violated that duty not withstanding that knowledge); accord *United States v. Curran*, 20 F.3d 560 (3d Cir. 1994); *Nat'l Right to Work Comm. v. Fed. Election Comm'n*, 716 F.2d 1401 (D.C. Cir. 1983); *AFL-CIO v. Federal Election Comm'n*, 628 F.2d 97 (D.C. Cir. 1980).  *See also* U.S. Dep't of Justice, Federal Prosecution of Election Offenses 135 (Richard C. Pilger ed., 8th ed. 2017) ("When there is substantial doubt concerning whether the law applies to the facts of a particular matter, the offender is more likely to have an intent defense").

**Defendant's Proposed Instruction No. 12**

**Campaign Finance Terms Defined: "Contribution"**

Mr. Das contends that the loans from Toby Chaudhuri, Jay Shah, and Ajoy Bose to his mother were intended for his parents to use for the hotel business or other personal needs, and not his campaign. The government argues that these payments were unlawful campaign contributions. To convict Mr. Das for violations of campaign finance laws related to excessive or conduit contributions, and related false reporting (Counts One, Two and Four), you must first find and be convinced beyond a reasonable doubt that the government has proven that the loans at issue were in fact "contributions."[21]

First, these loans must have been "contributions" within the meaning of the federal campaign finance laws. Federal election law contains a number of exceptions, for example to allow candidates to receive bank loans and home equity lines of credit that might otherwise be illegal contributions.[22] Such written loan agreements, made at a customary interest rate and with a repayment schedule, are perfectly legal.

A contribution is any gift, subscription, loan, advance or deposit of money or anything of value made by the person for the purpose of influencing any election for federal office. Because a contribution must "be for the purpose of influencing the election," it must have been motivated to elect a candidate to federal office.[23]

Because of the First Amendment, campaign finance laws may constitutionally regulate only those actions that are clearly and without a doubt related to the campaign of a particular candidate.[24] For you to find that the funds from Toby Chaudhuri, Jay Shah, and Ajoy Bose were campaign contributions, the

---

[21] Adapted from *United States v. Edwards*, Case No. 1:11-CR-161-1, Excerpt of Transcript of Jury Trial Proceedings, Court's Instructions to the Jury, at 13-14, 52 (M.D.N.C. May 17, 2012); 52 U.S.C. § 30101(8)(A)(i); *see Ready for Ron v. FEC*, 2023 U.S. Dist. LEXIS 86629, at *5 (D.D.C. May 17, 2023).

[22] *See* 11 CFR §§ 100.82, 100.142 (Bank Loans); 11 C.F.R. § 100.71 (Home equity lines of credit are excluded from the definition of contribution).

[23] *See* Federal Election Commission, *Help for Candidates and Committees: Using the Personal Funds of the Candidate*, https://www.fec.gov/help-candidates-and-committees/candidate-taking-receipts/using-personal-funds-candidate/ ("If any person, including a relative or friend of the candidate, gives or loans the candidate money **'for the purpose of influencing any election for federal office,'** the funds are not considered personal funds of the candidate even if they are given to the candidate directly") (emphasis added).

[24] Campaign finance laws may constitutionally regulate only those actions that are "unambiguously related to the campaign of a particular candidate." *Buckley v. Valeo*, 424 U.S. 1, 80 (1976).

government must prove beyond a reasonable doubt that the payments were clearly and without a doubt intended to be payments to the Das for Congress Congressional Campaign.  The government must prove that the contributor had a real purpose or an intended purpose to influence an election in making the payment, and that their payment was unambiguously related to Mr. Das's Congressional campaign.  If you conclude that Mr. Das intended to solicit Toby Chaudhuri, Jay Shah, and Ajoy Bose for loans for any other purposes, such as to provide financial support to Mitra and Mukti Das or their hotel business, then the payments are not subject to the campaign finance laws and Mr. Das cannot be convicted for making or causing illegal contributions, or for causing the failure to report the payments to the FEC, even if his campaign somehow benefited from the payments.  The mere fact that the loans freed up other funds that Mr. Das or his family might have spent on their hotel business or for other personal purposes, and thus allowed Mr. Das to put more of his own funds into the campaign, does not make the loans campaign contributions.

Likewise, if you find that the payments were the result of mistake or Mr. Das could have believed that the payments constituted an exception to the meaning of "contribution," then there is no crime and you must find Mr. Das not guilty on the illegal contribution counts.

**Defendant's Proposed Instruction No. 13**

### Count Two – Conduit Contributions[25]

FECA also prohibits what are known as "conduit contributions," or contributions from one person that are made in the name of another.  Conduit contributions conceal the true source of a campaign's financial support from the public.  It is illegal to knowingly and willfully make a campaign contribution in someone else's name and disguise that contribution's origin.

Count Two alleges that Mr. Das knowingly and willfully caused contributions from Toby Chaudhuri, Jay Shah, and Ajoy Bose to be made in his own name to the Das for Congress campaign.  The government also alleges that Mr. Das caused the Das for Congress Committee to file a false report that inaccurately reported the source of these contributions.

For you to find Mr. Das guilty of causing conduit contributions, you must be convinced that the government has proven each and every one of the following elements beyond a reasonable doubt:

First, that Mr. Das caused, in that Mr. Das intentionally took steps to make it happen, Toby Chaudhuri, Jay Shah, or Ajoy Bose to make campaign contributions within the meaning of the federal campaign finance laws;

Second, that those contributions aggregated $25,000 or more during the 2017 calendar year;

Third, that Mr. Das knew that these funds were contributions within the meaning of the federal campaign finance laws; and

Fourth, that Mr. Das caused these campaign contributions from others to be made in his own name to his campaign.  If you find that the money transferred to the Das for Congress campaign was not made in the name of another because it was from Mr. Das himself, then you must find him not guilty.

