UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ABHIJIT DAS,<br><br>Defendant. | Crim. No. 1:21-cr-10200-RGS<br><br>ORAL ARGUMENT REQUESTED |

## DEFENDANT ABHIJIT DAS'S MOTIONS IN LIMINE

Defendant Abhijit Das ("Mr. Das") moves that the Court exclude or limit the government's proposed evidence as follows:

1.  Rule 404(b) Evidence from Eric Chast

The government proposes to offer the testimony of Eric Chast that on January 11, 2018, while Mr. Das was in Boston, he gave Mr. Chast an envelope with $1900 cash and a deposit slip and asked him to make a deposit to the Webster Bank account of Kristen Campetti, one of the employees of Mr. Das's hotel business. Mr. Das and Ms. Campetti were also longtime friends but not romantically involved at this time. Mr. Chast claims this occurred when Mr. Das came to Boston to visit Mr. Chast for campaign work. Shortly prior to this, Ms. Campetti had donated $1900 to the Das campaign. Mr. Das did not say anything to Mr. Chast to indicate Mr. Das was the source of the cash, nor did he say anything to link the deposit to Ms. Campetti's donation. Nonetheless, the government wants to argue to the jury that it should infer that Mr. Das was reimbursing Ms. Campetti with his own funds for the campaign donation.

The government is wrong in how it characterizes the Webster deposit and Ms. Campetti's donation. Ms. Campetti donated her own funds without any expectation of reimbursement, as

documented by her sworn declaration attached as Exhibit A.  Records of the Das family Troca Hotel business, known as Boston East Tyngsboro Holdings, LLC ("BETH"), indicate that the most likely source of the January 11, 2018 cash deposit was a January 9, 2018 petty cash reimbursement of $1654 to Ms. Campetti for her business expenses.

Ms. Campetti has executed a declaration stating she donated her own funds and was not improperly reimbursed by Mr. Das.  *See* Exhibit A.  Attached to Exhibit A are BETH QuickBook records showing that on January 9, 2018, BETH reimbursed Ms. Campetti $1,654.62 in petty cash for business expenses she had advanced on her credit card or by cash.  *See* Attachment 3 to Exhibit A (Campetti Bill for Advanced Expenses).  It is not exceptional that Ms. Campetti received such a large cash payment.  In January 2018, money was extremely tight at BETH.  Five days prior to this petty cash reimbursement to Ms. Campetti, on January 4, 2018, her $1463 paycheck from the Das hotel business bounced after she had deposited it into her Webster account.  BETH's records indicate that sometimes other employees too were also paid from cash on an unscheduled, as-needed-basis.  *See* Attachments 1 and 2 to Exhibit A (QuickBooks, BETH Campetti and Petty Cash Disbursements).  And because in January 2018 money was so tight, BETH would sometimes pay employees in cash instead of by check to avoid even more checks bouncing.  *See, e.g.*, Attachment 4 to Exhibit A (January 20, 2018 Ladebauche Email, Bates No. USA-000249560). Webster Bank is based in Connecticut, where Ms. Campetti grew up and opened her account.  In 2018, it had a branch in Boston but not in the Tyngsboro area.  Thus, it was perfectly rational for Mr. Das to arrange the deposit at this branch when he was visiting Mr. Chast in Boston.

Mr. Das did not tell Mr. Chast that he, personally, was the source of the funds.  The government has never attempted to interview Ms. Campetti about this donation.  Nonetheless, the government wants to argue that the jury can infer from Mr. Chast's testimony that Mr. Das was

reimbursing Ms. Campetti with his own funds to make a conduit campaign donation. The government claims this testimony is proof of the charged offense or in the alternative, admissible under Rule 404(b). It is neither.

As uncharged extrinsic act evidence, Mr. Chast's statements are subject to Rule 404(b) analysis. "To admit evidence of prior bad acts, a trial court must find that the evidence passes two tests." *United States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir. 2000). "First, the evidence must have 'special relevance' to an issue in the case such as intent or knowledge, and must not include 'bad character or propensity as a necessary link in the inferential chain.'" *Id.* (quoting *United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir. 1996)). "Second, under Rule 403, evidence that is specially relevant may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* The Court must consider the real "danger that the jury will use [Rule 404(b) other act] evidence not on the narrow point for which it is offered but rather to infer that the defendant has a propensity towards criminal behavior." *United States v. Gilbert*, 229 F.3d 15, 25 (1st Cir. 2000) (citation and internal quotation marks omitted).

