UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ABHIJIT DAS,<br><br>  Defendant | Crim. No. 1:21-cr-10200-RGS |

### DEFENDANT ABHIJIT DAS'S AMENDED PROPOSED JURY INSTRUCTIONS

Defendant Abhijit Das respectfully submits the following amended instructions regarding the illegal contribution charges in Counts One and Two, and opposes the government's amended proposed instruction (ECF No. 145). The government's proposed change in strategy and legal theory:

   a.   Is legally incorrect;

   b.   Constitutes an impermissible variance from the allegations in the indictment; and

   c.   So sandbags the defense, that it would force a mistrial, to avoid an overwhelming case of ineffective assistance of counsel.

At the pretrial conference, the parties argued the government's motion to exclude any reference to the legal decisions resolving Representative Lori Trahan's campaign loans. The defense specifically said the Trahan decisions were relevant and admissible to show how expansively family resources could be used for donations. In response, the government strategically said it was not challenging at trial Mr. Das's use of family resources, and said the excessive and conduit contribution counts were limited to the loans of the three family friends. The government was attempting to distinguish Lori Trahan's loan of her husband's money to her campaign from Mr. Das's alleged conduct, on the basis that the indictment is not about family money—only about the supposed illegal loans from three friends.

The indictment specifically limits the illegal donation counts to loans from Persons A, B, and C, Messrs. Shah, Bose, and Chaudhuri. There is no allegation in the indictment related to Mr. Das's use of his family resources. Based on the Court's ruling and the government's representation, Mr. Das has tailored

1

his defense to citing the legal use of family resources, consistent with the Trahan and other decisions of the Federal Election Commission, House Ethics Committee, and courts. The defense opening explicitly discussed the use of family resources. In addition, Mr. Das has limited his cross examination of several witnesses in reliance on the government's representation. Mr. Das could have asked several witnesses questions to show the intermingling of family assets that fully justify using family resources in a campaign. The defense refrained from important cross-examination regarding the Das family's history and practices of sharing all of their assets as "one pot" of indistinguishable family money, and introducing extensive evidence of the two-way financial support between Mr. Das and his parents.

Because of the government's concession, there was no need for Mr. Das to develop such testimony. But for the government's representation, Mr. Das would have developed favorable testimony from Sean Smith, Rise Ladebauche, Eric Chast, and Toby Chaudhuri.

The government now proposes an instruction implicating money shared with immediate family members, after the defense relied on its concession that family money is not at issue in this case. The government should not be permitted to sandbag the defense – saying it would not pursue an issue for which there is substantial opposite legal support for the defense's position, and then reverse positions after the defense relied on the government's representations to its detriment. *See United States v. Szpyt*, 785 F.3d 31, 41 (1st Cir. 2015) (judicial estoppel may apply where "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party"); *United States v. Brissette*, No. 16-cr-10137-LTS, 2020 U.S. Dist. LEXIS 24861, at *120-22 (D. Mass. Feb. 12, 2020) (vacating guilty verdicts in part because the government's theories and representations changed before and during trial and "the nature, timing, and significance of these shifts prejudiced the defendants and invited a miscarriage of justice by seriously hampering the Court's management of the trial").

The Court should deny the government's request and use the proposed instructions attached to this memorandum. The FEC decisions applying FECA regulations repeatedly interpret them so that they do not limit families giving resources to a candidate. Representative Trahan's case is the latest in a line of

examples.[1] The FEC has defined "personal funds" to include other family money and gifts or loans of a personal nature in enforcing federal election law.[2] And in a 2009 Statement of Reasons, the FEC Commissioners publicly recognized that the FEC's "past handling of enforcement matters involving monetary gifts from family members has been inconsistent, to put it charitably." MUR 5724 (Feldkamp for Congress), at 1. The Commissioners not only criticized the FEC's pattern of arbitrary enforcement, but asserted that:

> "The Commission's contradictory approaches in past matters involving family gifts provide inadequate notice to the regulated community about what is permitted and what is not. At this point, respect for due process and fundamental fairness demands that the Commission articulate, either by rule or through policy statement, the permissible boundaries relating to family gifts before pursuing future enforcement actions in this area."

*Id.* at 2.

Not only is the law, as interpreted and applied by the FEC, on the defense's side but the government agreed not to contest this issue. After explicitly disaffirming the family money issue to gain an advantage, the government is now attempting to change its position in the middle of trial. Allowing the government to pursue a family money-related theory of liability would constitute an impermissible variance and call for a mistrial. The defense's opening and cross examination strategies would constitute ineffective assistance of counsel if the government is permitted to reverse course now.

Dated: October 9, 2023                    Respectfully submitted

                                          Abhijit Das, by his counsel:

                                          /s/ *Michael Kendall*

---

[1] *See, e.g.*, MUR 5724 (Feldkamp for Congress), Statement of Reasons of Vice Chairman Matthew S. Petersen and Commissioner Caroline C. Hunter at 4 (Dec. 11, 2009) (declining to find probable cause in matter involving candidate who received a monetary gift from his mother); MUR 7652 (Nicole Rodden for Congress, Inc.), Statement of Reasons of Chair Allen Dickerson and Commissioners Sean J. Cooksey and James E. Trainor III (husband of congressional candidate made a $100,000 loan to his wife's campaign committee); MUR 5321 (Robert), Statement of Reasons of Commissioner David M. Mason (July 13, 2004) and Statement of Reasons of Commissioners Bradly A. Smith and Michael E. Toner (July 27, 2004) (wealthy mother gave $800,000 gift to candidate daughter - The Commission declined to seek civil penalties related to gifts between parent and adult child).

