UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                )<br>)           Case No. 21-cr-10200-RGS<br>ABHIJIT DAS, a/k/a Beej Das,     )<br>)<br>Defendant.                            ) | |

GOVERNMENT'S AMENDED PROPOSED INSTRUCTION

The United States respectfully submits that following regarding the Court's proposed jury instructions.

Page 14 ("Personal Funds")

The government objects to inclusion of the language at lines 281-284. First, the language is not a correct statement of the law. The defendant's primary authority is a 2009 FEC statement (MUR 5724) from two of the eight FEC Commissioners, not the full FEC commission, and has no precedential value. Even if did, the statement does not provide any safe harbor also makes clear that:

> We can envision circumstances where pursuing civil penalties in family gift-related matters would be warranted-for instance, in a situation where a prohibited source (such as a corporation, labor union, or foreign national) sought to funnel money into a candidate's campaign coffers *via* a family member of that candidate.

A copy of the statement from the two commissioners is attached.

Instead, the Court should adhere to the statutory definition in 52 U.S.C. § 30101(26) that is accurately described in lines 274-281 and includes the appropriate language that "personal funds" can include, "gifts of a personal nature that had been customarily received by the candidate prior to the beginning of the election cycle." 52

U.S.C. § 30101(26)(b)(vi).

The inclusion of the language "even if it differs in type or amount from the support given before the campaign" is problematic. It could lead a jury to conclude that if someone gave a candidate $100 per year for five years, then gave $100,000 in the year in which the candidate ran for Congress, that the $100,000 transfer would not be a contribution, even if the giver intended the extra funds to go toward the campaign.

Second, even if the court is inclined to give a similar instruction, it should be read in the permissive "may be considered personal funds" so it may be a factual issue for the jury to resolve rather than a legal conclusion.

Page 15 (Form 3)

At line 294, the government requests that the court amend the sentence to read, "While the candidate has no responsibility to file a Form 3, the candidate cannot knowingly provide false information to treasurer and cause the treasurer to make a false statement to the FEC."

Page 16 (Good Faith)

The First Circuit has cautioned that a good faith instruction is not required, and instructions on good faith must be crafted with great care. *United States v. Mueffelman*, 470 F.3d 33, 37 (1st Cir. 2006). Good faith instructions that could lead the jury to think that lies were protected are overly favorable. The government requests the addition of the sentence, "A defendant does not act in good faith if, even though he honestly holds a certain opinion or belief, he also acted with the purpose of deceiving others." This language was borrowed from the instructions provided by Judge Talwani in *United States*

*v. Condron*, 17-cr-10243-IT.

### Page 17 (Relevant contribution limit)

Lines 335-336 reads that "[i]n the 2018 election cycle the relevant limit was set at $25,000 or more during the calendar year." The relevant limit was for the *2017-2018* campaign cycle for federal elections (the illegal contributions are alleged to have taken place in 2017), and the limit for individual contributions under the Election Act was $2,700 per election, totaling $5,400 for both the primary and general election campaign.[1] The $25,000 threshold is an element of the criminal offense in 52 U.S.C. § 30109(d). Although the evidence has been clear on this point, the instruction could cause confusion for the jury.

### Page 17 (Elements of Excessive Contribution Charge)

The government objects to the inclusion of the second element at lines 341-342 ("Second, that Mr. Das knew the money was being contributed for use in his campaign and not for some other purpose"). The offense charged in Count One alleges that the defendant "knowingly and willfully accepted contributions to the DFC Campaign in excess of the limits of the FECA, which aggregated $25,000 and more during the 2017 calendar year, and did so by coordinating and accepting the transfers of money by [Toby Chaudhuri, Jay Shah, and Ajoy Bose]."

The crime charged in Count One is complete when the defendant knowingly and willfully accepts the excessive donation into his authorized campaign account. *See e.g.,*

---

[1] *See* Price Index Adjustments for Contribution and Expenditure Limitations and Lobbyist Bundling Disclosure Threshold, 82 FR 10904-01.

*United States v. Chestnut*, 533 F.2d 40, 47 (2d Cir. 1976) (the deposit of a campaign check "constituted the ultimate essential element of the offense of accepting and receiving an unlawful contribution"); *see also United States v. El-Saadi*, 549 F.Supp.3d 148, 160 (D.D.C., 2021) ("Nothing about the statutory text would seem to foreclose the possibility that a donor could commit the crime of making a conduit contribution and a campaign could commit the crime of willfully accepting a conduit contribution at the exact same time—perhaps upon receipt of the donation or maybe upon deposit").

Under the current language, a jury would be required to acquit the defendant even if the government proved the defendant knowingly and willfully solicited, caused, and accepted excessive contributions to increase his campaign's cash on hand number, if he intended to return the funds to the contributors after reporting a large cash-on-hand number to the FEC.

Under the facts of this case, that is a plausible scenario, and would result in a miscarriage of justice. An equally plausible scenario would be if the evidence demonstrated he intended to steal or convert the excessive contributions he solicited, the defendant could be acquitted.

<u>Page 17 (Intermediary Language)</u>

The government requests that the court strike the term "campaign committee" as the example of the intermediary at line 348. The campaign committee, or the authorized committee, is the primary entity authorized to receive contributions, rather than an intermediary or go-between. As it stands, the instruction could cause confusion. Instead, the governments proposes that the example provided to the jury should include either

conduit, third party or family member.

### Page 19 (Conversion)

At line 376, the government requests that the court include the First Circuit Pattern Instruction for 18 U.S.C. § 641 to define the term "convert" as follows: The term "steal" or "convert" means to take money or property belonging to another person or entity with intent to deprive the owner of its use or benefit either temporarily or permanently.

### Page 20 (Aiding and Abetting)

The government requests that the court strike lines 405-418 and include an appropriate instruction for 18 U.S.C. § 2(b) rather than § 2(a). The indictment alleges, and the evidence adduced at trial demonstrates, that the defendant caused others to commit acts, that if they were done by him, would result in his commission of the crime.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:   /s/ *Neil Gallagher*
      Neil J. Gallagher, Jr.
      Elysa Q. Wan
      Assistant U.S. Attorneys

Date Submitted: October 11, 2023