UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 21-10200-RGS

UNITED STATES OF AMERICA

v.

ABHIJIT DAS

**Second Draft Instructions to the Jury**

October 13, 2022

Members of the Jury:

Now that you have heard the evidence in the case and the closing arguments of the lawyers, the time has come for me to instruct you on the law. My instructions will be in four parts; first, some instructions on the general rules that define the duties of the jury in a criminal case; second, a brief review of what is and what is not evidence in a criminal trial, together with some guidelines that may assist you in evaluating the evidence that has been presented; third, I will give instructions defining the elements or material components of the crimes charged; and finally, I will explain the rules that will guide the conduct of your deliberations.

In defining the duties of the jury, let me first remind you of the general rules. It is your duty to find the facts from all the evidence in the case. To the facts as you find them, you must apply the law as I will define it for you.

You must follow the law as I explain it, whether you personally agree with the wisdom of the law or not.  You must do your duty as jurors regardless of any personal likes or dislikes, opinions, prejudices, or appeals to sympathy.  That means that you must decide the case based solely on the evidence that is before you.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  And you must not read into these instructions, or into anything that I may have said or done during the trial, any suggestion from me as to the verdict you should return – that is a matter entirely up to you.  Even if I were to have an opinion as to what your verdict should be, my opinion would be utterly irrelevant.  The verdict is yours, and yours alone, to render as the sole judges of the facts.

At the beginning of the case, I explained some important rules that govern criminal trials. I will restate them for you now in more detail.  There are three basic rules.

The first rule is that a defendant is presumed innocent unless and until proven guilty, and this presumption alone is sufficient to acquit him.  The Indictment brought by the United States against Mr. Das is an accusation, and only that; it is not proof of anything at all.  A defendant is innocent in the eyes of the law unless and until you, as the jury, decide, unanimously,

48   that the government has proven his guilt beyond a reasonable doubt.

49       That brings me to the second rule.  In a criminal case, the burden of

50   proving guilt is on the government.  It carries that burden throughout the

51   trial.  A defendant never has the burden of proving his innocence.  The right

52   of a defendant to put the government to its proof is one of the most

53   fundamental guarantees of our Constitution.  This means that a defendant

54   has no obligation to produce evidence, to call witnesses, nor can he ever be

55   compelled to testify.  Mr. Das has an unconditional constitutional right not

56   to testify.  Thus, you may not draw an inference of guilt, or of anything else,

57   from the fact that Mr. Das did not testify, or even discuss that fact in your

58   deliberations.   Again, the burden rests on the government and the

59   government alone to prove a defendant's guilt beyond a reasonable doubt.

60       Now, what is proof beyond a reasonable doubt? The term is often used,

61   and is probably well understood intuitively, although it is not easily defined.

62   Proof beyond a reasonable doubt does not mean proof beyond all possible

63   doubt, or proof to a mathematical certainty, for almost everything in our

64   common experience is open to some possible or imaginary doubt.  It does,

65   however, mean that the evidence must exclude any reasonable doubt as to a

66   defendant's guilt.

67       A reasonable doubt may arise not only from the evidence produced but

68   also from the absence of relevant evidence.  It may also arise from material

69   conflicts in the evidence that cannot be resolved.  Reasonable doubt exists

70   when, after weighing and considering all the evidence in the case, using your

71   reason and common sense, you cannot say that you have a firm and settled

72   conviction that a charge is true.

73        A defendant is never to be convicted on suspicion or conjecture.  If, for

74   example, you were to view the evidence in the case as reasonably permitting

75   either of two conclusions, one that Mr. Das is guilty, the other that he is not

76   guilty, of any one or more of the crimes charged, then it follows that you

77   would find him not guilty of the crime under consideration.

78        It is not enough for the government to establish a probability, even a

79   strong probability, that a defendant is more likely guilty than not.  That is not

80   enough.  Proof beyond a reasonable doubt must be proof of such a convincing

81   character that you can, consistent with your oath as jurors, conscientiously

82   base your verdict upon it.  If you so find as to any or all the counts against

83   Mr. Das, you will return a verdict of guilty as to all these counts.  If, on the

84   other hand, you think there is a real possibility that Mr. Das is not guilty of

85   any or all the counts in the Indictment, you must give him the benefit of that

86   doubt, and find him not guilty.

