UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ABHIJIT DAS A/K/A "BEEJ" DAS<br><br>Defendant | CRIMINAL No. 21-cr-10200-RGS |

The United States opposes the defendant's motion for acquittal pursuant to Rule 29(c) or for a new trial under Rule 33. The court should not disturb the jury's well-reasoned verdict, which was supported by ample testimonial and documentary evidence. The direct and circumstantial evidence, taken in the light most favorable to the government proves the element of each count beyond a reasonable doubt.

I.  LEGAL STANDARD

To succeed on a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, the defendant must "show that the evidence presented at trial, even when viewed in the light most favorable to the government, did not suffice to prove the elements of the offenses beyond a reasonable doubt." *United States v. Acevedo*, 882 F.3d 251, 257 (1st Cir. 2018). The court must consider "the evidence, both direct and circumstantial, in the light most favorable to the prosecution." *United States v. Manso-Cepeda*, 25 F. Supp. 3d 196, 199–200 (D.P.R. 2014), aff'd, 810 F.3d 846 (1st Cir. 2016) (internal quotations omitted). Viewing the evidence in such a light, the court's role is to determine whether "a rational fact finder could conclude beyond a reasonable doubt that the defendant committed the charged crime[s]."

*United States v. Meléndez-González*, 892 F.3d 9, 17 (1st Cir. 2018) (internal quotations omitted).

    II.      ARGUMENT

    **1. There Is Sufficient Evidence That the Defendant Made False Statements to The FEC (Counts Four And Five)**

At trial, Das's campaign finance director, Eric Chast, the finance director for the defendant's congressional campaign, testified that he prepared the FEC Form 3 filing for the 4Q 2017 and 1Q 2018. (The 1Q 2018 FEC Report is charged in Count Four.) Chast did not have access to the campaign's bank accounts or credit cards and he relied on the defendant to provide information about contributions received, loans made, and expenditures by the campaign. Chast also testified that the cash on hand was automatically calculated by the FEC File software by taking the loans and contributions and subtracting the expenditures, like a calculation performed by Excel. Chast's testified and exhibits showed that Chast asked for the defendant's approval before submitting the FEC Form 3 reports for 4Q 2017 and 1Q 2018. (Tr. Exs. 27, 122.)

The admitted emails demonstrate that the defendant was closely involved in preparing the FEC filings and knew the information he provided would be reported to the create the FEC filings. On January 22, 2018, Chast emailed the defendant asking for an itemized list of expenses and loans, providing an example showing the level of detail that Chast needed. (Tr. Ex. 19.) The defendant complied by providing Chast the dates and amounts of the loans made by him to the campaign. (Tr. Ex. 20-21.) The defendant also provided detailed spreadsheets containing donations and (Tr. Ex. 25, 175). Chast notified the defendant when the FEC Form 3 report was complete and asked him to review the report. (Tr. Ex. 27, Chast texted the defendant, "Hola Capt! Your Q1 report is complete. Please get me any additional items you'd

like included to me before noon tomorrow and I'll transmit!") On at least one occasion it appears the defendant received the FEC Form 3 filing and submitted the Form 3 filing himself. (Tr. Ex. 122.)

The testimony and exhibits also show that the defendant was acutely aware of the campaign's cash on hand totals and worked to ensure his campaign was reporting a high cash on hand number. Scott Ferson testified that he told the defendant that his early fundraising numbers would be critical to the campaign's viability. Indeed, in mid-January, the defendant's campaign put out a press release touting their fundraising totals and the campaign's cash-on-hand—this press release was approved by the defendant and included a $550,000 cash-on-hand figure. (Tr. Ex. 91.) The defendant also emailed potential donors about the campaign's cash-on-hand figure, including VIP donor Jay Shah, writing, "We announced that we raised $425k and have $550 on hand." (Tr. Ex. 18).

The statute and jury instructions contemplate convicting even if the defendant did not personally prepare and submit the FEC forms.

