UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ABHIJIT DAS,<br><br>      Defendant | Crim. No. 1:21-cr-10200-RGS |

**MOTION FOR RECONSIDERATION OF ORDER DENYING**
**ABHIJIT DAS'S MOTION FOR JUDGMENT OF ACQUITTAL**

Defendant Abhijit Das respectfully moves for reconsideration of his Motions for Judgment of Acquittal and for a New Trial on three specific grounds. The Court has discretion to reconsider its prior rulings in the interests of justice.[1] *United States v. Siciliano*, 578 F.3d 61, 72 (1st Cir. 2009); *see United States v. Cintron*, 724 F.3d 32, 36 n.5 (1st Cir. 2013) (the Court may grant a motion for reconsideration "if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.").

**I.     Counts Four and Five: False Statements**

Mr. Das asks that the Court reconsider its ruling and dismiss the convictions on Counts Four and Five, alleging Mr. Das caused the filing of False Statements on FEC Form 3 Reports by providing an incorrect number for the campaign bank account's Cash on Hand. There is insufficient evidence to prove these two counts.

The Court's Order denying the original motion to set aside the convictions rests on an incorrect assumption about Eric Chast's trial testimony. The Court stated that "Chast testified that he submitted the Forms to Das for his review and approval before filing them," *Memo. and Order*

---

[1] The First Circuit has applied Federal Rule of Civil Procedure 59(e) to motions for reconsideration in criminal cases. *See United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009). The Court has "substantial discretion and broad authority" to grant a motion for reconsideration pursuant to Fed. R. Civ. P. 59(e). *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 81-82 (1st Cir. 2008). A motion for reconsideration should be granted upon a showing of (1) a "manifest error of law," (2) new evidence, or (3) a misunderstanding or other error "not of reasoning but apprehension." *Id.* A motion for reconsideration under Rule 59(e) is timely if it is filed within ten days after entry of the judgment. *See* Fed. R. Civ. P. 59(e); *Colon-Santiago v. Rosario*, 438 F.3d 101, 107 (1st Cir. 2006).

*on Def.'s Mot. for Judgment of Acquittal* at 2 (ECF No. 169).  This does not accurately reflect Mr. Chast's trial testimony.  A review of Mr. Chast's testimony reveals that he never stated that he submitted blank or completed FEC forms to Mr. Das with a request for review and filing approval.

In its Rule 29 opposition filing, the Government asserted that "Chast asked for the Defendant's approval before submitting the FEC Form 3 reports for 4Q 2017 and 1Q 2018," citing Trial Exhibits 27 and 122.  *Govt's Opp'n* at 2 (ECF No. 164).  This vague summary misrepresents Mr. Chast's specific admissions on cross-examination—including that he had no memory of ever having Mr. Das review or otherwise verify a specific FEC Form Filing before Mr. Chast completed and submitted the filings on the campaign's behalf.  On cross, Mr. Chast clarified that he asked Mr. Das for the raw numbers on donations and expenses so Mr. Chast could input data and the software would auto-populate the form.  But Mr. Chast also testified he never showed Mr. Das the blank form, the finalized output, or the calculations that were done in the FEC reports.  Thus, no one told Mr. Das that the FEC Report contained an auto-populated Cash on Hand calculation and a specific amount for that category.  Specifically, defense counsel asked Mr. Chast the following:

> Atty. Kendall: And it's not without his review, it's with data that he provides you?
>
> Mr. Chast: Hopefully both.
>
> Atty. Kendall: Well, you never showed him the calculations that were done in the FEC reports now, did you?
>
> Mr. Chast: He had seen the raw data, but not the printout of the report.
>
> Atty. Kendall: He gave you raw data, that's all.
>
> Mr. Chast: Yes.
>
> Atty. Kendall: He never saw the output from it.
>
> Atty. Wan: Objection.
>
> Atty. Kendall: To your knowledge?
>
> Mr. Chast: To my knowledge, just the information gathered together that would go in the report.

The Court correctly instructed the jury that the Government must prove beyond a reasonable doubt that Mr. Das voluntarily and intentionally caused the false statements to be made in a FEC Form 3 Quarterly Report. The Government put in ambiguous testimony on direct and, after the defense successfully clarified that testimony on cross, the Government conceded its accuracy and failed to challenge it. The trial record shows that Mr. Chast did not specifically ask for Mr. Das to review the FEC Form 3, nor tell him that the computer would auto-populate a Cash on Hand calculation. If no one told Mr. Das the FEC Form 3 reported Cash on Hand as of a particular date, he could not have the specific intent to cause a misstatement of that number. The Government failed to prove that Mr. Das in fact acted to intentionally cause any false reporting of cash on hand on the FEC filings. No reasonable jury could have convicted Mr. Das, who had no responsibility to prepare, review, or edit reporting documents to the FEC, of Counts Four and Five. The uncontroverted trial record and "interests of justice" warrant reconsideration of the Court's ruling on these two counts. *See United States v. Roberts*, 978 F.2d 17, 21 (1st Cir. 1992).