Fifth, that Mr. Das knowingly and willfully violated the law in causing these contributions, and not because of a mistake or accident or another innocent reason.  In general, for a person to commit a crime, they need not know that they are breaking the law.  However, in order to convict someone for the specific

---

[25]   52 U.S.C. § 30122, 30109(d)(1)(A)(i).  Adapted from *United States v. Parnas*, No. 1:19-cr-00725-JPO, Jury Charge at 41 (ECF No. 245).

campaign finance laws charged here, the person committing that crime must know that his actions are unlawful.  Accordingly, you may only convict Mr. Das of violating the campaign finance statutes if you find that he knew he was violating the law.  It is not enough for the government to prove that Mr. Das acted with the general knowledge that his conduct was unlawful.  A candidate "willfully" accepts a conduit contribution if he, in addition to acting intentionally, knows about the applicable ban on conduit contributions to federal campaigns, knows that the payment made constitutes an impermissible conduit contribution under the law, and acts with intent to violate the law.  If you find Mr. Das did cause conduit contributions, but you are not convinced beyond a reasonable doubt that he did so "knowingly and willfully," then you must find him not guilty.

And for you to find Mr. Das knowingly and willfully "caused" the charged crimes, you must find, beyond a reasonable doubt, that Mr. Das affirmatively made an illegal contribution happen, knowing it was illegal under campaign finance law.[26]  A general suspicion that an unlawful act may occur or that something criminal is happening is not enough.  Mr. Das could not "knowingly and willfully" cause another to commit a crime, if he did not know that another person would commit a crime by doing what Mr. Das caused them to do.  Similarly, if Mr. Das believed in good faith that the other would not commit a crime by doing what Mr. Das asked of him, Mr. Das would have a complete defense.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge.  If you have a reasonable doubt about any one of these elements, then you must find Mr. Das not guilty of this charge.

---

[26]    Adapted from First Circuit Pattern Criminal Jury Instruction § 4.18.02(b).

**Defendant's Proposed Instruction No. 14**

**Count Two – Conduit Contributions – Definitions: "Contribution"**

As I explained regarding Count One, in order to convict Mr. Das of causing conduit contributions, you must find that these transactions were in fact campaign contributions, made for the purpose of influencing a federal election, within the meaning of the federal campaign finance laws.  If you find that the funds from Toby Chaudhuri, Jay Shah, and Ajoy Bose were not made for the purpose of influencing a federal election, but for another purpose, then you must find Mr. Das not guilty.

**Defendant's Proposed Instruction No. 15**

**Counts One and Two – Aiding and Abetting Illegal Contributions[27]**

Counts One and Two accuse Mr. Das of aiding and abetting illegal campaign contributions.  Aiding and abetting cannot be the basis for liability under Counts One and Two, concerning the acceptance of illegal campaign contributions.  It is only a crime for a candidate to accept illegal campaign contributions and Mr. Das is the only candidate alleged in the indictment to have accepted illegal campaign contributions. In addition, if the government is unable to prove beyond a reasonable doubt that Mr. Das knowingly and willfully accepted and received the allegedly illegal campaign contributions alleged in Counts One and Two, then no crime has been committed and Mr. Das cannot be convicted on those Counts under an aiding and abetting theory.

---

[27]  *See* Def. Abhijit Das's Partial Motion to Dismiss Aiding and Abetting Liability in Counts One and Two, filed September 18, 2023.

**Defendant's Proposed Instruction No. 16**

**Count Three – Conversion of Campaign Funds; Aiding and Abetting[28]**

The first two Counts involve FECA's campaign contribution rules.  FECA also restricts how campaigns can use their money.  Count Three alleges a scheme to convert campaign funds to personal, non-campaign use.

For you to find Mr. Das guilty of conversion of campaign funds, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:

First, that Mr. Das converted $25,000 or more of campaign contributions or donations in the Das For Congress campaign account to his personal use;

Second, that he did so by using campaign contributions or donations directly to fulfill personal commitments, obligations, or expenses, and not for any campaign purpose;

Third, that these obligations or expenses would have existed irrespective of his congressional campaign.  That is, Mr. Das would have owed these personal debts or needed to make these payments even if he had not been running for Congress;

Fourth, that Mr. Das knowingly and willfully violated the law in converting campaign funds, and not because of a mistake or accident or another innocent reason.  In general, for a person to commit a crime, they need not know that they are breaking the law.  However, in order to convict someone for the specific campaign finance laws charged here, the person committing that crime must know that his actions are unlawful.  Accordingly, you may only convict Mr. Das of violating the campaign finance statutes if you find that he knew he was violating the law.  It is not enough for the Government to prove that Mr. Das acted with the general knowledge that his conduct was unlawful.  A candidate "willfully" converts campaign

---

[28] *See* 52 U.S.C. § 30114(b)(2). "If campaign funds are used for a financial obligation that is caused by campaign activity or the activities of an officeholder, that use is not personal use. However, if the obligation would exist even in the absence of the candidacy . . . then the use of funds for that obligation generally would be personal use." *FEC v. Craig for U.S. Senate*, 933 F. Supp. 2d 111, 119 (D.D.C. 2013) (quoting Final Rule and Explanation and Justification, Personal Use of Campaign Funds, 60 Fed. Reg. 7862, 7863-64 (Feb. 9, 1995)).

funds if he, in addition to acting intentionally, knew that the commitments, obligations, and expenses that he directly paid for with money from the campaign account would not have been incurred if he were not a candidate, that his use of the money for that purpose constituted "personal use" and that it was illegal for him to withdraw campaign funds for that purpose.  If you find Mr. Das did convert campaign funds, but you are not convinced beyond a reasonable doubt that he did so "knowingly and willfully," then you must find him not guilty.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge.  If you have a reasonable doubt about any one of these elements, then you must find the defendant not guilty of this charge.