The government's speculative inference that Campetti was reimbursed for her donation has no support in the evidence, and faces direct contradiction. Normally, Rule 404(b) evidence tries to link the defendant to a known bad act. Here the government cannot prove a bad act actually occurred, nor can it link any act to Mr. Das or show sufficient similarity. Furthermore, the government's inference that there was reimbursement does not have any special relevance to show knowledge or intent. The government merely wants to argue Mr. Das has a propensity to make improper contributions. The government's theory is Mr. Das legally could have given the money to the campaign directly as his own donation, but preferred to give it under Ms. Campetti's name. This is different than the theory underpinning the charged loans. *See DiRico v. City of Quincy*,

3

404 F.3d 464, 467-468 (1st Cir. 2005) (affirming exclusion of evidence related to a "single, unsubstantiated" prior bad act that lacked special relevance and posed a serious danger of unfair prejudice). The government cannot show Mr. Das was the source of the funds, or that the funds were a reimbursement for a conduit donation. *See United States v. Pappathanasi*, 383 F. Supp. 2d 289, 297 (D. Mass. 2005) (excluding testimony that lacked special intent relevance and would otherwise have failed 403 balancing).

All that Mr. Chast's testimony can do is create a minitrial about uncharged conduct, and divert the jury to focusing on an uncharged event. *See United States v. Pena*, 24 F.4th 46, 71 (1st Cir. 2022) (recognizing "the potential for confusion arising from mini-trials"); *Watkins v. Genesee,* No. 13-13678, 2016 WL 727855, at *3 (E.D. Mich. Feb. 24, 2016) (excluding 404(b) evidence where there was no determination of wrongdoing by defendant, and "the jury would have to make that determination of wrongdoing based upon a 'trial within the trial' with respect to those complaints"). If the Court were to admit Mr. Chast's testimony, it will force Mr. Das to put on a defense when he might not otherwise, and call Ms. Campetti and possibly other witnesses, to rebut evidence that is not even part of the charged conduct. Rule 404(b) should not be the tail that wags the dog.

Furthermore, the government wants to argue this inference for an improper purpose—to show propensity: If Mr. Das did a conduit donation with Ms. Campetti, the government will argue he more likely did them with his three family friends. The core of the government's case is its claim that the three loans to Mr. Das's mother, Dr. Mitra Das, are conduit loans to the campaign. The government alleges a scheme to help Mr. Das's wealthy friends circumvent personal donation limits. The pertinent question for the jury is whether specific transactions set forth in the Indictment violated federal campaign finance law. Any supposed reimbursement of a small

4

donation or allegations related to a payment to one of Mr. Das's employees is not proof of that charge. It is separate and distinct.

This proposed testimony seeks to rely on a contradicted, unsupported inference and fails to meet the First Circuit's 404(b) standard. And the risk of irreversible and inevitable unfair prejudice, even if a limiting instruction is given, otherwise requires excluding it altogether. *See United States v. Fosher*, 568 F.2d 207, 217 (1st Cir. 1978) (excluding probative 404(b) evidence upon Rule 403 balancing); *United States v. Amaya–Manzanares*, 377 F.3d 39, 49 (1st Cir. 2004) (Torruella, J., dissenting) ("[J]uries treat prior bad acts evidence as highly probative of the charged crime").

    2.    <u>Testimony of Toby Chaudhuri</u>

There are two evidentiary issues with respect to government witness Toby Chaudhuri.

    a.    <u>Witness Statements of Law</u>

Mr. Chaudhuri is one of the three people who made a loan to Dr. Mitra Das, the defendant's mother. The government claims the loan was a conduit campaign loan. In 2018 and 2019, Mr. Chaudhuri wrote in several documents that his loan was a valid loan to Dr. Das, unrelated to the campaign, and purposely structured in good faith to comply with FEC law. *See, e.g.,* Exhibit B (January 2019 Toby Chaudhuri Emails, Bates Nos. USA-000141913and USA-000142700). The FBI twice interviewed Mr. Chaudhuri and he restated similar concepts. During his second interview, the government told him and his lawyer it did not believe him, (and he obviously could face indictment), Mr. Chaudhuri went to the hospital with heart palpitations, saw a cardiologist and psychologist, and changed his version of events. He then told the government in his third interview he knew the loan was illegal.