[2] In choosing not to seek civil fines for family money related campaign finance matters, the FEC has contrasted illegal loans from a lobbyist (looking for a quid pro quo if the candidate wins) with support from close personal relationships, suggesting "the corruption potential of such transfers [i.e., personal loans or family gifts] is so insignificant as to make penalties for them unnecessary." MUR 5321 (Robert), Statement of Reasons of Commissioner David M. Mason, at 9 (July 13, 2004). *See also* MUR 5321 (Robert), Statement of Reasons of Commissioners Bradly A. Smith and Michael E. Toner, at 4 (July 27, 2004) ("Even if we had concluded that the funds at issue were not the personal funds of the candidate, we could not have supported a recommended civil penalty that is grossly disproportionate to the seriousness of the violations, which stem from transactions among family members.").

Michael Kendall (BBO # 544866)
Abigail Mahoney (BBO #709427)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
abigail.mahoney@whitecase.com

## CERTIFICATE OF SERVICE

    I hereby certify that the above document was filed on the date appearing in the header of this page through the ECF system, which will send true copies of the document to the attorneys of record for each party.

*/s/ Michael Kendall*

**Defendant's Proposed Amended Instructions**

**Defendant's Proposed Instruction No. 5**

**Campaign Finance Background: Candidate Loans and Personal Funds**[3]

Congressional candidates may spend unlimited amounts of their "personal funds" on their own campaigns. They can give that money or loan it with the intention of paying themselves back from the campaign bank account. If they wish, candidates may redesignate their money as a loan if they change their mind and do want to pay themselves back. They also may take out bank loans (subject to certain requirements) and then put that money into their campaign. Loans, by their very nature, are meant to be paid back, and in a moment I will explain the law on candidate repayments.

Federal election law and the FEC define what counts as "personal funds."[4] They include (1) assets that the candidate had access to or control over under state law at the time they became a candidate, (2) the candidate's income or asset sale proceeds received during the election cycle; and (3) the candidate's share of jointly owned assets. In addition, if a custom of personal gift-giving pre-dates the candidate's campaign, then continued financial support is not a contribution but also considered personal funds. This is true even if the support given prior to candidacy was smaller or of a different type.

The FEC is responsible for interpreting these categories and applying them to candidates' unique personal finances. In determining whether Mr. Das willfully made or caused illegal campaign contributions, you may consider the fact that the FEC has defined permissible "personal funds" to include gifts or loans of a personal nature.[5] Finally, even if a candidate receives money during their campaign, that

---

[3] *See* Federal Election Commission Campaign Guide, *Congressional Candidates and Committees*, at 28-30, 35 (June 2014) (summarizing the federal campaign finance laws applicable to candidate committees as of June 2014).

[4] *See* 11 CFR 110.10 (Unlimited expenditures from candidate's personal funds); 11 CFR 100.33 (Definition of personal funds); MUR 5724 (Feldkamp for Congress), Statement of Reasons of Vice Chairman Matthew S. Petersen and Commissioner Caroline C. Hunter at 4 (Dec. 11, 2009)("[T]he Commission has construed 'personal funds' inconsistently with respect to family gifts in prior enforcement matters").

[5] *See, e.g.*, MUR 5141 (Moran for Congress) Statement of Reasons (Apr. 17, 2002) (concluding a $25,000 personal loan did not constitute a contribution, because it would have been made irrespective of Rep. Moran's candidacy by his friend and was not for use in connection with the campaign but rather to support Rep. Moran and help with legal fees during his difficult divorce and the Committee therefore had no reporting obligation under FECA or FEC regulations); MUR 5321 (Robert), Statement of Reasons of Commissioner David M. Mason, at 9 (July 13, 2004) and Statement of Reasons of Commissioners Bradly A. Smith and Michael E. Toner, at 4 (July 27, 2004) (Wealthy mother's $800,000 gift to candidate daughter "was consistent with Mary Robert's established pattern of gift giving before candidacy" and "became the 'personal funds' of the candidate to be used in any manner the candidate so chose").

money must be unambiguously related to the campaign in order to be regulated by the federal election laws. The source of the money must have given it "for the purpose of influencing a federal election" – not for some other purpose – in order for it to be an impermissible contribution rather than true personal funds.[6]

   These "personal funds" rules and loan restrictions are campaign regulations.  A candidate's business or their family members may take out loans for separate business purposes unrelated to the campaign, and the FEC's regulations do not apply in any way to such personal or business loans.  A loan to a private business, or a candidate's relative, is not a contribution.

---

[6]   *See* MUR 5274 (Feldkamp for Congress), at 6.

**Defendant's Proposed Instruction No. 6**

**Campaign Finance Background: Candidate's Shared Property**

In this case, you have heard evidence that Mr. Das shared bank accounts and family assets with his parents, and that he intended to use his family resources to support his campaign.

I instructed you that a candidate may spend or loan an unlimited amount of their personal funds to their own campaign. A candidate's personal funds include not only their assets and income but their portion of shared, jointly owned assets with close family members.[7]

The government charged Mr. Das with campaign finance violations having to do with loans from friends outside of his family. Mr. Das's use of his family resources is not at issue in this case.

---

[7] *See* 11 CFR 100.33; 52 U.S.C. § 30101 et seq. FEC regulations expressly permit the candidate to use the value of his or her share of assets jointly owned with the spouse for campaign purposes, without making the spouse a contributor.