87

4

88        **Evidence in a Criminal Trial**

89        Next, I want to review with you what is meant by evidence in the

90   context of a criminal trial.

91        Evidence is produced at a criminal trial in one of three ways.

92        First, through the sworn testimony of witnesses, both on direct and

93   cross-examination.

94        Second, through physical objects or exhibits identified by a witness and

95   admitted as such during the trial.

96        Third, by stipulation, or agreement between the parties that certain

97   facts are true and need not be independently proven as such at trial. An

98   example is the large number of agreed exhibits that were admitted during the

99   trial without objection as to their authenticity.

100       Certain things are not evidence and are not to be treated as such in your

101  deliberations.

102       1.      Arguments and assertions of purported facts by lawyers, as I

103  have previously cautioned, are not evidence. What the lawyers have said over

104  the course of the trial you may find helpful, or even persuasive in reaching a

105  verdict, but the facts are to be determined from your own evaluation of the

106  testimony of the witnesses, the exhibits, and any reasonable factual

107  inferences you choose to draw from the evidence that has been admitted.

108   2.   Questions to witnesses are not evidence. They can only be

109   considered in the sense that they give context or meaning to a witness's

110   answer.   It is permissible for attorneys to use leading questions, that is,

111   questions that suggest their own answer, when cross- examining an opposing

112   or hostile witness.   Leading questions can be a useful means of testing the

113   credibility of a witness's statements, but you should be careful to separate

114   the witness's answers from any assertions of fact a leading question might

115   have contained.

116   3.   Objections to questions are not evidence.   Attorneys, as I

117   explained at the beginning of the trial, have a duty to their clients to object

118   when they believe that a question is improper under the rules of evidence. If

119   I sustained an objection, you should ignore the lawyer's question, and any

120   assertion of fact that the question might have contained.   If I overruled the

121   objection, you should treat the witness's answer like any other.   If I struck a

122   portion of a witness's testimony, you are not to consider it.

123   4.   Anything you may have seen or heard outside the courtroom

124   during the trial is not evidence.   This includes any publicity that preceded

125   your empanelment as jurors and any news or social media accounts of the

126   trial that you may have accidentally encountered during the past week.   You

127   must decide the case solely on the evidence that was offered and received in

128    open court.

129    5.    Complex evidence may be presented during a trial in the form of

130    charts and summaries.  These charts and summaries are admitted saving

131    time by simplifying the examination of the large number of documents they

132    typically distill.  It is, however, the underlying evidence, and the weight that

133    you attribute to it, that gives the charts and summaries their evidentiary

134    value.  If you are not satisfied that they accurately reflect the underlying

135    evidence, you are free to reject them.

136    6.    If you have kept notes, as most, if not all of you have, remember

137    that your notes are not evidence.  They are only an aid to be used during the

138    deliberations to refresh your recollection of the testimony that was offered

139    during the trial.

140    Regardless of the way in which evidence is presented, it comes in one

141    of two forms, either as direct or as so-called circumstantial evidence.  Direct

142    evidence is direct proof of a fact, usually offered through the testimony of a

143    person who claims to have been an eyewitness to an event or a participant in

144    a conversation.  Circumstantial evidence is proof of a fact, or a set of facts,

145    from which you could infer or conclude that another fact is true, even though

146    you have no direct evidence of that fact.

147    For instance, if you were to awake in the morning and, even though the

7

148   day dawned bright and clear, see puddles of water on the street, you might

149   draw the inference that it had rained during the night, even though your

150   sleep had been uninterrupted.  In other words, the fact of rain is an inference

151   that can be drawn from the presence of water on a street.  An inference may

152   be drawn, however, only if it is reasonable and logical, and not if it is

153   speculative or based on conjecture.  If, for example, you observed puddles of

154   water on your street, but not on any other street in your neighborhood, other

155   facts, like a broken water main, or if you live in the suburbs, a neighbor's

156   malfunctioning sprinkler system, might explain the presence of water.   In

157   deciding whether to draw an inference, you must look at and consider all the

158   facts in the case in the light of reason, common sense, and your own life

159   experience.