> Counts 4 and 5 of the Indictment charge Mr. Das with knowingly and willfully *causing* his campaign committee to make material false statements to the FEC in Form 3 regarding the total amount of cash-on-hand in the campaign bank account…
> To convict Mr. Das on these counts the government must prove beyond a reasonable doubt …
> First, that Mr. Das knowingly and willfully made, or *caused to be made*, material false statements regarding the total amount of cash-on-hand reported in the Form 3 to the FEC.
> Second, that Mr. Das voluntarily and intentionally made or *caused* the false statements to be made.
> Third, that Mr. Das knew that the statements were untrue or exhibited a *reckless disregard for the truth*…

Convictions for individuals who caused inaccurate false statements have been upheld in multiple other cases. *United States v. Stockman*, 947 F.3d 253 (5th Cir. 2020) (U.S. Representative caused campaign to make false FEC filings about the source of donations);

3

*United States v. Emmons*, 8 F.4th 454 (6th Cir. 2021) (campaign chairman and consultant caused campaign to unwittingly file false FEC forms omitting secret corporate contributions); *United States v. Benton*, No. 1:21-cr-569 (D.D.C. 2021) (consultant convicted of causing campaign unwittingly to file false forms with FEC omitting secret foreign national contributions).

The evidence establishes that it was the defendant himself who prepared and submitted the 2Q 2018 FEC Form 3 report, charged in Count 5. The defendant was the only one who had access to the campaign's financial accounts. Chast had left the campaign and none of the other campaign staff testified to worked on the filing. Trial Exhibit 106 shows the defendant receiving the FEC login password a few days before the 2Q filing was due. And Sean Smith testified that it was ***the defendant*** who later provided him an FEC filing and asked Mr. Smith to sign the form as the campaign treasurer.

This evidence, taken in the light most favorable to the conviction, prove the elements of the false statements charges beyond a reasonable doubt.

**2.    There Is Sufficient Evidence Supporting Conversion of Campaign Funds (Count Three).**

The defendant's argument about the conversion of campaign funds is premised on a critical factual misstatement: the defendant did not have a right to withdraw $272,000 from the campaign account. (*Compare* ECF No. at 2-3.) The defendant states, without support, that the defendant was entitled to withdraw the balance of the illegal, excessive contributions including $100,000 donated by Jay Shah and Toby Chaudhuri. Even if the defendant had followed the proper procedures (which he did not) and reported the repayment of loans he properly made to the campaign from his own personal funds, at most the defendant was arguably entitled to withdraw $226,050 from the campaign account:

4

- $147,000 in loans made from his funds to the campaign;

- $54,050 in credit card spending that was first disclosed during trial (Ex. 173)[1]; and

- $25,000 corresponding to the excessive contribution that the defendant received from Ajoy Bose, which the defendant repaid to Bose in early 2018.

By comparison, the defendant withdrew $314,500 from his campaign accounts in cash and Treasurer's checks. The difference—$88,450—were campaign funds that could only be spent on campaign purposes, but the defendant spent that money on his personal expenses. It is illogical to argue that excessive or conduit contributions cannot be stolen. The contributions from Shah and Chaudhuri should have been refunded and because they were not, they were misappropriated and eventually converted from the campaign account.



---

[1] The defendant disclosed for first time mid-trial a spreadsheet of $54,050 in purported campaign expenses that the defendant paid for using personal credit cards. (Ex. 179.) These expenses should have been but were not reported as debts on the FEC Form 3s, although the defendant contended that some of them were reported as loans or expenditures. Although there was no direct evidence substantiating that these charges were truly campaign expenses, the government assumes for the purpose of this opposition that the entire $54,050 were campaign expenses that should have been repaid to the defendant.

### 3. There is Sufficient Evidence Supporting Illegal Contributions (Count One)

There is ample evidence that the defendant knowingly and willfully accepted excessive campaign contributions. As the court instructed, the government only needed to prove that the defendant received excessive contributions from one donor, Toby Chaudhuri, Jay Shah, and/or Ajoy Bose. Chaudhuri and Shah both testified that they believed their money was going to the campaign. The jury reviewed emails and text messages between the defendant and Chaudhuri, Shah and Bose about the campaign and asking for campaign donations. (Tr. Exs. 5, 7-12, 12.1 18, 98-103.) There was no evidence that Chaudhuri or Shah's contributions were a personal loan to Mitra Das or a business loan to the defendant's companies. The defendant's own words show that the funds were contributions because he referenced the money from Chaudhuri, Shah, and Bose, when he said he would "aggregate" and "'self-fund.'" (Tr. Ex. 102.)

### III. CONCLUSION

For the foregoing reasons, the defendant's motion for acquittal should be denied.

        Respectfully submitted,

        JOSHUA S. LEVY
        Acting United States Attorney

By:    */s/ Elysa Q. Wan*
        ELYSA Q. WAN
        NEIL J. GALLAGER, JR.
        Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
.

                                             */s/ Elysa Q. Wan*
                                             ELYSA Q. WAN
                                             Assistant United States Attorney

Date: November 2, 2023