## II.     Count Three: Conversion of Campaign Funds

It is uncontested that Mr. Das withdrew funds from the campaign bank account. But he did not convert—take without justification or legal right, and use for a forbidden purpose—campaign funds. Even if one accepts the Government's argument, it still fails. Rise Ladebauche testified that much of the money that Mr. Das gave to the businesses after repaying himself directly went to pay the campaign's debts to the hotel. This certainly is not a conversion, and no rational jury could have convicted because an inference of innocence was at least equally as likely as one of guilt. The Government failed to clarify how much was appropriately credited and thus it is uncertain if the Government surpassed their $25,000 statutory threshold. The Government thought the moment Mr. Das withdrew the money they proved conversion—but that is not sufficient. The Government had to prove both he had no right to withdraw and that it was used for an improper noncampaign purpose.

It is uncontested that the approximate $325,000 that went into the campaign account were either loans from Mr. Das, or were improper conduit contributions, that, under the Government's theory, never should have been deposited into the account to begin with, and could not lawfully be used for any campaign purpose.

All in all, Mr. Das put more money into his campaign account than he took out. As the candidate, Mr. Das was allowed to take out what he had loaned to the campaign, in any manner and at any time that he chose. *See FEC v. Ted Cruz for Senate*, 596 U.S 289 (2022) (campaigns "may borrow an unlimited amount . . . from the candidate"). It is Mr. Das's position that the entire $325,000 he put into the campaign were legal candidate loans and he could withdraw them without limitation. If, in the alternative, one accepts the Government's position that up to $125,000 were improper conduit contributions, the campaign could not accept, retain, or spend these funds, and had to disgorge them. Under this scenario, Mr. Das had an affirmative obligation to withdraw any improper donations and this would not be a conversion of funds owned by and to be used for the campaign. If Mr. Das failed to properly record the deposits or withdrawals, that is a record keeping obligation, and does not affect his right to withdraw the funds. Moreover, the issue of whether the prohibition on converting campaign contributions applies to a conduit contribution that the campaign is forbidden from keeping or using is sufficiently ambiguous that, under the rule of lenity, the Court should rule in Mr. Das's favor. The Court adopted the Government's incorrect conflation of recordkeeping obligations with the separate issue of how money can go in and out of a campaign bank account.

### III. Counts One and Two: Mr. Das Deserves a New Trial

For Counts One and Two, which relate to the loans, the jury had to assess the credibility of Mr. Chaudhuri's testimony, in light of the emails he sent that contradicted his testimony. The jury also had to weigh the credibility of Mr. Bose, who said he did not loan money to the campaign, and Mr. Shah, who said Mr. Das never said his loan would go into the campaign and he would have loaned the funds for a noncampaign purpose. Mr. Das believes the Court should have dismissed Counts Three, Four, and Five as a matter of law, prior to jury deliberations, as these

deficient charges unduly prejudiced the deliberations on Counts One and Two. Mr. Das argued during trial that Count Three—which portrayed him as a thief—should not have been allowed to taint jury deliberations. Counts Four and Five portray him as having the specific intent to make false statements, even though he did not know the FEC Forms would make such specific representations. The Government's invalid conversion and false statements theories should not have been permitted to distort the jury's credibility determinations about the inconsistent testimony from Mr. Chaudhuri, Mr. Shah, and Mr. Bose. Thus, the Court should also grant a new trial on Counts One and Two.

## CONCLUSION

For these reasons, and in the interests of justice, Mr. Das respectfully requests that the Court reconsider its ruling on Mr. Das's renewed motion for judgment of acquittal and motion for new trial, dismiss Counts Three, Four and Five, and grant a new trial on Counts One and Two.

Dated: February 19, 2024

Respectfully submitted

Abhijit Das, by his counsel:

/s/ Michael Kendall
Michael Kendall (BBO # 544866)
Abigail Mahoney (BBO #709427)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
abigail.mahoney@whitecase.com

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

I, Michael Kendall, hereby certify pursuant to Local Rule 7.1(A)(2) that I contacted counsel for the Government prior to filing the forgoing Motion. Counsel have not yet responded as to whether they assent to the Motion.

*/s/ Michael Kendall*

## CERTIFICATE OF SERVICE

I hereby certify that the above document was filed on the date appearing in the header of this page through the ECF system, which will send true copies of the document to the attorneys of record for each party.

*/s/ Michael Kendall*