The government also alleges that Mr. Das is guilty of aiding and abetting the conversion of campaign funds, in that he intentionally helped someone else to commit this crime.  I will instruct you on the aiding and abetting charges in this case after I define a few important terms related to Count Three.

**Defendant's Proposed Instruction No. 17**

### Count Three – Conversion of Campaign Funds – Definitions: "Personal Use" [29]

Campaign funds cannot be converted to "personal use," which has a special definition in election law.  Personal use means any use of funds in a candidate's campaign account to fulfill a commitment, obligation or expense of any person that would exist irrespective of the candidate's campaign.  Federal regulations contemplate a case-by-case assessment of specific campaign spending decisions, but FECA lists "automatic" banned personal uses like tuition or salary payments for the candidate's family, paying for the candidate's vacations, concert tickets, or country club memberships, and other purely personal expenses.

---

[29]       *See* 11 CFR 113.1(g). FEC advisory opinions and case law recognize that certain expenses cannot be characterized as either personal or campaign-related and should be considered on a case-by-case basis.  *See, e.g., FEC v. Craig for U.S. Senate*, 70 F. Supp. 3d 82, 92 (D.D.C. 2014) ("[C]ertain legal expenses . . . are partially or fully payable with campaign funds . . . based upon the principle that these sorts of legal expenses would not ordinarily be incurred if the client were not a candidate.").

**Defendant's Proposed Instruction No. 18**

**Count Three – Conversion of Campaign Funds – Definitions: "Authorized Expenditures"** [30]

FECA establishes numerous permissible, non-personal use categories for spending campaign funds. Again, the FEC decides what is and is not acceptable when dealing with specific campaigns, but in general this means expenditures in connection with the candidate's campaign for federal office. In most cases, the FEC relies on something called the "irrespective test" to determine whether individual campaign spending is prohibited. Under the "irrespective test," campaign funds cannot be used to pay for expenses that would occur "irrespective" of the campaign. If an expense would have existed regardless of whether the candidate ran for office or not, it is usually a personal expense. In addition to the "irrespective test," FEC regulations carve out various uses of campaign funds that do not count as personal and are permissible.

In deciding whether Mr. Das knowingly and willfully converted campaign funds to personal use, keep in mind the following. Using campaign funds to repay a candidate for a loan they made to their campaign is not personal use. Using campaign funds for campaign-related purposes is not personal use. Using campaign funds to settle debts for goods and services provided by a business to the campaign is not personal use. As I explained earlier, campaigns must pay for goods and services that they use at full market value. Businesses, just like people, are subject to FECA and are at risk for making unlawful "in-kind" contributions if the campaign does not pay them at full market value like a normal vendor. If campaign funds are used for a lawful repayment of a loan or for goods or services, what happens afterwards with the funds is not the concern of the federal election laws.

If you find that Mr. Das's use of funds from the DFC account were not impermissible personal uses, but related to the campaign, you must find him not guilty of converting campaign funds.

---

[30]    *See* 2 U.S.C. §§ 439a(a), 439a(b)(1); 11 CFR 113.2. As the FEC has explained, "if the expense would exist even in the absence of the candidacy or even if the officeholder were not in office, then the personal use ban applies. Conversely, any expense that results from campaign or officeholder activity falls outside the personal use ban." Such uses are permitted provided that they do not result in campaign funds being converted to personal use by any person. Federal Election Commission, *Campaign Guide for Congressional Candidates and Committees* (Oct. 2021), https://www.fec.gov/resources/cms-content/documents/policy-guidance/candgui.pdf.

**Defendant's Proposed Instruction No. 19**

**Aiding and Abetting: Defined[31]**

Counts One, Two,[32] Three, Five, and Six charge Mr. Das with aiding and abetting the underlying crime.  That means that for you to find Mr. Das guilty of these counts, it is not necessary for you to find that he personally committed the crime.  You may find him guilty if he intentionally helped or encouraged someone else to commit the crime.  A person who does this is called an aider and abettor.

To establish aiding and abetting, the government must prove each and every one of the following elements beyond a reasonable doubt:

First, that someone else committed the charged crime;

And second, that Mr. Das willfully participated in it or caused it as he would in something that he wished to bring about.

As you can see, the first requirement is that you find that the government has proved beyond a reasonable doubt that another person has committed the crime charged.  Obviously, no one can be convicted of aiding or abetting the criminal acts of another if no crime was committed by the other person in the first place.  Thus, if you find that another person did not commit the underlying crime with respect to the count at issue, then Mr. Das cannot be found guilty of aiding and abetting with respect to that count.  But if you do find that another person committed a crime with respect to the count at issue, then you must consider whether Mr. Das aided or abetted the commission of that crime.

You must also find that Mr. Das knowingly and willfully associated himself in some way with the crime, and that he knowingly and willfully participated in the crime by doing some act to help make the crime succeed.  To establish that Mr. Das knowingly and willfully associated himself with the crime, the government must establish that Mr. Das intended that the crime charged be committed.  To establish that

---

[31]     Adapted from First Circuit Pattern Criminal Instruction § 4.18.02(a)-(b).

[32]     Regarding Counts One and Two, Mr. Das incorporates his pending Partial Motion to Dismiss the Aiding and Abetting Theory in Counts One and Two, filed September 18, 2023.

Mr. Das participated in the commission of the crime, the government must prove that Mr. Das engaged in some affirmative conduct or overt act for the specific purpose of bringing about that crime.

As to each aiding and abetting charge, if you find Mr. Das did aid and abet the charged crime, but you are not convinced beyond a reasonable doubt that he did so "knowingly and willfully," then you must find him not guilty.  If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on that aiding and abetting charge.  If you have a reasonable doubt about any one of these elements, then you must find Mr. Das not guilty of aiding and abetting.