Based on his grand jury transcript, Mr. Chaudhuri is rather eager to please the government and willing to speculate on Mr. Das's unspoken thoughts. He should be limited to testifying as to what he said to Mr. Das or what Mr. Das said to him. He should not give his opinion on whether the central event in this case—a loan—was illegal, nor offer testimony that he believes Mr. Das knowingly violated campaign finance laws. Fed. R. Evid. 704(b). What Mr. Chaudhuri thought at the time, his state of mind, is not relevant nor appropriate. There is no conspiracy charge.

      b.   Mr. Chaudhuri's Campaign Donation

The records of the Das for Congress campaign list donations from Mr. Chaudhuri and his wife, each for $5,400, as allowed under FEC limits. Mr. Chaudhuri now claims that his wife and himself did not make these donations. The government wants to offer that testimony and ask the jury to infer that Mr. Das somehow is responsible for recording false donations from the Chaudhuris. The defense does not know the full details, but the government has not claimed that it can connect any action by Mr. Das to this purported incorrect entry. Mr. Chaudhuri referenced this claim during his grand jury testimony, but the government did not include it in the indictment, and it does not fit within the charged counts. Thus, it should be excluded under the 404(b) analysis cited above.

    3.   Testimony of Deborah Belanger

Ms. Belanger is a former employee of Mr. Das's campaign. The FBI 302 reports documenting her interview show she has a spiteful dislike, on an irrelevant personal level, of Mr. Das. The government wants to offer two statements as proof of the charged offenses or in the alternative, under Rule 404(b). Applying the same framework outlined above, the Court should exclude both statements.

      a.   Ms. Campetti's Pay Raise

Ms. Belanger claims that Mr. Das's hotel gave Ms. Campetti a pay raise, and shortly thereafter she made the $1900 donation referenced above. The government wants the jury to speculate that the raise was a conduit donation, without any further evidence. First, this allegation directly conflicts with the conduit allegation the government wants to offer with Mr. Chast above. There cannot be reimbursement from Mr. Das and from the hotel business for the same donation. Second, the government has not disclosed to the Court that it has emails from the hotel business directly refuting Ms. Belanger's speculation. The emails show that James Foster, one of the hotel's senior managers, suggested to Mr. Das in 2017 that they increase Ms. Campetti's salary. Mr. Das agreed because Ms. Campetti was taking on additional hotel responsibilities. *See* Exhibit C (December 2017 James Foster Emails, Bates Nos. USA-000242334-337). The Court should not permit such speculation contrary to objective evidence. Again, it will pressure Mr. Das to put on a defense case, or expand it, merely to have testimony refuting the 404(b) allegation.

      b.      <u>Alleged Donation Reimbursement</u>

Ms. Belanger also claims Mr. Das offered to reimburse her to make a donation in her name but she refused and nothing happened. Mr. Das disputes such a conversation took place, but again, a speculative conversation about an event that did not occur is more prejudicial than probative. It is not proof of a count in the indictment. It is too speculative for admission under Rule 404(b). As with the government's other proposed 404(b) evidence, there is the real risk that the jury will consider Ms. Belanger's claim to be evidence of Mr. Das's bad character or propensity to violate the law, even if the Court instructed the jury against doing so. Any purported probative value to Ms. Belanger's vague statement is far outweighed by prejudice.

## **CONCLUSION**

For the foregoing reasons, the Court should exclude the proffered evidence that Mr. Das engaged in any alleged campaign finance misconduct, other than that charged in the Indictment. Mr. Das also respectfully requests that the Court limit the government's witnesses' testimony as outlined above.

## REQUEST FOR ORAL ARGUMENT

Defense counsel respectfully request that the Court hear oral argument on Mr. Das's motions in limine.

Dated: September 19, 2023                                   Respectfully submitted

                                                            Abhijit Das, by his counsel:

                                                            */s/ Michael Kendall*
                                                            Michael Kendall (BBO # 544866)
                                                            Abigail Mahoney (BBO #709427)
                                                            WHITE & CASE LLP
                                                            75 State Street
                                                            Boston, MA 02109-1814
                                                            Telephone: (617) 979-9310
                                                            michael.kendall@whitecase.com
                                                            abigail.mahoney@whitecase.com

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1, I certify that I conferred with counsel for the government and attempted in good faith to resolve or narrow the issue.

*/s/ Michael Kendall*

## CERTIFICATE OF SERVICE

I, Michael Kendall, hereby certify that on September 19, 2023, I caused a true and accurate copy of the above document and its exhibits to be served on counsel of record by CM/ECF.

*/s/ Michael Kendall*