160        Neither type of evidence, direct or circumstantial, is considered by the

161   law to be superior or inferior to the other.  Both types of evidence may be

162   considered in reaching your verdict and may be given whatever weight you,

163   as the finders of fact, deem that evidence to be worth.

164        Most evidence received at trial is offered through the testimony of

165   witnesses.   As the jury, you are the sole judges of the credibility of these

166   witnesses.  If there are inconsistencies in the testimony, it is your function to

167   resolve any conflicts, and to decide where the truth lies.

168    You may choose to believe everything that a witness said, or only part

169    of it, or none of it. If you do not believe a witness's testimony that something

170    happened, that of course is not evidence that it did not happen. It simply

171    means that you must put aside that testimony and look elsewhere for credible

172    evidence before deciding where the truth lies.

173    In deciding whether to believe a witness, keep in mind that people

174    sometimes forget things, get confused, or remember an event differently.

175    Memory is not always reliable, and when someone recounts a story twice, it

176    will seldom be identical in every respect, unless it is a memorized lie, or the

177    witness possesses extraordinary perception and recall.  It is for you to decide

178    whether any contradictions in a witness's testimony are innocent lapses of

179    memory or intentional falsehoods.  That may depend on whether important

180    facts or small details are at issue, and how important the facts might have

181    appeared to the witness at the time they were perceived.

182    Often it may not be so much what a witness says, but how he or she

183    says it that might give you a clue whether to accept his or her version of an

184    event as believable.  You may consider a witness's character, his or her

185    demeanor on the witness stand, his or her frankness or lack of frankness in

186    testifying, whether the witness was contradicted by anything that he or she

187    said before the trial, and whether the testimony appears reasonable or

188   unreasonable, probable or improbable, considering all the other evidence in

189   the case.  You may consider how good an opportunity the witness had to

190   observe the facts about which he or she testified, his or her mental and

191   physical state at the time the observations were made, the degree of

192   intelligence the witness shows, and whether his or her memory seems

193   accurate.  You may consider a witness's motive for testifying, whether he or

194   she displays any bias in doing so, and whether as a result he or she has an

195   interest in or bias towards the outcome of the case.  Now simply because a

196   witness has an interest in the outcome of the case does not mean that the

197   witness is not trying to tell you the truth as he or she recalls it or believes it

198   to have been.  But a witness's interest in the case is a factor that you may

199   consider along with everything else.  You may also consider the fact that a

200   witness may be perfectly sincere in his or her account of an event and simply

201   be mistaken as to the truth.

202        It has been pointed out to you that a witness may have testified

203   previously under oath about the subject matter of this trial in ways that you

204   might find consistent or inconsistent with their testimony during the trial.

205   Because these statements were made under oath, you may consider them as

206   if they were made here in the courtroom in evaluating the credibility of what

207   a witness who is impeached with a prior statement had to say during both

208   direct and cross-examination.

209   The weight of the evidence obviously does not depend on the number
210   of witnesses testifying for one side or the other.  You must determine the
211   credibility of each witness who testified, and then reach a verdict based on
212   all the believable evidence in the case.

### The Indictment

214   With these preliminary instructions in mind, let me turn to the
215   Indictment in this case.  Let me first remind you that an Indictment is not
216   evidence of any kind against a defendant.  It is simply an accusatory
217   document notifying him that he must answer to the criminal charges it sets
218   out.  An Indictment may allege more than one crime against a defendant;
219   and when it does so, the different charges are stated separately in what we
220   call counts.  Mr. Das has been charged with five separate counts of violating
221   federal law, namely: (1) knowingly and willfully accepting excessive
222   campaign contributions; (2) knowingly and willfully causing campaign
223   contributions to be made by third parties using Mr. Das's name; (3)
224   knowingly and willfully converting campaign funds to his personal use; and
225   (4) & (5) knowingly and willfully making material false statements to the FEC
226   regarding the amount of cash-on-hand in the campaign bank account for the
227   two reporting deadlines specified in the Indictment.

228        While the Indictment alleges various times when the crimes are said to

229   have occurred, the government's proof need not identify the exact date or

230   dates of an alleged offense.  It is sufficient if the evidence establishes beyond

231   a reasonable doubt that an offense was committed by a defendant on or in

232   reasonable proximity to the date or dates alleged. Each of the counts must be

233   separately considered by you in determining your verdict as the verdict slip

234   will make clear.