**Defendant's Proposed Instruction No. 20**

**Count Four – Scheme to Falsify, Conceal 18 U.S.C. § 1001(a)(1) – Elements[33]**

Count Four alleges a false statement scheme.  It is a crime to falsify, conceal, or cover up by trick, scheme, or device a material fact from a federal governmental agency.  The government alleges that Mr. Das falsified and concealed material facts from the FEC in his campaign's 2017 end-of-year financial report, in connection with the December 2017 transfers to the campaign account.

For you to find Mr. Das guilty of this false statement offense, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:

First, Mr. Das actively took steps to knowingly and willfully conceal from the Das for Congress Committee approximately $125,000 of contributions from Toby Chaudhuri, Jay Shah, and Ajoy Bose.  To conceal means to do something to withhold from another.  It requires some act to prevent detection of the facts required to be revealed.

Second, that these funds were campaign contributions within the meaning of the federal campaign finance laws; that is, made for the purpose of influencing a federal election.  If you find that none of the funds at issue were contributions, then there is no requirement that they be disclosed;

Third, that Mr. Das did so by use of a trick, scheme, or device; that is, a course of action intended to deceive others;

Fourth, that the person from whom Mr. Das concealed the fact that campaign contributions had been made, the treasurer of his campaign committee, had a legal duty to disclose the fact to the FEC, and Mr. Das knew that the treasurer had this legal duty;

---

[33]      Adapted from First Circuit Criminal Pattern Instruction § 4.18.1002 and *United States v. Edwards*, Case No. 1:11-CR-161-1, Excerpt of Transcript of Jury Trial Proceedings, Court's Instructions to the Jury, at 8-33 (M.D.N.C. May 17, 2012).  *See also United States v. Adekanbi*, 675 F.3d 178, 182 (2d Cir. 2012) (defining materiality under § 1001).

Fifth, that the fact concealed by Mr. Das, that campaign contributions had been made, was material to the FEC.  A "material fact" is a fact that would naturally influence or is capable of influencing a decision of the agency.  Whether a statement or representation is "material" does not depend on whether the agency was actually deceived or misled.  For the purposes of this case, I instruct you that the Federal Election Commission is an agency of the executive branch and that campaign contribution reports are within the jurisdiction of that agency.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge.  If you have a reasonable doubt about any one of the elements, then you must find Mr. Das not guilty of this charge.

**Defendant's Proposed Instruction No. 21**

**Count Four – Scheme to Falsify, Conceal 18 U.S.C. § 1001(a)(1) - Knowing and Willful Concealment[34]**

On Count Four, the government must prove beyond a reasonable doubt that Mr. Das knowingly and willfully falsified, concealed, or covered up facts.  A statement is "false" if it was untrue when it was made, and the defendant knew it was untrue at that time.  To conceal means to do something to withhold from another.  It requires some act to prevent detection of the facts required to be revealed.  A person who makes or causes a statement which that person believes to be truthful does not knowingly or willfully conceal a material fact.

Here, a person acts "knowingly" if that person acts consciously and with awareness and comprehension and not because of ignorance, mistake, misunderstanding, or other similar reason.  A person acts "willfully" when the act is performed voluntarily and intentionally, with knowledge that one's conduct is unlawful, and with the specific intent to fail to do something that the law requires to be done – that is to say, with a bad purpose either to disobey or disregard the law.  In other words, the government must prove beyond a reasonable doubt that Mr. Das knew that the funds from Toby Chaudhuri, Jay Shah, and Ajoy Bose were contributions within the meaning of the federal campaign finance laws, that the DFC treasurer had a legal duty to report them to the FEC, and Mr. Das knowingly and intentionally took action to frustrate the Treasurer from reporting them accurately.  Conduct is not willful if it results from negligence, inadvertence, mistake, or a misunderstanding of the requirements of the law.  If you do not find that the government has proven beyond a reasonable doubt that Mr. Das intended to break the law, then you must find Mr. Das not guilty of Count Four.

If you have found Mr. Das "Not Guilty" with respect to having knowingly and willfully accepted excessive or conduit campaign contributions in Count 1 and Count 2, you cannot find him guilty of knowingly and willfully failing to report such payments as a campaign contribution in Count Four.

---

[34]   Adapted from First Circuit Criminal Pattern Instruction § 4.18.1002.

**Defendant's Proposed Instruction No. 22**

**Count Four – Scheme to Falsify, Conceal 18 U.S.C. § 1001(a)(1) – "A Scheme"[35]**

As I previously explained to you, the campaign's legal reporting duties fall on the treasurer. Although the candidate cannot affirmatively act to cause others to submit falsely, the candidate has no obligation to disclose anything or ensure that others disclose. For you to find Mr. Das guilty of this false statement crime, you must find, beyond a reasonable doubt, that Mr. Das knowingly and willfully concealed material facts from the FEC by engaging in a scheme. It is not enough if Mr. Das concealed a material fact, the concealment must be accomplished in a specific way – by use of a scheme. A person could fail to disclose material facts without employing a scheme. Therefore, the mere omission or failure to disclose material facts alone cannot constitute a scheme. Rather, a scheme is a deliberate plan and affirmative acts designed to deceive others by preventing or delaying the discovery of information.

Whether Mr. Das concealed material facts from anyone other than the FEC is irrelevant, and you may not find a scheme based on concealment from an entity or persons other than the FEC. Again, if you have a reasonable doubt about any one of the elements of this crime, then you must find Mr. Das not guilty of Count Four.

---

[35]   S*ee United States v. Curran*, 20 F.3d 560 (3d Cir. 1994); adapted from *United States v. Benton*, 4:15-cr-00103-JAJ-HCA (S.D. Iowa), ECF. No. 546, Final Jury Instructions.