235        With these preliminary instructions in mind, let me turn to the charges

236   set out in the Indictment. Keep foremost in mind that Mr. Das has pled "not

237   guilty" to each of the charges. When a defendant pleads "not guilty," the

238   government is put to the obligation of proving each material component of

239   the offenses charged.  We commonly call these components the "elements"

240   of the offense.  The government has the burden of establishing each element

241   by proof beyond a reasonable doubt.

242                    **FEDERAL ELECTION LAW OVERVIEW**

243        The Federal Election Campaign Act, or FECA, imposes many rules on

244   the election campaigns of candidates for federal office, including reporting

245   requirements and contribution limits.  The Federal Election Commission, or

246   the FEC, the government agency that oversees elections, is authorized to

247   interpret and apply the federal election laws, including FECA.

248    As relevant to this case, FECA (1) imposes limits on the amount that an
249    individual – other than the candidate – may contribute to a campaign during
250    an election cycle, (2) requires a candidate's campaign committee to identify
251    individual donors who contribute more than $200 during an election cycle,
252    and (3) requires the treasurer of a campaign committee to file quarterly
253    reports with the FEC on Form 3.

254    For the 2017-2018 election cycle, FECA set an individual contribution
255    limit of $5,400 per person – $2,700 for the primary and $2,700 for the
256    general election.  The money must have been given to the candidate for the
257    purpose of influencing a federal election and not for some other purpose.
258    "In-kind" contributions, meaning contributions of goods and services in lieu
259    of cash contributions, are similarly subject to the individual contribution
260    limit.  Individual contributions made through a conduit or intermediary are
261    also subject to the cap during an election cycle.  FECA further provides that
262    "[n]o person shall make a contribution in the name of another person or
263    knowingly permit his name to be used to effect such a contribution, and no
264    person shall knowingly accept a contribution made by one person in the
265    name of another person."

266    As noted, despite the individual contribution limits, candidates for
267    federal office are permitted to loan to their campaign an unlimited amount

268   of "personal funds."  Personal funds are (1) assets that the candidate had

269   access to or control over when they became a candidate; (2) the candidate's

270   income or asset sale proceeds received during the election cycle; (3) assets

271   "owned jointly by the candidate and the candidate's spouse"; and (4) gifts or

272   support of a personal nature that had been customarily received by the

273   candidate prior to the beginning of the election cycle.  The regulations apply

274   only to campaigns and do not impact a candidate's ability to take out loans

275   for separate business or other purposes unrelated to the campaign.  The fact

276   that a loan frees up other funds does not make it an illegal contribution.

277       If a candidate chooses to loan their campaign money, they may also

278   choose to pay themselves back.  Repayments of loans and debts from the

279   campaign account can be up to the entire value of the loans and debt, but the

280   loans and debt must be repaid directly to the candidate.  Once a loan or debt

281   is repaid, the candidate is free to do what he or she wishes with the money.

282       FECA also requires the treasurer of the campaign committee to file

283   quarterly reports with the FEC on Form 3.  The candidate has no

284   responsibility to file a Form 3.  Form 3 requires disclosure of all receipts,

285   including contributions and loans and debt.  This requires an itemized list of

286   contributions by source name, amount, and date of contribution.  Form 3

287   also requires a correct and complete disclosure of "cash on hand" in the

14

288   campaign account.

### KNOWINGLY AND WILLFULLY

290   A limiting term or phrase that you will hear repeated with respect to

291   each count of the Indictment is "to act knowingly and willfully." "Knowingly"

292   means to act voluntarily and with conscious purpose and not by reason of

293   ignorance, accident, or mistake.  "Willfully" means to act voluntarily and

294   with the specific intent that the underlying crime be committed – that is, with

295   bad purpose, either to disobey or disregard the law.  A defendant need not be

296   aware of the specific law or regulation that he is violating in the sense of being

297   able to recite it by chapter and verse, but it must be shown that he knew that

298   his actions would violate federal election law and that he nonetheless

299   heedlessly proceeded to act with a deliberate intent to break the law.