**Defendant's Proposed Instruction No. 23**

**Count Five – 18 U.S.C. § 1001(a)(2), Q1 2018 FEC report[36]**

Counts Five and Six allege that Mr. Das knowingly and willfully caused his congressional campaign to unwittingly make false statements in its FEC reports by falsely stating the amount of "cash-on-hand" in the campaign bank account on certain reporting deadlines.

For you to find Mr. Das guilty of making or causing false statements to the FEC in Count Five, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:

First, that Mr. Das voluntarily and intentionally caused, in that he affirmatively took steps to make it happen, the Das for Congress campaign committee to submit to the FEC a Q1-2018 report that falsely stated the total amount of cash-on-hand in the campaign bank account as of March 31, 2018.  A statement is "false" if it was untrue when made, and Mr. Das knew it was untrue at that time.

Second, that the false statement was material.  A "material fact" is a fact that would naturally influence or is capable of influencing a decision of the agency.  Whether a statement or representation is "material" does not depend on whether the agency was actually deceived or misled.  For the purposes of this case, I instruct you that the FEC is an agency of the executive branch and that campaign contribution reports are within the jurisdiction of that agency.

Third, that Mr. Das acted knowingly and willfully in making or causing this statement to be made in a report to the FEC.  A false statement is made "knowingly and willfully" if a defendant knew that it was false or demonstrated a reckless disregard for the truth with a conscious purpose to avoid learning the truth.

---

[36]     Adapted from *USA v. Acevedo Villa*, 3:08-cr-00036-PJB (D. PR. 2009), Final Jury Instructions, ECF No. 656.  To charge an individual "in the federal election law context for causing an innocent intermediary to make a false statement to the FEC, the prosecution must prove that 'defendant knew of the [political party] treasurer's reporting obligations, that he attempted to frustrate those obligations, and that he knew his conduct was unlawful.'"  *United States v. Trie*, 21 F. Supp. 2d 7, 13 (D.D.C. 1998) (quoting *Curran*, 20 F.3d at 569).

You must find beyond a reasonable doubt that Mr. Das knew of his campaign's reporting obligations, that he attempted to frustrate those obligations, and that he knew his conduct was against the law.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge.  If you have a reasonable doubt about any one of the elements, then you must find Mr. Das not guilty of this charge.

**Defendant's Proposed Instruction No. 24**

**Count Six – 18 U.S.C. § 1001(a)(2), Q2 2018 FEC report[37]**

For you to find Mr. Das guilty of making or causing false statements to the FEC in Count Six, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:

First, that Mr. Das voluntarily and intentionally caused, in that he affirmatively took steps to make it happen, his congressional campaign committee to submit to the FEC a Q2-2018 report that falsely stated the total amount of cash-on-hand in the campaign bank account as of June 30, 2018.  A statement is "false" if it was untrue when made, and Mr. Das knew it was untrue at that time.

Second, that the false statement was material.  A "material fact" is a fact that would naturally influence or is capable of influencing a decision of the agency.  Whether a statement or representation is "material" does not depend on whether the agency was actually deceived or misled.  For the purposes of this case, I instruct you that the FEC is an agency of the executive branch and that campaign contribution reports are within the jurisdiction of that agency.

Third, that Mr. Das acted knowingly and willfully in making or causing this statement to be made in a report to the FEC.  A false statement is made "knowingly and willfully" of a defendant knew that it was false or demonstrated a reckless disregard for the truth with a conscious purpose to avoid learning the truth.  You must find beyond a reasonable doubt that Mr. Das knew of his campaign's reporting obligations, that he attempted to frustrate those obligations, and that he knew his conduct was against the law.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge.  If you have a reasonable doubt about any one of the elements, then you must find Mr. Das not guilty of this charge.

---

[37]     Adapted from *USA v. Acevedo Villa*, 3:08-cr-00036-PJB (D. PR. 2009), Final Jury Instructions, ECF No. 656.

**Defendant's Proposed Instruction No. 25**

**Counts Five and Six –Aiding and Abetting False Statements[38]**

Counts Five and Six charge Mr. Das with aiding and abetting the making of false statements to the Federal Election Commission.  I have already instructed you on the general definition of "aiding and abetting."

As I instructed you earlier, the first requirement is that you find that another person has committed the crime of making a false statement to the FEC.  Obviously, no one can be convicted of aiding or abetting the criminal acts of another if no crime was committed by the other person in the first place.  But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of that crime.

In order to aid or abet another to commit a crime, it is necessary that Mr. Das knowingly and willfully associated himself in some way with the crime, and that he participated in the crime by doing some act to help make the crime succeed.  To establish that a defendant knowingly associated himself with the crime, the government must establish that Mr. Das knowingly and intentionally aided, counseled, commanded, or induced the Das for Congress treasurer or campaign to violate the federal election laws by causing it to make, directly or indirectly, the false statements alleged in Counts Five and Six in a matter within the jurisdiction of the executive branch of the Government of the United States.

As I previously explained, for these counts, participation in a crime is willful if done voluntarily and intentionally, and with the specific intent to do something which the law forbids or with the specific intent to fail to do something the law requires to be done; that is to say, with a bad purpose either to disobey or to disregard the campaign finance laws.

---

[38]      18 U.S.C. § 2(b) "makes it an offense to deliberately cause another person to perform an act that would violate federal criminal law." *United States v. Curran*, 20 F.3d 560, 565 (3d Cir. 1994); *see also United States v. Starnes*, 583 F.3d 196, 211 (3d Cir. 2009) (stating that under 18 U.S.C. §2(b), "a person who 'willfully causes' another to commit a criminal act is liable as a principal").