300   Intent or knowledge can be proved by direct or circumstantial

301   evidence.  In determining what Mr. Das knew or intended at a particular

302   time, you may consider any statements he made, or acts that he did or failed

303   to do in the context of all other facts and circumstances in evidence.

### GOOD FAITH

305   Conduct is not willful if it is undertaken with a good faith

306   misunderstanding of the requirements of the law.  A good faith belief is one

307   that is honestly and genuinely held.  A person who acts on a belief honestly

15

308   held is not punishable merely because his belief turns out to be inaccurate,

309   incorrect, wrong, or unreasonable.  An honest, good faith belief that one's

310   actions were proper, which will negate the element of willfulness, should not,

311   however, be confused with good or benign motive, which do not.  A defendant

312   does not act in good faith when he makes statements of fact known to be

313   false.  The burden is on the government to prove the lack of a good faith belief

314   on a defendant's part beyond a reasonable doubt.  If it fails to meet its burden

315   in this regard, the defendant must be acquitted.

316                                **THE COUNTS**

317         Count 1 of the Indictment charges Mr. Das with knowingly and willfully

318   accepting excessive campaign contributions, in violation of section 30116(1)

319   of FECA. The Act makes it illegal for a candidate for federal office to

320   knowingly and willfully accept contributions that exceed the limits set by the

321   FEC.  To prove this crime as alleged, the government must prove three things

322   beyond a reasonable doubt.

323         First, that Mr. Das accepted and received $25,000 or more in

324   campaign contributions during the 2017 calendar year from Toby

325   Chaudhuri, Jay Shah, and/or Ajoy Bose, and that this $25,000 was in excess

326   of any permitted donations.

327         Second, that Mr. Das knew the money was being contributed for use in

16

328    his campaign and not for some other purpose; and

329    Third, that in accepting the contributions Mr. Das acted knowingly and

330    willfully and with the intent of violating the election laws.

331    A contribution includes anything of value, including gifts, loans,

332    advances, and money deposits intended to influence the outcome of a federal

333    election. The contribution need not be made directly to the candidate but

334    may be made through an intermediary.

335    Count 2 of the Indictment charges Mr. Das with knowingly and

336    willfully causing conduit contributions to be made to his campaign, in

337    violation of section 30122 of the FECA.  A conduit contribution is a

338    contribution made by a person using funds that are not their own in the name

339    of someone else. To prove a violation of this section of the Act, the

340    government must prove the following four things beyond a reasonable doubt.

341    First, that Mr. Das knowingly and willfully caused one or more conduit

342    contributions to be made to his campaign by Toby Chaudhuri, Jay Shah,

343    and/or Ajoy Bose.

344    Second, that the contributions were intended to be used by Mr. Das in

345    his campaign and not for some other purpose.

346    Third, that he knew that the specific person purporting to be a

347    contributor to his campaign was  not the true donor; and

17

348   Fourth, that the aggregate amount of the conduit contributions
349   equaled or exceeded $25,000 during the 2017 calendar year.

350   Count 3 of the Indictment charges Mr. Das with knowingly and
351   willfully converting $25,000 or more of contributions to his campaign to his
352   personal use, in violation of section 30114(b) of the FECA.  To find the
353   defendant guilty of this offense, you must be satisfied beyond a reasonable
354   doubt of the following three elements:

355   First, that the money identified in the Indictment consisted of
356   contributions made to the Das for Congress campaign.

357   Second, that Mr. Das knowingly and willfully used $25,000 or more of
358   these contributions for his personal non-campaign uses in a single calendar
359   year by using the funds for personal expenses or obligations unrelated to any
360   campaign purpose; and

361   Third, that he did so with the intent of depriving the Das for Congress
362   campaign of the use or benefit of the money.

363   To the extent it is relevant, a repayment from campaign funds of a loan
364   or debt a candidate has made to his campaign using his own funds is not
365   deemed by the law to constitute a personal use.  Nor does the law impose any
366   limits on the candidate's right to repay himself from the campaign bank
367   account for these loans or debt.

18

368      Counts 4 and 5 of the Indictment charge Mr. Das with knowingly and

369 willfully causing his campaign committee to make material false statements

370 to the FEC in Form 3 regarding the total amount of cash-on-hand in the

371 campaign bank account on the two specified quarterly reporting deadlines,

372 in violation of section 1001(a)(2) of the United States Criminal Code.  To

373 convict Mr. Das on these counts the government must prove beyond a

374 reasonable doubt the following four elements.