What the government must prove is that Mr. Das did something to help or encourage the crime with the intent that the crime be committed, knowing at the time that he was causing his campaign to break the law.  As to Counts Five and Six, if you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on these charges.  If you have a reasonable doubt about any one of these elements, then you cannot find Mr. Das guilty of aiding and abetting the making of false statements to the FEC.

**Mens Rea Standard**

**Defendant's Proposed Instruction No. 26**

**Knowing and Willful[39]**

Not every violation of the law is a crime.  Some crimes are committed whenever a person does something that is prohibited, but other crimes do not occur unless a person does something that is prohibited and intentionally broke the law.  Most of you, for example, are aware of the laws against speeding, which do not require that you intentionally violated the law to be convicted.  If you drive your car over the speed limit, you can receive a ticket even if you were mistaken as to the law and thought the speed limit was higher than it really was or if you simply did not realize that you were driving as fast as you were.  A mistake or good faith belief that you were not breaking the speed limit would not be a valid defense.  But the crimes alleged in this case are different from speeding laws.

The campaign finance and false statement charges in this case all require that Mr. Das violated the law "knowingly and willfully."  That means that even if you find that Mr. Das did violate the campaign

---

[39]      *See* First Circuit Pattern Criminal Jury Instruction § 2.17; *Bluman v. FEC*, 800 F. Supp. 2d 281, 292 (D.D.C. 2011) aff'd summarily, 565 U.S. 1104 (2012), ("[W]e caution the government that seeking criminal penalties for violations of [campaign finance laws] . . . will require proof of the defendant's knowledge of the law.") (Kavanaugh, J.); *FEC v. John A. Dramesi for Congress Comm.*, 640 F. Supp. 985 (D.N.J. 1986) (a defendant must have an understanding that her actions are unlawful to commit a knowing and willful violation).

In this case, "ignorance of the law is no excuse" is not applicable.  Mr. Das submits that a criminal conviction for violating the federal election laws and related reporting rules can only be sustained if the government proves beyond a reasonable doubt that the defendant knew not only that his conduct was generally unlawful, but that he specifically knew that it would violate federal election law, and he undertook that conduct willfully, with the specific intent of violating the ban.  *See United States v. Curran*, 20 F. 3d 560 (3rd Cir. 1994); *United States v. Hopkins*, 916 F. 2d 207 (5th Cir. 1990).

The legislative history of FECA, the position of the Department of Justice at the time of Mr. Das's campaign, and U.S. Supreme Court precedent call for this heightened mens reas standard.  Congress wrote FECA to demand proof of "knowing and willful" FECA violations because of the complex, highly technical nature of campaign finance law which presents the danger that persons engaged in apparently innocent conduct might nonetheless be convicted.  *See* Constitution and Campaign Reform, Hearing on Bipartisan Campaign Reform Act of 2002 Before Senate Committee on Rules and Administration, 107th Cong. 172-173 (2000) (statement of Senator Fred Thompson); *see also id.* at 175 (statement of Senator Joe Lieberman); *see* U.S. Dep't of Just., Federal Prosecution of Election Offenses 123 n.48 (Richard C. Pilger ed., 8th ed. 2017) (noting that "[v]iolations of these laws that are committed with lesser intent – including all violations committed negligently or because the offender did not understand his or her conduct to be unlawful – are not federal crimes. They are subject to civil and administrative enforcement by the Federal Election Commission.").

Not only is the law highly complex and its prohibitions not easily or universally understood, it operates at the core of First Amendment activity, raising additional and unique risks that criminal prosecution for violations of its provisions could impermissibly chill lawful political speech and association in violation of the Constitution.  The use of the heightened mens rea standard protects against these risks.

finance laws or he did cause someone to make a false statement to the government, that would not be enough for you to convict him on any of these charges.  To convict Mr. Das on these charges, not only would you have to find that he in fact violated the law, you also would have to find that he violated the law "knowingly and willfully."  The purpose of adding the words "knowingly" and "willfully" is to ensure that no one will be convicted for an act done because of mistake or accident or other innocent reason.  An honest mistake in judgment or understanding does not rise to the level of criminal conduct.

An act is "knowing and willful" if the defendant's actions were taken with the full knowledge of all of the facts and the recognition that his actions were prohibited by law.  In other words, the government must prove beyond a reasonable doubt that the defendant knew and intended to break the law.  Conduct is not willful if it results from negligence, inadvertence, mistake, or a misunderstanding of the requirements of the law.  For each alleged "knowing and willful" violation of law, if you do not find that the government has proven beyond a reasonable doubt that Mr. Das intended to break the law, then you must return a verdict of not guilty on that count.

**Defendant's Proposed Instruction No. 27**

**Knowing and Willful: Complexity of Campaign Finance Law**

One factor for you to consider in deciding whether Mr. Das "knowingly and willfully" broke the law is whether the requirements of the law were vague or highly debatable.[40]  American citizens have a right to rely upon representations and statements made by the government and appearing in official publications or documents.  Where the law is vague, highly debatable, or subject to contradictory interpretations by the government enforcers, the defendant lacks notice as to what they can and cannot legally do.[41]  The more uncertain or debatable a law may be, the more difficult it may be to know whether certain conduct may violate the law.  The applicability of a law may be very clear in some instances, but not in others.