375      First, that Mr. Das knowingly and willfully made, or caused to be made,

376 material false statements regarding the total amount of cash-on-hand

377 reported in the Form 3 to the FEC.

378      Second, that Mr. Das voluntarily and intentionally made or caused the

379 false statements to be made.

380      Third, that Mr. Das knew that the statements were untrue or exhibited

381 a reckless disregard for the truth; and

382      Fourth, that Mr. Das made, or caused the statements to be made in a

383 Form 3 Quarterly Report filed with the FEC.

384      Count 4 refers to the submission of the First Quarter 2018 Report,

385 while Count 5 refers to the Second Quarter 2018 Report.  The Indictment

386 alleges that each of the Reports overstated the amount of the Das for

387 Congress cash on hand at the end of the respective reporting periods.  These

19

388    are the only false statements on the Form 3 alleged in the Indictment.

389         A statement is false if it is untrue when made. A statement is material

390    if it has the natural tendency to influence or is capable of influencing a

391    decision of the government agency to which it is made, in this case the FEC.

392    The government, is not, however, required to prove that the agency was in

393    fact deceived or misled. A matter before the FEC is within the jurisdiction of

394    the Executive Branch if it involves a subject over which the Commission has

395    the authority to act.

396                   **AIDING AND ABETTING**

397         A defendant may be found guilty of the crime or crimes charged even

398    if the defendant did not personally commit the act or acts constituting the

399    crime if the defendant willfully caused an act to be done that if directly

400    performed by him would be an offense against the United States. A

401    defendant who puts in motion or causes the commission of an indispensable

402    element of the offense may be found guilty as if he had committed this

403    element himself.

404         An act, as I have previously instructed, is done willfully if it is done

405    voluntarily and intentionally and with a bad purpose either to disobey or

406    disregard the law. The concept of aiding and abetting only applies to the

407    alleged diversion of campaign funds to Mr. Das's personal use and the alleged

408   making of false statements to the FEC (Counts 3-5).  With respect to other

409   alleged offenses, as a matter of law and logic, one could not aid and abet

410   himself in committing the crimes that are alleged in counts 1 and 2.

411   **DELIBERATIONS**

412   I will now say a few words about your deliberations.

413   It is your duty to discuss the case with your fellow jurors for the

414   purpose of reaching agreement if you can do so. Each of you must decide the

415   case for yourself, but should do so only after considering all the evidence,

416   listening to the views of your fellow jurors, and discussing the case fully with

417   the other jurors.  This case has taken a great deal of time to prepare and try.

418   There is no reason to think that it could have been better tried – it was tried

419   very ably by both sides – or that another jury would be better qualified to

420   render a verdict.  It is important therefore that you reach a verdict if you can

421   do so conscientiously.  You should not hesitate to reconsider your own

422   opinions from time to time and to change them if you become convinced that

423   they are wrong.  However, do not surrender an honest conviction as to the

424   weight and effect of the evidence simply for the expedience of arriving at a

425   verdict.

426   Your verdict must be unanimous as to whether Mr. Das is guilty or not

427   guilty of each of the charges that is being submitted to you for a verdict.  Each

21

charge must be considered separately.  You may find Mr. Das guilty of all charges, you may find him not guilty of all charges, or you may find him guilty of some charges and not guilty of others.  But remember that your verdict on each count, whether guilty or not guilty, must be unanimous.

Your verdict must be based solely on the evidence in the case and the law as I have given it to you, and not on anything else.

And finally, as I have instructed, bear in mind that the government has the burden of proof and that you must be convinced of Mr. Das's guilt beyond a reasonable doubt to return a guilty verdict.  If you find this burden has not been met, then you must return a verdict of not guilty.

It is very important that you not communicate with anyone outside the jury room about your deliberations or anything touching upon this case, including how the jury stands numerically on any count under consideration. There is only one exception to this rule.  If it becomes necessary during your deliberations to communicate with me, you may send a note through the court officer, signed by the juror selected as your foreperson.  No member of the jury should ever attempt to communicate with the court during the deliberations except by means of a signed writing.