In determining whether Mr. Das had the required criminal intent for each element of each count, you also may consider the existence of thousands of FEC regulations and enforcement opinions defining important terms like "personal funds" and "contribution."  If the law is so uncertain or highly debatable that reasonable persons could disagree as to whether those payments would be regulated as a campaign contribution, then Mr. Das could not knowingly and willfully violate the law by making or causing illegal campaign contribution and you must find him not guilty.  Even if Mr. Das personally believed that such a payment was a campaign contribution, you must find him not guilty if you find that the law was so uncertain

---

[40]    Again, criminal intent to violate campaign finance laws is required to transform a civil FEC compliance matter into a criminal indictment.  Congress designed FECA's enforcement scheme to avoid the danger that a complex regulatory scheme such as this is prosecuted and "ensnare[s] individuals engaged in apparently innocent conduct."  *Bryan*, 524 U.S. at 194; *see also Ratzlaf*, 510 U.S. at 144-45.  "When there is substantial doubt concerning whether the law applies to the facts of a particular matter, the offender is more likely to have an intent defense."  U.S. Dep't of Justice, Federal Prosecution of Election Offenses 123 (8th ed. 2017) (stating that the "elevated scienter element" of a criminal campaign-finance violation requires "at the very least, that application of the law to the facts in question be fairly clear").

[41]    *See United States v. Critzer*, 498 F.2d 1160, 1162 (4th Cir. 1974) ("It is settled that when the law is vague or highly debatable, a defendant – actually or imputedly – lacks the requisite intent to violate it. . . . The obligation to pay is so problematical that defendant's actual intent is irrelevant. Even if she had consulted the law and sought to guide herself accordingly, she could have no certainty as to what the law required."); *United States v. Heller*, 830 F.2d 150, 154-56 (11th Cir. 1987) (same).  "[N]o man shall be held criminally responsible for conduct that he could not reasonably understand to be proscribed."  *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964).  Congress must define criminal offenses with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

or highly debatable that reasonable people would have believed that such payments were not campaign contributions.

**Defendant's Proposed Instruction No. 28**

**Knowing and Willful: FEC Statements on Family Money[42]**

In deciding whether Mr. Das could have been on notice that his conduct "knowingly and willfully violated" campaign finance law, you may consider the following.

Congress sets the finance and disclosure rules for candidates and for its incumbent members. Relevant here, the FEC has found personal loans made to a candidate during their campaign not a campaign contribution where, given the pre-existing personal relationship between the donor and the candidate, the loan would have been given irrespective of the fact that the recipient was a candidate at the time the loan was made.[43]  Gift giving within an immediate family with a history of such giving is not forbidden by the law.[44]

---

[42]     The FEC's express authorization to make policy in administering FECA "implies that Congress intended the FEC . . . to resolve any ambiguities in statutory language." *Orloski v. FEC*, 795 F.2d 156, 164 (D.C. Cir. 1986).  "For these reasons, the FEC's interpretation of the Act should be accorded considerable deference." *Id.*

[43]     *See, e.g.*, MUR 5141 (Moran for Congress) Statement of Reasons (Apr. 17, 2002) (concluding a $25,000 personal loan did not constitute a contribution, because it would have been made irrespective of Rep. Moran's candidacy by his friend and was not for use in connection with the campaign but rather to support Rep. Moran and help with legal fees during his difficult divorce and the Committee therefore had no reporting obligation under FECA or FEC regulations); H.R. Rep. No. 112-709, *In the Matter of Allegations Relating to Representative Gregory Meeks* (Dec. 20, 2012) (after investigating an alleged illegal gift, the FEC closed its investigation into a $40,000 personal loan made to Congressman Meeks. Meeks did not report the loan, which he characterized as for his family obligations, on his financial disclosure forms.)

[44]     When it comes to family money, the FEC has declined to penalize candidates using funds from family members for their campaign.  In a 2009 Statement of Reasons, FEC Commissioners publicly recognized that the FEC's "past handling of enforcement matters involving monetary gifts from family members has been inconsistent, to put it charitably." MUR 5724 (Feldkamp for Congress), *supra* n. 10, at 1.  The Commissioners not only criticized the FEC's pattern of arbitrary enforcement, but asserted that:

> The Commission's contradictory approaches in past matters involving family gifts provide inadequate notice to the regulated community about what is permitted and what is not.  At this point, respect for due process and fundamental fairness demands that the Commission articulate, either by rule or through policy statement, the permissible boundaries relating to family gifts before pursuing future enforcement actions in this area.

*Id*. at 2.  *See supra* n. 10, at 7 (enforcement against some campaigns and candidates but not others has "led to starkly conflicting results" because "the legal framework governing family gifts became hopelessly muddled").

<strong>Miscellaneous Instructions</strong>

<u>**Defendant's Proposed Instruction No. 29**</u>

<u>**FBI 302 Reports**</u>[45]

You've had testimony from live witnesses and you've heard about statements witnesses made to law enforcement outside this courtroom.  You'll recall in the prior phase of the case I told you we would be following rules of evidence and you'd see me applying them.  The 302 reports are, as you've heard, by their nature supposed to be a summary of what the interviewed person has said to the agents.  They're not necessarily verbatim transcriptions of the conversation, but summaries, and they may be made from the agents' notes and then put together in a report either that day or perhaps the next day.  The agents do not independently check or verify the substance of the interviewees' statements, they simply record them.  It is a federal crime to impede a federal law enforcement investigation by giving false information, but a witness interviewed under these circumstances is not placed under oath, as a witness in the courtroom would be. Perhaps importantly from your perspective, unlike a witness who testifies here in the courtroom, you're not able to observe the person giving the information to the extent your observations might help you assess the reliability of the evidence.  And that's a difference you might think about as you evaluate this evidence. And also unlike testimony at trial, a statement given elsewhere and recorded by the FBI in these reports is not subject to cross-examination by any party to fill in or clarify matters; it's simply accepted at face.  So you may take all of those things into account in deciding the reliability of the evidence as you evaluate it with all of the other evidence in the case at the time when you do that.

---

[45]     *See United States v. Tsrnaev,* Cr. No. 13-10200-GAO (D. Ma. Apr. 28, 2015), Jury Instructions.

**<u>Defendant's Proposed Instruction No. 30</u>**

<u>Good Faith Defense</u>

Because an essential element of the crimes charged is that Mr. Das acted with a corrupt intent, it follows that good faith on the part of Mr. Das is a complete defense to the charges in this case.[46]  An honest mistake in judgment or an honest error in fundraising does not rise to the level of criminal conduct.  Good faith is simply inconsistent with knowingly and willfully accepting illegal campaign contributions, knowingly and willfully converting campaign funds, or knowingly and willfully causing false statements to be made to the government.  And even if others were confused or had a different understanding in their communications with Mr. Das, if Mr. Das acted in good faith, their beliefs or intent do not matter.  It is Mr. Das's intent that matters here.

The burden of proving good faith does not rest with Mr. Das because a defendant does not have an obligation to prove anything in this case.  It is the government's burden to prove beyond a reasonable doubt that Mr. Das is guilty and did not act with good faith.  If Mr. Das believed in good faith that he was acting properly, even if he was mistaken in that belief, and even if others were injured by his conduct, then it is your duty to acquit Mr. Das.

---

[46]     *United States v. Henry*, 136 F.3d 12, 17 n.3 (1st Cir. 1998) (affirming a good faith instruction that included in part: "The burden of proving good faith does not rest with the defendant because the defendant does not have an obligation to prove anything in this case. It is the government's burden to prove beyond a reasonable doubt that the defendant is guilty of conspiracy."); *United States v. Dockray*, 943 F.2d 152, 155 (1st Cir. 1991).

**<u>Defendant's Proposed Instruction No. 31</u>**

<u>Caution as to Cooperating Witness Testimony</u>[47]

You have heard the testimony of [cooperating witness].  [He/she]: (1) provided evidence under agreements with the government and (2) testified under a grant of immunity.  "Immunity" means that [witness]'s testimony may not be used against [him/her] in any subsequent criminal proceeding.  However, if [he/she] testified untruthfully, [he/she] could be prosecuted for perjury or making a false statement, even though [he/she] was testifying under a grant of immunity.  Some people in this position are entirely truthful when testifying. Still, you should consider the testimony of [name of witness] with particular caution. [He/She] may have had reason to make up stories or exaggerate what others did because [he/she] wanted to help [him/her]self.  You must determine whether the testimony of such a witness has been affected by any interest in the outcome of this case, any prejudice for or against the defendant, or by any of the benefits [he/she] has received from the government as a result of being immunized from prosecution.

---

[47]     First Circuit Criminal Pattern Jury Instructions § 2.08; *id.* cmt. 4 (citing *United States v. Simonelli*, 237 F.3d 19, 29 (1st Cir. 2001) and *United States v. Angiulo*, 897 F.2d 1169, 1208 (1st Cir. 1990)).

**Defendant's Proposed Instruction No. 32**

**Testimony of Government Agents**[48]

You have heard the testimony of [FBI Agent[s] [FEC witness]], all of whom are agents of the FBI or the FEC.  The testimony of a government agent is entitled to no special credibility simply because that witness is working for the government. A government employee who takes the witness stand subjects his or her testimony to the same examination and the same tests as any other witness, including consideration of whether testimony may be colored by a personal or professional interest in the outcome of the case, and it is legitimate for defense counsel to try to attack the credibility of a government witness on these grounds. The testimony of people employed or retained by the government is entitled to neither more nor less credibility than the testimony of any other witness.

It is exclusively the province of the jury to give the testimony of government personnel the credibility it deserves, applying the same instructions as are applied to any other witness.  You should recall the witness's demeanor on the stand, his or her manner of testifying, the substance of the testimony, any bias or interest, and weigh and balance it just as carefully as you would the testimony of any other witness.

---

[48]     *See United States v. Charles*, 456 F.3d 249, 253 (1st Cir. 2006) (finding that an instruction to the jury that "law enforcement testimony should not receive special deference" protected the defendant from prejudice).

**Defendant's Proposed Instruction No. 33**

### Other Acts of Defendant[49]

You have heard testimony that Mr. Das previously committed acts similar to those charged in this case.  You may not use this evidence to infer that, because of his character, Mr. Das carried out the acts charged in this case.  You may consider this evidence only for the limited purpose of deciding:

[Provide only the specific purpose(s) below for which the prior act evidence is being admitted]

Whether Mr. Das had the state of mind or intent necessary to commit the crime charged in the indictment;

or

Whether Mr. Das had a motive or the opportunity to commit the acts charged in the indictment;

or

Whether Mr. Das acted according to a plan or in preparation for commission of a crime;

or

Whether Mr. Das committed the acts he is on trial for by accident or mistake.

Remember, this is the only purpose for which you may consider evidence of Mr. Das's prior similar acts.  Even if you find that Mr. Das may have committed similar acts in the past, this is not to be considered as evidence of character to support an inference that Mr. Das committed the acts charged in this case.  Do not return a guilty verdict unless the government proves the crime charged in the indictment beyond a reasonable doubt.

---

[49]    Adapted from First Circuit Pattern Criminal Jury Instruction § 2.06.

**<u>Defendant's Proposed Instruction No. 34</u>**

<u>**Defense: Theory of the Case**</u>[50]

Mr. Das reserves the right to supplement his proposed instructions with an instruction on the defense theory of the case.

---

[50]     *Davignon v. Hodgson*, 524 F.3d 91, 109 (1st Cir. 2008) ("In criminal cases we have said that a defendant has a right to an instruction on his theory of the case when the theory is supported by the record and is valid"); *United States v. Sampson*, 486 F.3d 13, 36 (1st Cir. 2007) ("[A] defendant generally is entitled to a requested instruction on his theory of the case as long as that theory is supported by the evidence and the proffered instruction correctly states the law"); *United States v. Thomas*, 895 F.3d 51, 55 (1st Cir. 1990) ("It is reversible error for the court to refuse a request to instruct as to defendant's theory of the case if there is evidence to support it").